**FILED**

# ORIGINAL

MAR 2 0 2015

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
(Bid Protest)

**U.S. COURT OF
FEDERAL CLAIMS**

|  |  |
|---|---|
| NATIONAL TELECOMMUTING INSTITUTE, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| THE UNITED STATES, | ) ) |
| Defendant. | ) ) ) ) |

No. **15.- 293 C**

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

In this post-award bid protest, Plaintiff, National Telecommuting Institute, Inc. ("NTI"),

by its attorneys, and for its Complaint against the Defendant, the United States of America,

acting by and through the U.S. AbilityOne Commission ("Commission") alleges as follows:

### INTRODUCTION

1.     "They don't care it's a sham."  These are the words of Jean Robinson, the former

General Counsel of SourceAmerica, describing SourceAmerica's pre-ordained intention to

induce the Commission to award Source Solicitation Notice 2333 (the SSN or "Solicitation") to

Peckham Industries, Inc. ("Peckham").[1]  For SSN 2333, the Commission utilized SourceAmerica

(formerly known as the National Industries for the Severely Handicapped (NISH)) as its

designated "central non-profit agency" to review and evaluate proposals from participating

nonprofit agencies, including Peckham and plaintiff, NTI.  During this same conversation, Ms.

Robinson described her futile efforts to persuade SourceAmerica to take reasonable corrective

action in light of an agency appeal filed by NTI:  "Well, I mean, I spent – I spent from 1:30 to

---

[1]     *See* Attachment A to Exhibit 1, Declaration of MJ Willard at ¶ 25.

4:15 trying to help these idiots with the redo that we know was a f—king sham anyway. Excuse my language, but we know it's a sham."[2]   As shown in the Complaint, the Commission and SourceAmerica short circuited the procurement process to ensure that Peckham received the contract award by failing to adhere to statutory and regulatory requirements for conducting the evaluation and by failing to develop a proper administrative record that can support the award of a federal government contract.

2.      The AbilityOne Program is a federal program established under the Javits-Wagner-O'Day (JWOD) Act[3] that provides jobs for individuals with disabilities, and seeks to maximize employment opportunities for severely disabled individuals. The Committee for Purchase From People Who Are Blind or Severely Disabled (operating as the U.S. AbilityOne Commission) is an independent federal agency authorized to administer the AbilityOne program.[4]   The Commission's enabling statute requires it to "designate a central nonprofit agency or agencies to facilitate the distribution, by direct allocation, subcontract, or any other means, of orders of the Federal Government for products and services on the procurement list among qualified nonprofit agencies for the blind or qualified nonprofit agencies for other severely disabled."[5]   For the Solicitation, SourceAmerica was the designated CNA.

3.      By law, SourceAmerica's report of its review and evaluation to the Commission is not binding, nor does it receive any deference.  The Commission decides contract awards *de novo* and has the sole role and responsibility to make award decisions.

---

[2]   *Id.*

[3]   41 U.S.C. §§ 8501-8506 (2012).

[4]   41 U.S.C. § 8502.

[5]   41 U.S.C. § 8503(c).

4.      But here the evaluation, recommendation and consideration process inalterably broke down as it completely ignored the stated mission of the AbilityOne Program and applicable evaluation criteria.  From SourceAmerica's defective evaluation to the Commission's unquestioning acceptance of SourceAmerica's report and the Commission's failure to have a fair and reasonable administrative procedure, this procurement selection was arbitrary, capricious and in violation of law, and but for this impermissible conduct, NTI would have been awarded the contract.

5.      The Commission and SourceAmerica defectively evaluated the proposals submitted by NTI and Peckham because they did not, *inter alia*, evaluate NTI and Peckham based upon SourceAmerica's "B.1" factors nor the mission and purpose of the JWOD Act.  Most egregiously, the evaluators failed to consider whether the bidders could meet JWOD's requirement that 75% of the labor provided would be performed by severely disabled personnel.

6.      The Commission awarded the Solicitation to Peckham notwithstanding being presented evidence that Peckham could not meet the 75% requirement.

7.      The Commission, through SourceAmerica, also failed to apply the technical evaluation factors that would have demonstrated the superiority of NTI's proposal.  The Commission did not properly rate NTI's past experience of having provided help desk services for the present contractor, IBM, nor did the evaluation consider how NTI's incumbency would advance the purposes of the AbilityOne program. The Commission and SourceAmerica also did not consider that selecting Peckham would result in the loss of employment for incumbent disabled personnel.

8.      It is unsurprising that SourceAmerica finds itself in the center of a controversy involving its motives and adequacy.  In September 2014 Bona Fide, a non-profit contractor filed

an anti-trust lawsuit against SourceAmerica alleging a cartel of the largest contractors control the allocation of SourceAmerica's awards. *See Bona Fide Conglomerate, Inc. v. SourceAmerica, et al.* Case No. 14-cv-00751, U.S. Dist. Ct., Southern Distr. of California. In 2011, the CEO of SourceAmerica's largest contractor, National Center for Employment of the Disabled ("NCED"), was sentenced to 10 years in prison and required to pay a $65 million fine for lying about the make-up of its workforce. *See* http://www.elpasotimes.com/publiccorruption-past/ci_17415287. SourceAmerica had approved NCED's claim that 78% of the 4,000 sewing operators were severely disabled. Only after the FBI raided NCED's operations, did SourceAmerica revise the estimate of disabled persons working on NCED contracts as less than 8%.

9.      Underscoring the jerry-rigged evaluation was the administrative process governing it. Although the Commission owes no deference to the findings of SourceAmerica and acts as the ultimate decision-maker, at every turn the Commission abdicated its responsibility to make a procurement decision by deferring to SourceAmerica. The Commission made only perfunctory responses to NTI's numerous appeals and when presented with a substantive question, the Commission and its staff dissembled. For example, when presented with evidence that Peckham did not meet the 75% requirement on its current contracts, the Commission asserted multiple times that SourceAmerica had verified that Peckham was in compliance. But SourceAmerica expressly denies that it verified this and claims it is the Commission's responsibility to ensure Peckham's compliance. [6]

10.     At bottom, AbilityOne and SourceAmerica presided over a broken process in which only lip service was paid to ensure evaluations and administrative review were conducted

---

[6]    *See* Exhibit 2, The Commission's May 29, 2014 letter of denial at pages 2 and 3.

reasonably, non-capriciously, and in accordance with the law, and NTI suffered prejudice because absent these errors, NTI would have been awarded the contract.

## NATURE OF THE ACTION

11.     NTI brings this action seeking declaratory and injunctive relief against the Commission regarding its award of Source Solicitation Notice 2333 (the "SSN" or "Solicitation"); and seeks an order declaring that the award was arbitrary, capricious and an abuse of discretion, contrary to the statutory purpose of the AbilityOne program and impermissibly prejudiced NTI.

## JURISDICTION

12.     Pursuant to the Tucker Act, this Court has jurisdiction over this bid protest pursuant to 28 U.S.C. § 1491(b).

## PARTIES

13.     Plaintiff, NTI, is a not-for-profit organization operating as a Community Rehabilitation Program ("CRP") under the AbilityOne program by providing at-home based employment opportunities for people with severe physical disabilities who are unable to work outside their homes.  NTI is located at 69 Canal Street, Boston, Massachusetts, 02114 and 103 E. Blithdale Avenue, Suite 9, Mill Valley, California 94941.

14.     Pursuant to 28 U.S.C. § 1491(b), NTI is an "interested party" with standing to pursue this action because it has a direct economic interest that will be adversely affected by the Commissions' actions.  NTI is a bidder that has been prejudiced by the Agency's violations of law and regulations and would be an awardee but for the violations described herein.

15.     The Defendant is the United States of America, acting by and through the Commission.  The contracting agencies for the Solicitation are the Commission and the U.S. Department of Agriculture ("USDA").

**FACTUAL BACKGROUND**

16.    Through the products and services it offers to federal entities, the AbilityOne program is intended to facilitate employment opportunities for individuals whose disabilities are so severe that they cannot be employed in a traditional workforce,  but as GAO reported, it is well-known that AbilityOne is dysfunctional.[7]

17.    The Commission is comprised of 15 part-time, presidentially-appointed members and approximately 27 full-time civil service staff, and is funded through annual congressional appropriations, which in FY2012 approximated $5.4 million.[8]   The Commission is responsible for determining which products and services will be furnished to the government by people who are blind or severely disabled.  Such products and services are described in a procurement list that is published in the Federal Register.[9]  The Commission's enabling statute requires it to "designate a central nonprofit agency or agencies to facilitate the distribution, by direct allocation, subcontract, or any other means, of orders of the Federal Government for products and services on the procurement list among qualified nonprofit agencies for the blind or qualified nonprofit agencies for other severely disabled."[10]

18.    In order for an individual with a disability to be counted as eligible for an AbilityOne job, individuals must be so severely disabled that their physical or mental disabilities "constitutes a substantial handicap to employment and is of a nature that prevents the individual from currently engaging in normal competitive employment." 41 U.S.C. 8501 *et seq*.  To be

---

[7]    *Employing People with Blindness or Severe Disabilities; Enhanced Oversight of AbilityOne Program Needed*, GAO-13-457 (May 2013) (the "GAO Report") at 1.

[8]    Committee for Purchase From People Who Are Blind or Severely Disabled, Fiscal Year 2013 Budget Justification, *available at* http://www.abilityone.gov/commission/documents.

[9]    41 U.S.C. § 8503(a).

[10]   41 U.S.C. § 8503(c).

eligible for an award, a non-profit agency must devote 75% of its direct labor hours to work performed by employees who are so severely disabled they meet this definition.

### Rules for the Evaluation Process

19.    Two private nonprofit organizations, SourceAmerica and National Industries for the Blind ("NIB") have been designated as the central nonprofit agencies (CNAs) to act as consultants to assist the AbilityOne Commission with program implementation and the production of goods and services.  In accordance with the implementing regulations for the program, the two CNAs "provide technical and financial assistance to qualified nonprofit agencies nationwide [that] employ the blind or severely disabled in the fulfillment of product and service requirements deemed suitable by the [Commission] and placed on its Procurement List."[11]

20.    There are almost 600 qualified nonprofit agencies (often referred to as nonprofit "affiliates" or nonprofit "affiliated agencies") that participate in the AbilityOne Program.[12]  It is the responsibility of the CNAs to represent these participating nonprofit agencies in dealings with the Commission; NIB represents nonprofit agencies for the blind, whereas SourceAmerica represents nonprofit agencies employing persons with other severe disabilities.[13]  The CNAs are also required to evaluate the qualifications and capabilities of the nonprofit agencies and to "[o]versee and assist [them] to insure contract compliance in furnishing a commodity or a service

---

[11]    *Committee for Purchase from People Who Are Blind or Severely Disabled, Final Rule:  Change to Program Name*, 71 Fed. Reg. 227 (Nov. 27, 2006), available at http://www.gpo.gov/fdsys/pkg/FR-2006-11-27/html/E6-19971.htm.

[12]    GAO Report, at 4.

[13]    41 C.F.R. 51-3.1.

[to a federal agency]."[14]   CNAs are required to "(d) Recommend to the Committee, with the supporting information required by Committee procedures, suitable commodities or services for procurement from its nonprofit agencies" in accordance with 41 CFR 51-3.2(b) and (d). The Commission's Policy 51.301 also states: "CNAs shall develop processes for project assignment and order allocation that result in far, equitable, and transparent distribution of opportunities among NPAs, taking into account the unique mission and objectives of the AbilityOne Program" referred to as "B-1" policies.

21.   For its evaluation and recommendation for SSN 2333, SourceAmerica was obligated to follow its B-1 policies and procedures and 12 evaluation factors contained in the SSN. SourceAmerica's B-1 document informed offerors that the overall purpose in assigning contracts to CRPs is "to maximize the employment options for people with severe disabilities" (B.1 Section 1.0), and that "Distribution of project development opportunities among qualified CRPs and the successful project development implementation will follow these overriding principles." (B.1 Section 4.0.)

22.   The Commission reviews those recommendations *de novo* and is vested with the sole authority to make procurement decisions including awarding contracts and making additions to the Procurement List.   The Commission's policies provide that an aggrieved  bidder may appeal a CNA's recommendation, by demonstrating that under section 6(d) of the Commission's Policy 51.301, the CNA failed to:

(a) follow its established policies and procedures;

(b) properly document its decision; or

(c) ensure the selected CRP meets the minimum requirements.

---

[14]   41 C.F.R. 51-3.2.

## PROCEDURAL HISTORY OF THIS PROTEST

23.    This matter comes before the court after two administrative appeals to the Commission and four administrative appeals to SourceAmerica for a flawed source selection under a Solicitation to provide help desk services to the USDA through the AbilityOne program and the placement of the award upon the Procurement List on September 15, 2014.

### The 2013 Solicitation and NTI's Successful Appeal to the Commission

24.    In April 2013, SourceAmerica, acting on behalf of the Commission, issued a sources sought notice for USDA Helpdesk Opportunity 21573, which was a solicitation to provide help desk services to the USDA through the AbilityOne program.

25.    Both NTI and Peckham submitted proposals in response to SSN 21573 and were selected as finalists.  NTI gave a presentation of its capabilities on May 23, 2013.  At the conclusion of the evaluation, SourceAmerica recommended to the Commission that Peckham receive the award.

26.    Having lost the initial solicitation, NTI received a telephonic debriefing from Joseph Diaz, SourceAmerica's Director of the East Coast region, on July 2, 2013. During the debriefing Mr. Diaz identified an evaluation factor that was never disclosed in the evaluation criteria.

27.    Unsatisfied with the basis of award to Peckham for SSN 21573, NTI pursued first and second level appeals within SourceAmerica in accordance with its procedural guidelines on July 11 and July 20, 2013.

28.    NTI made two fundamental arguments in these appeals.  First, NTI contended that that there was no indication within SSN 21573 that bidders would be downgraded for using a large business such as IBM as an information technology subcontractor.  Second, NTI contended

that Mr. Diaz had failed to evaluate whether Peckham could fill the hundreds of telephone support jobs with qualified people from the severely disabled population as required by the SSN.

29.    Both of NTI's internal SourceAmerica appeals were denied- the first level appeal was denied July 23, 2013 and the second-level appeal was denied on September 12, 2013. The content of both denials were cursory at best and failed to set forth a meaningful record.

30.    On October 23, 2013 Lou Bartalot, Director of Compliance for the Commission, emailed MJ Willard of NTI stating "I want to emphasize that I do think you propose a potentially very useful tool for us both from a compliance point of view and for demonstrating that we are serving the population that we were intended to serve." Mr. Bartalot was referring to Ms. Willard's proposal that the Commission require nonprofits such as Peckham to provide a list of the Social Security Numbers of their AbilityOne employees as a method of allowing the Commission to determine what percent of the workforce had been judged by the Social Security Administration as severely disabled.

31.    On October 25, 2013, NTI raised its concerns about the SourceAmerica award recommendation directly to the Commission. On November 6, 2013, NTI submitted a set of objections and concerns to the Commission including an exhibit specifically detailing the inadequacies related to contractor compliance and suggesting that the extent to which a contractor's workforce had hired people independently verified by the Social Security Administration as people with severe disabilities could serve as a valuable reality check.[15]

32.    On December 20, 2013, the Commission undertook its first independent review of the consultant's actions and agreed with NTI's concerns, finding, in relevant part, that SourceAmerica had "failed to follow its established policies and procedures by evaluating NTI

---

[15]    See Exhibit 3, November 6, 2013 NTI letter to the Commission at Ex. 2 of the letter.

on criteria that was not included in the Source Selection Notice #2000, dated April 29, 2013."
The Commission returned the SourceAmerica USDA IT Desk Support project selection decision
to SourceAmerica "for appropriate action." The Commission, however, declined to comment on
its failure to verify the make-up of Peckham's workforce.

SourceAmerica Attempts to Modify the Solicitation and Conduct a New Evaluation

33.     On January 3, 2014, SourceAmerica modified the Solicitation and issued a
revised SSN (renumbered as SSN 2333).  SourceAmerica required responses by January 17,
2014.

34.     For the revised SSN 2333, the technical requirements and the statements of
work prepared by the USDA remained basically unchanged; however, additional substantive
evaluation criteria were added to address the Commission's concerns.

35.     NTI submitted a timely proposal to the corrected SSN 2333 on January 17, 2014.
To ensure continuity of services, NTI once again proposed subcontracting certain information
technology functions to IBM, the incumbent primary contractor for the current USDA call
center contract.

36.     Given the overall AbilityOne mission to "maximize employment opportunities
for people with significant disabilities" and the specific requirements of the SSN, NTI proposed
to provide a virtual call center solution that NTI had used successfully with other federal
agencies for 10 years.  The use of virtual or teleworking agents was expressly permitted by the
USDA in its Sources Sought Notice.

37.     The teleworking approach proposed by NTI was closely aligned to the core
mission of the AbilityOne program because it opened up new opportunities for employment to
one of the least served segments of the disability community- home-based workers with

disabilities so severe that they are unable to travel to an employer's place of business for customer service and technical support positions. Because there is such an unmet demand for these positions and because NTI is a registered employer in 47 states and can recruit from across the U.S., NTI proposed to fill 100% of the USDA direct labor positions with people with severe disabilities.

38.     NTI's proposal maximized employment opportunities well beyond the 75% disabled worker requirement set forth as a minimum by the Program. *See* 41 U.S.C. § 8501(7)(c). In addition, NTI could offer independent verification that the applicants for these USDA Help Desk jobs would be demonstrably eligible under the AbilityOne requirements.

39.     After the Commission instructed SourceAmerica to correct and re-issue the SSN, SourceAmerica replaced its entire review panel to make the new award recommendation decision. On January 23, 2014, a mere four business days after revised proposals were submitted, SourceAmerica issued its new award recommendation, once again recommending Peckham for award of the USDA call center opportunity.

<u>NTI Challenges SourceAmerica's Re-evaluation</u>

40.     On January 29, 2014, the SourceAmerica decision maker, Ryan Blackman provided NTI with a limited debriefing, during which he responded to a limited number of questions.[16] In the debriefing, SourceAmerica confirmed that NTI was in fact technically acceptable and satisfied the requirements to successfully perform the contract.[17] Both SourceAmerica and NTI consented to a tape recording of the debriefing.

---

[16]   Willard Declaration at ¶ 17.

[17]   *Id.*

41.     With regard to the evaluation criteria employed in the review of proposals, during the debrief Mr. Blackman informed NTI how it had applied the factors listed in the SSN.  Under factor number 12 ("Additional factors taken into consideration") SourceAmerica explained it had reviewed numerous other factors, including such items as the hiring and staffing plan, wounded veteran and/or military hiring, as well as such other factors as the adoption of subcontracting in relation to direct labor hours.[18]

42.     Mr. Blackman did not identify how many "additional" factors were actually rolled into the evaluation or the weight attributed to those "additional" factors, but SourceAmerica conceded during the debriefing that it did not evaluate the proposals regarding the ability of bidders to maximize employment opportunities for the disabled, which is the core purpose for the entire program, despite having done so in the initial competition.

43.     The limited January 29, 2014 debrief provided by SourceAmerica confirmed NTI's worst concerns regarding the failure of SourceAmerica to correct its procedural deficiencies in completing its second award recommendation.  NTI therefore sought to raise these concerns internally once again, utilizing the first and second level appeal process set forth by SourceAmerica's internal review procedures.

44.     On February 26, 2014, SourceAmerica's Vice President for Regional Operations Martin Williams issued a cursory denial of NTI's first level appeal.

45.     NTI then submitted a second-level appeal to the SourceAmerica Chief Operating Officer, Dennis Fields on March 4, 2014. SourceAmerica denied NTI's second-level review request by letter dated March 19, 2014.  Again, SourceAmerica's appeal decision was cursory-

---

[18] *Id.*

and did not cite any facts or other documented support for SourceAmerica's decision recommendation forming a cognizable appeal record.

46.    In these two internal appeals to SourceAmerica, NTI specifically addressed how the new award recommendation failed to meet SourceAmerica's own internal procedures. SourceAmerica's "B-1 guidelines" provided that when an "appeal" is received "[SourceAmerica's] VP, RO will provide the CRP with a well-reasoned written final decision, including factual areas of agreement and disagreement and explaining [SourceAmerica's] position within ten (10) business days." SourceAmerica's denial of the NTI appeals violated these requirements by once again offering nothing more than unsupported conclusory opinions.

47.    NTI also pointed out that the internal procedures required that in making a recommendation to the Commission, SourceAmerica must consider whether the submitted proposals would expand employment opportunities for the disabled. As stated in SourceAmerica's B-1 document, the overall purpose in assigning contracts to CRPs is "to maximize the employment options for people with significant disabilities." (B.1 Section 1.0).

48.    Further, the "Distribution Principles" articulated in SourceAmerica's B.1 guidelines provide, in relevant part that "Distribution of project development opportunities among qualified CRPs and the successful project development implementation will follow these overriding principles." (B.1 Section 4.0). NTI contended that the award decision for USDA Opportunity 2333 did not adhere to these policies and procedures.

49.    SourceAmerica confirmed (both during the previous Diaz debriefing of SSN 21537 and during the Blackman debriefing for SSN 2333) that NTI and Peckham were deemed to

be technically acceptable to perform the work for the USDA help desk operations.[19]  Source America, however, failed to take the next step:  ascertaining which of the two qualified bidders would maximize disability employment opportunities.

50.     This second step was articulated in guidance provided by David Dubinsky, West Coast Regional Director, for SourceAmerica who has a 30-year history with the program.  Just prior to preparing a proposal for the USDA re-compete, Mr. Dubinksy informed NTI that maximizing employment options for the target population should be the sole discriminator between qualified CRPs if more than one was acceptable to the federal customer.[20]

51.     NTI's two SourceAmerica appeals reiterated that SourceAmerica and the Commission continued to ignore whether Peckham could fill the hundreds of technical support jobs with qualified disabled workers as required by the SSN.  When asked during the first de-briefing what evidence SourceAmerica reviewed to confirm that Peckham was employing a workforce of at least 75% severely disabled individuals on their existing contracts, Mr. Diaz informed NTI that SourceAmerica relied entirely upon Peckham's internal Department of Regulatory Affairs self-certification for that information.[21]

52.     This was a woefully inadequate approach, particularly because NTI had pointed out to SourceAmerica many red flags indicating that Peckham's current workforce was not in fact meeting the 75% required ratio.

53.     Furthermore, in its November 6, 2013 submission to the Commission for increased oversight, NTI informed the Commission that SourceAmerica's Department of

---

[19]     Willard Declaration at ¶¶ 9 and 17.

[20]     *Id.* at ¶ 16 .

[21]     *Id.* at ¶ 9.

Regulatory Affairs simply verified that files exist with "doctors' notes" claiming that the workers have a physical or mental problem. It is then up to the "judgment" of an employee of the hiring non-profit to determine that the problem is so severe that it rendered the applicant not competitively employable in a traditional work setting. Once such a judgment is made, the non-profit can count the new hire toward their required disability ratio. [22]   It is obvious that this "honor system" is susceptible to waste, fraud and abuse.

The Commission Rejects NTI's Appeals

54.   Having exhausted the administrative process within SourceAmerica, on April 4, 2014, NTI took its concerns directly to the Commission.[23]  In its protest to the Commission, NTI explained all of the deficiencies entailed in making an award to Peckham and all of the reasons for rejecting the SourceAmerica recommendation. One particularly important advantage of NTI is that it is already the incumbent on the existing contract as a subcontractor to the incumbent prime contractor, IBM. NTI currently and successfully employs 16 severely disabled persons on this contract. NTI has shown that it can train workers and deliver high quality service in this setting. Peckham has no such experience and, in fact, the severely disabled people currently working on the contract will be fired if Peckham takes over because Peckham is not a licensed employer in the necessary states. Nevertheless, the Commission rejected NTI's concerns on May 29, 2014 and adopted SourceAmerica's recommendations for award verbatim.[24]

55.   In the Commission's letter of denial to NTI they asserted that "Maximizing employment is in the Commission Vision Statement. It is discussed in the context of

---

[22]   *See* AbilityOne Commission Compliance Manual 2007 at Section three: Medical Documentation and Competitive Employability Assessments.

[23]   NTI's appeal to the AbilityOne Commission, attached as Exhibit 4.

[24]   *See* Exhibit 2.

SourceAmerica's mission, vision, values and goals. However, it was not an evaluation criterion and it was not published as an evaluation criterion in SSN 2333." As a result, "maximizing employment" could not be evaluated."[25]

56.     "Maximizing employment" has never been listed as an evaluation criterion in any SourceAmerica SSN because it is the purpose of the entire program. It was not listed in the first USDA competition but SourceAmerica debriefing notes document that it was considered.[26] By evaluating whether NTI had a "good understanding of the hiring challenges" involved in employment opportunities for the disabled in the first competition while giving it no weight in the second, SourceAmerica acted inconsistently in applying the evaluation criteria. Its recommendation was fatally flawed in such a way that it negated NTI's greatest strength.

57.     Subsequently, through federal notice procedures in the federal register, and acting as the source selection authority, the Commission initiated Notice and Comment procedures in the Federal Register to place the award to Peckham upon the Procurement List.

58.     NTI filed comments to the Federal Register Notice on July 21, 2014, reiterating many of the same concerns about the flaws in SourceAmerica's recommendation process and the failure of SourceAmerica to follow its own procedures.[27]

59.     It also raised its concerns regarding the total reliance of the Commission upon this fatally flawed consultant recommendation; the failure to undertake an independent evaluation of the SourceAmerica evaluation process, the failure of the Commission to verify that the chosen CRP was eligible to compete (given the statistical and eyewitness evidence that Peckham failed

---

[25]   *Id.* at p.2.

[26]   *See* Willard Declaration at ¶ 19.

[27]   NTI Comments to AbilityOne Federal Register Notice, attached as Exhibit 5.

to meet even the minimum 75% hiring requirement), and the failure of SourceAmerica to place any weight on the purpose of the program when evaluating two competing organizations.

60.     These concerns were disregarded and the Commission made the final award decision to Peckham by placing the solicitation upon the Procurement List on September 15, 2015.

61.     Since the solicitation was placed on the Procurement List, NTI has continued to seek relief both from the Commission and from the USDA.[28]  NTI has been actively monitoring the current help desk contract and believed that USDA was not moving to use Peckham employees for the call desk anytime soon.[29] Last week, however, NTI learned for the first time that transition activities may soon be initiated to install Peckham employees.[30]  In light of these developments, it is evident that the Commission and USDA will not grant NTI any relief and, therefore, NTI seeks the assistance of the Court as described in the following counts.

## COUNT I

### Arbitrary and Capricious Conduct

62.     NTI hereby realleges and incorporates by reference paragraphs 1 through 61 of this Complaint as if set forth herein.

63.     The Commission has acted in an arbitrary and capricious manner throughout the course of these two solicitations because the Commission, and its consultant, SourceAmerica, failed to develop a legally sufficient administrative record and failed to follow their own

---

[28] Willard Declaration at ¶ 27.

[29] *Id.*

[30] *Id.*

statutory mandates, regulations, and guidelines in making and adopting the award recommendation to Peckham.

64.     No administrative record was developed by either the Commission or SourceAmerica because neither conducted rudimentary oversight to ensure that the recommended awardee, Peckham, could in fact meet the 75% direct labor hour eligibility requirements for eligibility under the program.  Instead the Commission and SourceAmerica relied upon the absolutely unreliable self-certification of Peckham to establish its eligibility to be a responsible bidder, despite the presentation of strong evidence that Peckham could not meet this requirement.

65.     The Commission reviewed SourceAmerica's conclusory award recommendation in a fashion that gave it unwarranted deference because the Commission applied an improper standard of review and failed to independently undertake necessary oversight as required under the AbilityOne program.

66.     This impermissible award prejudices NTI.


## COUNT II

### Violation of the Javits-Wagner-O'Day Statute by failing to maximize employment for disabled workers.

67.     NTI hereby realleges and incorporates by reference paragraphs 1 through 66 of this Complaint as if set forth herein.

68.     The Commission and its consultant, SourceAmerica, failed to evaluate the solicitation properly by taking into consideration the maximization of employment opportunities for the severely disabled workforce.

62625462_2

69.     Despite the clear requirement for the Commission to maximize employment for the severely disabled target workforce, the Commission and its consultant, SourceAmerica, have not done so here.

70.     The Commission's failure to abide by the prevailing statutes and regulations is arbitrary, capricious and an abuse of discretion and prejudices NTI, who otherwise would have received the contract award.

## COUNT III

### Failure to Qualify Bidders as Responsible Parties

71.     NTI hereby realleges and incorporates by reference paragraphs 1 through 70 of this Complaint as if set forth herein.

72.     The Commission and its consultant, SourceAmerica, failed to ensure that the recommended awardee, Peckham, met the statutory minimum requirement that 75% of its existing workforce were severely disabled and non- competitively employable.  Without this baseline determination, the prevailing bidder was not a "responsible party" for purposes of this award.

73.     The Commission's failure to verify the eligibility of Peckham, and its uncritical and verbatim adoption of the flawed SourceAmerica award recommendation, was an abdication of its oversight and responsibilities and was arbitrary, capricious and an abuse of discretion prejudicing NTI.

## COUNT IV

### Failure of the Commission to Reject SourceAmerica's
### Flawed Award Recommendation

74.     NTI hereby realleges and incorporates by reference paragraphs 1 through 73 of this Complaint as if set forth herein.

75.     The award recommendation to Peckham by SourceAmerica was fundamentally flawed.

76.     The award recommendation was defective because it was based upon the self-certification by Peckham that it could meet eligibility requirements for the disabled workforce despite evidence showing that Peckham could not do so.

77.     The Award recommendation by SourceAmerica was defective because it failed to evaluate Peckham and create a legally sufficient administrative record.

78.     The Award recommendation by SourceAmerica was defective because it failed to equitably allocate AbilityOne contracts.

79.     The Commissions failure to correct the defective SourceAmerica award recommendation and conduct its own independent evaluation was arbitrary, capricious and an abuse of discretion, which prejudiced NTI, the only other bidder to the SSN.

## COUNT V

### Request for Injunctive Relief

80.     NTI hereby realleges and incorporates by reference paragraphs 1 through 79 of this Complaint as if set forth herein.

81.     As a bidder that has been prejudiced by the Agency's violations of law and regulations, NTI has standing to pursue this action.

82.     NTI is likely to succeed on the merits because it is clear that the Commission failed to conduct proper oversight, failed to create a proper administrative record, abdicated its responsibilities by uncritically adopting a flawed award recommendation and failed to maximize employment opportunities for the severely disabled.

83.     Absent injunctive relief, NTI will be irreparably harmed.  The Commission will proceed with its award under the SSN and placement of the award upon the Procurement and

commence performance under the contract, and NTI will be precluded from contracts for any services designated by the Agency for sale under the SSN, causing irreparable harm to NTI and to the 200-300 individuals with severe disabilities who are unable to work outside of their homes but who could perform these Help Desk jobs.

84.      An injunction is appropriate because the balance of hardships favors the grant of injunctive relief.  Given that NTI is currently serving as a subcontractor to IBM, the prime on the USDA work, and that NTI is one of  current incumbents performing call center services set forth in the SSN, the government will not be harmed by continuing to obtain these items or services outside of the SSN while a determination on the propriety of the Solicitation is made by this Court.

85.      In contrast, if the Commission is allowed to immediately proceed with its award under the SSN and commence performance under the contract, NTI will be precluded from contracts for any call center services designated by the Commission for award under the Solicitation, which will substantially harm NTI's business and result in the termination of 16 of NTI's home-based employees currently working on the USDA contract as well as the expected 30-40 additional teleworkers likely to be hired on the contract prior to it "going AbilityOne". These home-based employees will not be able to commute to any bricks and mortar locations offered by Peckham.

86.      An injunction is appropriate because it is in the public interest in that the Commission has failed to abide by its statutory obligations by ensuring that the award is made to an offeror who will maximize employment opportunities for the target beneficiaries.  This impermissibly prejudices the disabled workforce, and it is contrary to the public interest to expand employment opportunities to the severely disabled.  In addition, the public has an interest

in the government following its laws and regulations and upholding the integrity and public confidence in the procurement process.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff NTI respectfully requests that this Court enter judgment in its favor, and grant the following relief:

(1) an order enjoining the Commission from maintaining the award to Peckham under the SSN on the Procurement List;

(2) a declaration that the award recommendation of SourceAmerica and the Commission's award to Peckham based upon the SourceAmerica award recommendation are arbitrary and capricious and an abuse of discretion;

(3) an order directing the Commission to conduct a valid source selection process that takes the fundamental purposes of the AbilityOne program into account once the SSN has been amended to cure the defects;

(4) an award to NTI of its reasonable costs and attorneys' fees incurred in the prosecution of this action, in accordance with the Equal Access to Justice Act, 28 U.S.C. § 2412 or as otherwise allowed by law; and

(5) such other and further relief as the Court may deem just and proper.

Dated:  March __, 2015

Respectfully submitted,


_____
Ronald K. Henry
KAYE SCHOLER LLP
The McPherson Building
901 15th Street, NW
Washington, DC  20005
Phone:  (202) 682-3500
Fax:      (202) 682-3580
ronald.henry@kayescholer.com

*Attorney for Plaintiff NTI*

OF COUNSEL:

David Hibey
Robert J. Wagman. Jr.
KAYE SCHOLER LLP
The McPherson Building
901 15th Street, NW
Washington, DC  20005
Phone:  (202) 682-3500
Fax:      (202) 682-3580
david.hibey@kayescholer.com
robert.wagman@kayescholer.com