

# U.S. ABILITYONE COMMISSION

May 29, 2014

PHONE: 703-603-7740
FAX: 703-603-0655

1401 S. Clark Street, Suite 10800
Arlington, Virginia 22202-4149

VIA EMAIL: (mjwillard@nticentral.org.)

M.J. Willard, Ed.D.
Executive Director
National Telecommuting Institute, Inc.
103 E. Blithedale Ave. Suite 9
Mill Valley, CA 94941

Dear Ms. Willard:

I have completed my review and decision regarding your appeal of SourceAmerica's recommendation regarding Source Sought Notice (SSN) #2333, IT Service Desk support,
U.S. Department of Agriculture (USDA). In doing so, I reviewed and considered:

- The written material submitted by National Telecommuting Institute, Inc. (NTI) in support of your appeal,
- The oral and written information from your presentation of April 23, 2014, (including the Supplemental Information submitted by NTI's counsel on May 4, 2014)
- The debriefing presentation and minutes from SourceAmerica's debrief of NTI,
- SourceAmerica's written record for their decision, including the SSN and submitted proposals, the evaluation team members' independent and group recommendations, and the acting Executive Director, Strategic Business Development's decision justification; and
- The oral and written information from SourceAmerica's presentation of April 23, 2014.

The policy of the U.S. AbilityOne Commission regarding Central Nonprofit Agency (CNA) selection of nonprofit agencies for project assignment is addressed in Policy 51.301, <u>Selection of Nonprofit Agencies For Project Assignment and Order Allocation</u>. Section 6(d) addresses how the Commission will consider appeals of CNA selection recommendations. It states:

*(d) Appeals to the Commission will be considered under the following circumstances:*
  *i. General policies and procedures for appeals to the Commission have been followed as detailed in separate Commission policy/procedures.*
  *ii. The Commission will only consider assignment and allocation appeals if one or more of the following apply:*
    *a. A CNA fails to follow their established policies and procedures.*
    *b. A CNA did not properly document its decision.*
    *c. The NPA selected did not meet the minimum criteria.*




**COMMITTEE FOR PURCHASE FROM PEOPLE WHO ARE BLIND OR SEVERELY DISABLED**
**An Independent Federal Agency**

AbilityOne
PROGRAM

Ms. M.J. Willard
May 29, 2014
Page 2

Accordingly, my review and decision is based on the above requirements. NTI contends that SourceAmerica failed to meet each of these requirements.

**1. NTI's appeal states that SourceAmerica failed to follow its established policy and procedures in making the decision.**

**(a) NTI asserts that SourceAmerica**: Did not evaluate which nonprofit agency would maximize employment opportunities for people with significant disabilities.

<u>Facts</u>: Maximizing employment opportunities was not an evaluation criterion.

The term "maximizing employment opportunities" is in the Commission's strategic plan and other documents as part of the Agency "Vision". Maximizing employment opportunities for the target population is not a specific requirement in the Javits-Wagner-O'Day (JWOD) Act, Code of Federal Regulations or AbilityOne mission statement for each independent source selection recommendation.

The JWOD Act requires that during the fiscal year, nonprofit agencies employ people who are blind or severely disabled for at least 75% of direct labor hours. The 75% requirement is in the SSN 2333 evaluation criteria as a "must have met" minimum criterion. SourceAmerica concluded that both the selected nonprofit agency (NPA) and NTI met this evaluation criterion.

Commission Policy 51.301 6(b)(i) states that CNAs shall assign projects and make allocations to NPAs that can meet the customers' technical and delivery requirements. Meeting technical and delivery requirements at a fair market price are consistent expectations in federal contracts. In paragraph 6(b)(i)(a), the policy states, "NPAs shall leverage efficiencies and best practices in the delivery of products and services to the Government while <u>maximizing labor hours</u> for people who are blind or have other significant disabilities".

Efficiencies and best practices are basic tenants of the ability to deliver on time at a fair price. Paragraph 6(b)(i)(a) articulates the importance of NPAs being efficient and using best practices while being mindful that the AbilityOne mission is to employ people who are blind or significantly disabled. The policy requires that NPAs do the former *while* maximizing labor hours. Efficiencies, best practices and labor hours contribute to meeting technical and delivery requirements at a fair market price. Nonprofit agencies that employ people who are blind or severely disabled for at least 75% of direct labor hours are meeting the statutory requirement. The achievement of labor hours above 75% during the fiscal year exceeds the statutes requirement and maximizes (making it as large as possible) employment.




**COMMITTEE FOR PURCHASE FROM PEOPLE WHO ARE BLIND OR SEVERELY DISABLED**
An Independent Federal Agency

Ms. M.J. Willard
May 29, 2014
Page 3

SourceAmerica's evaluation concluded that NTI and the selected NPA can meet the customers' technical and delivery requirements and thereby meet the policy 6(b)(i). This office verified that NTI and the selected NPA met the 75% requirement that is in statute and an evaluation criterion in the SSN.

SourceAmerica's AbilityOne Program Bulletin B-1, Project Development Distribution and Transparency, Version D. Dated October 1, 2011; begins with paragraph 1.0 "Purpose". While the defined purpose includes adhering to a set of best practices, *"to maximize the employment options for people with severe disabilities"*; the best practices are discussed in the context of being consistent with the SourceAmerica mission, vision, values and goals and their role defined by regulation. The Bulletin goes on to state how SourceAmerica will maximize employment; which is *"by aggressively preserving existing and proactively developing new job opportunities for people with significant disabilities."*

SourceAmerica's project development resulted in SSN 2333. The SSN fulfills the B-1 stated purpose as it is the product of SourceAmerica "proactively developing new job opportunities". It also fulfills SourceAmerica's regulatory role to "(b) Evaluate the qualifications and capabilities of its nonprofit agencies and provide the Committee with pertinent data concerning its nonprofit agencies, their status as qualified nonprofit agencies, their manufacturing or service capabilities, and other information concerning them required by the Committee" and to "(d) Recommend to the Committee, with the supporting information required by Committee procedures, suitable commodities or services for procurement from its nonprofit agencies" in accordance with 41 CFR 51-3.2(b) and (d).

**(b) NTI asserts that SourceAmerica:** Did not take into account the unique mission and objectives of the AbilityOne program by failing to evaluate which NPA would maximize employment options for individuals who are actually severely disabled.

**Facts:** The NTI appeal cites U.S. AbilityOne Commission Policy 51.301 regarding this matter. The full quote in the policy is, *"CNAs shall develop processes for project assignment and order allocation that result in fair, equitable, and transparent distribution of opportunities among NPAs, taking into account the unique mission and objectives of the AbilityOne Program"*.

The AbilityOne Bulletin No.B-1 published by SourceAmerica provides the processes they developed for project assignment and order allocation. This publication, combined with the SSN providing the same information to all offerors, the published questions and answers (posted for the information of all offerors), the application of the same evaluation criteria to all offerors, the notification to all as to which offeror was selected, the provision of debriefs upon request, and the process for appeal of the decision, collectively meet the policy requirement to provide fair, equitable and transparent project assignment recommendations to the Commission.




**COMMITTEE FOR PURCHASE FROM PEOPLE WHO ARE BLIND OR SEVERELY DISABLED**
An Independent Federal Agency

Ms. M.J. Willard
May 29, 2014
Page 4

The policy requirement for SourceAmerica to take into account the unique mission and objectives of the AbilityOne Program is met through their minimum criteria requirements. The SSN criterion requires offerors to be in accord with the JWOD Act and implementing guidance. Maximizing employment is in the Commission Vision Statement. It is discussed in the context of SourceAmerica's mission, vision, values and goals. However, it was not an evaluation criterion and it was not published as an evaluation criterion in SSN 2333. As a result, "maximizing employment" could not be evaluated.

**Finding:** NTI's assertions in 1(a) & (b) are not supported.

**(c) NTI asserts that SourceAmerica**: Indicated that the USDA did not review the revised proposals, implying that this demonstrates an error in SourceAmerica's process.

**Fact:** SSN: 2333 states, *"The USDA customer may request to review vendor responses – SourceAmerica may share some, or all, of the responses provided to this SSN"*
The SSN did not state that USDA would review responses or that they would provide responses if requested by USDA.

**Finding:** NTI assertion in 1(c) is not supported.

**(d) NTI asserts that SourceAmerica**: Failed to follow its stated evaluation criteria in the SSN.

**Facts**: SSN 2333 posts 10 "Response Questions". Each question is specifically related to a Recommendation Criterion.

Response Question 1 *"(Other) Detail your NPA's hiring and staffing plan to...."* is related to Recommendation Criteria #12, *"Other-Additional factors taken into consideration for this specific opportunity"*. In the Response Questions column titled "Criteria Type", #12 is an *"Additional Criteria"* and a response is required.
Recommendation Criterion #12 also applies to Response Question 2, which required a response that provides *"specific details regarding your expertise and/or past success in employing war wounded veterans and/or military dependents"*.

The table below illustrates how the SSN 2333 response questions were specifically related to a recommendation criterion.




COMMITTEE FOR PURCHASE FROM PEOPLE WHO ARE BLIND OR SEVERELY DISABLED
An Independent Federal Agency

Ms. M.J. Willard
May 29, 2014
Page 5

| Recommendation Number & Criteria | Response Question Numbers below were "Required" |
|---|---|
| #12, *"Other-Additional factors taken into consideration for this specific opportunity"* | #1 *"(Other) Detail your NPA's hiring and staffing plan....."* |
| #12, *"Other-Additional factors taken into consideration for this specific opportunity"* | #2 *"(Other) Provide... regarding your expertise.... In employing war wounded veterans and/or military dependents"* |
| #6 Capability | #3 *"(Capability) Describe...technical expertise..."* and #10 *"(Financial Sustainability) It is estimated that......."* |
| #7 Capacity | #4 *"(Capacity) Describe your ....management infrastructure"* and #5 *"Provide a list of any contracts....."* |
| #8 Quality | #6 *"(Quality) Describe....providing quality oversight...."* |
| Recommendation Number & Criteria | Response Question Numbers below were "Required" |
| #12 *"Other-Additional factors taken into consideration for this specific opportunity"* | #7 and 8 *"(Other Subcontract) ".....when relying on the past performance of a proposed subcontractor...."* and *"Provide an assessment ......direct labor hours that will...."* |
| #9 Geography | #9 *"(Geography) Describe how your business solution....."* |

**Facts**: NTI and the selected NPA answered the required response questions. In review of the SourceAmerica evaluation materials, no additional #12 "Other" unidentified factors were found. The documentation demonstrates that the only criteria considered were those SourceAmerica posted for response and evaluation.

On a related point, NTI's appeal letter states that during the debriefing SourceAmerica "identified four areas where NTI could improve." NTI infers, therefore, that SourceAmerica downgraded NTI's proposal in these areas. NTI then alleges that in two of the areas SourceAmerica did not follow the SSN evaluation criteria. In one area, NTI objected to being "downgraded" by SourceAmerica because NTI did not provide performance metrics from its customers, and stated that SourceAmerica's past performance questionnaire did not request this information. We have reviewed the "Past Performance History Information Form" that was attached to SSN 2333. This questionnaire explicitly requests quality ratings and customer satisfaction ratings.




Ms. M.J. Willard
May 29, 2014
Page 6

Under Areas of Improvement the SourceAmerica debrief chart states that in regard to past performance and customer requested additional information the: *"Response was high-level for NTI and then specifically spoke to IBM SLA's. Did not speak to NTI's SLA's* [Service Level Agreement] *and did not detail specific NTI customer satisfaction data"*. The SourceAmerica record shows that past performance information was part of the SSN 2333 posting and was thus proper for SourceAmerica to evaluate.

NTI also contends that it was downgraded *"for not providing sufficient details concerning its proposed approach to serve as a subcontractor to IBM ... prior to transitioning the contract...."* The SSN required a thorough response regarding technical capability including hiring, staffing, and subcontracting; therefore, NTI's approach of beginning the contract as a subcontractor was included in the evaluation. The SourceAmerica debrief charts/slides list this as an area for improvement: *"Technical Response could have included more details as to the approach to addressing the customer's requirements as listed in the SOW. Response was high level indicating NTI's role providing WAH [Work at Home] agents and IBM providing technology"*. However, when NTI indicated they were "surprised this was evaluated as a negative", As reflected in the debrief notes, SourceAmerica responded that they were providing "just one example" and it "wasn't found as a negative- recommend [you] provide more detail to strengthen response".

SourceAmerica's B-1 procedures regarding debriefing states that, *"CRPs[1] not selected may request feedback to discuss strengths and weaknesses of its proposal."* Review of the file and debriefing notes establish that SourceAmerica met its obligation to discuss "strengths and weaknesses" in the debriefing.

**Finding**: NTI assertion in 1(d) is not supported.

**(e) NTI asserts that SourceAmerica**: Did not employ a transparent distribution process and made no effort to ensure that awards are distributed in a fair and equitable manner.

**Facts**: The Commission's Policy 51.301 Paragraph 6. (a) states, *"CNAs shall develop processes for project assignment and <u>order allocation</u> that result in fair, equitable and transparent distribution of opportunities among NPAs taking into account the unique mission and objectives of the AbilityOne Program." "CNAs' assignment and allocation processes shall be published and transparent to the AbilityOne associated NPAs"*.

---

[1] Community Rehabilitation Programs (CRPs) are Nonprofit Agencies (NPAs). The terms are interchangeable.




COMMITTEE FOR PURCHASE FROM PEOPLE WHO ARE BLIND OR SEVERELY DISABLED
An Independent Federal Agency

SourceAmerica developed the B-1 Project Development Distribution and Transparency Procedure. Paragraph 4.0 of the procedure is titled "Distribution Principles". One of the five overriding principles is *"Transparency in the notification, distribution, and appeal process for project development opportunities among qualified CRPs.* It includes customary selection information such as: Responsibility for Execution, CRP Notification of Project Development Opportunities – Sources Sought Notice (SSN), Considerations, Notice of Project Distribution Decision and Appeal Process. This procedure is published and available to all NPAs. All NPAs responding to the SSN have access to the same performance work statement, evaluation criteria and opportunity to respond to the notice. All responders can ask questions, have access to all questions and answers submitted in response to the notice, propose their solutions and be debriefed on their proposal evaluation.

Equitable means that if all things are equal, the project assignments and order allocations will be shared in an equivalent or proportional manner. However, the record does not show that SourceAmerica's evaluation of the posted criteria found all responses from NTI and the selected NPA to be equal in terms of technical capability, financial capacity, or thorough response to all criteria. SourceAmerica documentation shows that SSN 2333 is a single project assignment recommendation to the Commission. Only one contract will be awarded if the Commission approves the Procurement List Addition. As required by Commission Policy, the B-1 Procedure establishes a process for fair, equitable and transparent project assignment and the process was followed.

**Fact**: In its oral presentation to my staff and me, NTI cited the Commission's regulation at 41 CFR 51-3.4 in the context of the CNA recommendation process. However, this regulation pertains to the allocation of orders when there is more than one authorized nonprofit agency providing a product or service on the Procurement List item. It is not applicable to the matter under appeal.

**Finding:** NTI assertion in 1(e) is not supported.

**Conclusion**: NTI's appeal on the basis of SourceAmerica's failure to follow its established policies and procedures is not substantiated and is denied.

**2. NTI's appeal states that SourceAmerica *did not* select a NPA that met the minimum requirements.**

**Facts**: SSN 2333 included five minimum criteria. The documentation submitted by SourceAmerica shows that it considered the minimum criteria for each nonprofit agency that responded to the SSN. The minimum criteria are "go/no-go" criteria that determine whether a technical evaluation will be performed on each offeror. The records show that all of the nonprofit agencies responding to the SSN met the go/no-go criteria as specified in the B-1 procedure and based on the documents and information in SourceAmerica's possession. SourceAmerica documented that the selected NPA met the minimum criteria.




Ms. M.J. Willard
May 29, 2014
Page 8

There is no statutory or regulatory requirement for SourceAmerica to verify that the selected NPA will only employ individuals deemed significantly disabled by the Social Security Administration (SSA) or the State Vocational Rehabilitation (VR) Agency. While such a validation process has been recommended by NTI, the Commission is still in the process of studying such an approach, and has not established "presumptive *in*eligibility" status for individuals who are not in the SSA or VR databases.

**Finding**: My review found that the SourceAmerica evaluation and documentation substantiate that the selected NPA met the five minimum criteria posted in the SSN.

**Conclusion**: NTI's appeal on the basis of SourceAmerica's failure to select a NPA that met the minimum requirements was not substantiated and is denied.

**3. NTI's appeal states that SourceAmerica has not properly documented its decision (including SourceAmerica's decisions on the appeal).**

**Facts**: The central nonprofit agency (CNA) NPA evaluation and recommendation process is not required to follow the same competitive procedures as a Federal Acquisition Regulation (FAR) based selection; however, it is true of both processes that the evaluation team's recommendation and work products are not furnished to the successful or unsuccessful offerors. Consequently, NTI (or the selected NPA) has not received SourceAmerica documentation and basis for concluding who they [SourceAmerica] would recommend to the Commission for performance of the USDA IT Service Desk Support.

However, in our oversight capacity and to review the assertion raised by NTI, my staff and I reviewed the SourceAmerica work products, including but not limited to the evaluation notes of the SourceAmerica team and the rationale for the decision made. The purpose of the review was to determine whether SourceAmerica properly documented their decision.

SourceAmerica's records show that their evaluation team documented each nonprofit agency's response to the posted evaluation criteria, as well as their [evaluation team's] assessment of the responses. The records also document the basis for the evaluation team's recommendation and the conclusion that was reached. The documentation reveals that the evaluation team relied on the evaluation criteria and information as posted in SSN 2333 and the implementing regulations and guidance. Additionally, notwithstanding NTI's assertion that "four days is simply not enough time to evaluate three proposals from scratch", the evaluation team records capably establish that a thorough review and evaluation was conducted. The evaluation team's recommendation is properly documented.

**NTI also asserts that**: SourceAmerica executives responsible for considering NTI's first and second level appeals did not adequately document their decisions.




COMMITTEE FOR PURCHASE FROM PEOPLE WHO ARE BLIND OR SEVERELY DISABLED
An Independent Federal Agency

Ms. M.J. Willard
May 29, 2014
Page 9

**Facts:** The SourceAmerica B-1 appeal process permits a non-selected NPA to appeal to the SourceAmerica VP, Regional Operations (VPRO) and, if not satisfied with the decision of the VPRO, a second-level appeal to the SourceAmerica Chief Operating Officer (COO). NTI exercised its appeal rights, and the VPRO first level appeal decision response to NTI is dated February 26, 2014. The COO second level appeal decision response to NTI is dated March 19, 2014. Both decisions denied NTI's appeal.

From the first level appeal response, the following content is quoted:

*"I conducted a thorough review of the methodology SourceAmerica followed......in order to address the pertinent themes in the [NTI] appeal letter. My review included the relevant regulatory references, the AbilityOne Program Bulletin No.-1 Project Development Distribution and Transparency Procedure (B-1), any documentation submitted by the responding agencies and documentation generated by the SourceAmerica evaluation team".*

The first level appeal response also addressed issues raised in NTI's appeal as quoted below:

*"The agency selected to be recommended for this opportunity will be subject to all rules, regulations and requirements of the AbilityOne Program as specified in 41 CFR Chapter 51, FAR 8.7, and all applicable rules, regulations, policies and memorandums of the U.S. AbilityOne Commission. The responses and documentation provided in response to these requirements were reviewed by the evaluation team".*

*"I have reviewed all necessary and pertinent documentation in the process of responding to your appeal. I have concluded that SourceAmerica followed the B-1 guidelines and agree with the evaluation team's project recommendation decision."*

In its second level appeal, NTI specifically alleged that SourceAmerica failed to follow established policies and procedures, failed to properly document its decision and selected a CRP that failed to meet minimum criteria. In his response, the COO[2] specifically addressed each of the three allegations NTI identified. The COO found that the B-1 requirements for the selection process were satisfied and concluded that there was no reason to overturn the selection.

**Findings:** My review found that SourceAmerica did document its recommendation decision for SSN 2333 and its decisions on appeal.

---

[2] The appeal process indicates that the COO will consider an appeal "only if there is new pertinent information that was not available at the time the [VPRO] issued the initial decision."




COMMITTEE FOR PURCHASE FROM PEOPLE WHO ARE BLIND OR SEVERELY DISABLED
An Independent Federal Agency

Ms. M.J. Willard
May 29, 2014
Page 10

**Conclusion:** SourceAmerica's decision is sufficiently documented in accordance with the B-1 appeal process and Commission Policy 51.301. NTI's appeal on the basis of SourceAmerica's failure to properly document its decision was not substantiated and is denied.

**Final Decision**[3]**:** I found that SourceAmerica did follow their established policies and procedures. They did properly document their decision. The selected NPA did meet the minimum criteria. Accordingly, I have no basis to overturn the SourceAmerica decision on the nonprofit agency they will recommend to the Commission for the IT Service Desk support requirement of the U.S. Department of Agriculture. NTI's appeal is denied.

Sincerely,

E. Ballard
Executive Director and CEO

cc:   Ronald K. Henry, Attorney for NTI
      Robert Chamberlin, SourceAmerica President and CEO
      Dennis Field, SourceAmerica COO
      Martin Williams, SourceAmerica, VP of Regional Operations

---

[3] Mr. Ronald Henry's supplemental submission on behalf of NTI via email on May 4, 2014 stated, "The Commission is not sitting in the position of an appeals court to address whether SourceAmerica committed an abuse of discretion in rendering a decision that is subject to review under the Administrative Procedures Act or other form of judicial review. Instead, the Commission itself is making the original decision here. See, e.g., Commission Policy 51.301, Section 5.(a)i." However, the Executive Director, on behalf of the Commission is, in fact, making an appeal decision in accordance with Commission Policy 51.301 Section 6(d) and based on the criteria therein, which is a required preliminary decision as there is no proposed PL addition package presently pending before the Commission members.




COMMITTEE FOR PURCHASE FROM PEOPLE WHO ARE BLIND OR SEVERELY DISABLED
An Independent Federal Agency