

Ronald K. Henry
+1 202 682 3590 office
ronald.henry@kayescholer.com

The McPherson Building
901 Fifteenth Street, NW
Washington, DC 20005-2327
+1 202 682 3500 main
+1 202 682 3580 fax

April 4, 2014

Ms Tina Ballard
  Executive Director
Ms. Kimberly M. Zeich
  Deputy Executive Director
U.S. AbilityOne Commission
1401 South Clark Street
Suite 10800
Arlington, VA  22202

Re:   **NTI Protest of USDA Helpdesk Opportunity 2333**

Dear Ms. Ballard and Ms. Zeich:

We represent National Telecommuting Institute, Inc. ("NTI").  NTI is hereby appealing the award recommendation by SourceAmerica to the U.S. AbilityOne Commission (the "Commission") regarding U.S. Department of Agriculture's ("USDA") Helpdesk Opportunity 2333.  Under section 6(d) of the Commission's Policy 51.301, the Commission will consider appeals regarding a Central Nonprofit Agency's ("CNA") award decision if the decision violates any of the enumerated three criteria.   As set forth below, because NTI's appeal of SourceAmerica's decision meets all three criteria, the Commission should grant NTI's appeal.

NTI respectfully requests a hearing before the Commission to present its appeal as soon as practicable.

### BACKGROUND

The AbilityOne program's statutorily-mandated purpose is to maximize employment options for people with significant disabilities.  As it should be, the overall importance of the program's fundamental purpose is stressed as the overriding purpose in SourceAmerica's Distribution and Transparency Procedure.  (SourceAmerica's Project Development Distribution and Transparency Procedure (Doc. No. USOP2-0002)( the "B-1" document)).  SourceAmerica's B-1 procedures were clarified in a fall 2013 conversation with Jean Robinson, Chief Counsel for

Ms. Ballard & Ms. Zeich.     April 4, 2014 | Page 2

SourceAmerica who explained that the purpose of a selection recommendation decision was to select the Community Rehabilitation Program ("CRP") that could maximize the jobs for the target population. Likewise, David Dubinsky, Director of the SourceAmerica West Coast Region, explained that if more than one CRP is found to be technically acceptable, then under SourceAmerica's B-1 procedures, maximizing employment of the target population becomes the sole basis upon which a selection decision should be made.

While many CRPs struggle to find truly disabled persons to staff their available AbilityOne positions, NTI has the opposite problem. NTI is a leader in operating virtual call centers that provide telework employment opportunities for disabled individuals not able to work outside of their homes. Along the disability spectrum, NTI serves those at the outer-end who are truly severely disabled and cannot work at a central AbilityOne location, and are not competitively employable. On average, clients NTI has placed into telework positions have not worked in 47 months. Because the demand for telework positions for severely disabled persons far exceeds the availability, NTI, on average, has between 500 - 1,500 individuals awaiting placement. These are people who want to work, but the AbilityOne program has not been able to serve.

The USDA Helpdesk Opportunity presents a rare opportunity for the AbilityOne program to now expand its reach by offering employment opportunities to individuals whose disabilities are so severe that they are prevented from being employed on other AbilityOne projects. Based on the AbilityOne program's mission as implemented in SourceAmerica's B-1 document, NTI took pains to make clear the manner in which it differed from other CRPs. NTI's telework solution could uniquely further the purpose of the AbilityOne program by serving a population not served by other CRPs and thus, truly "maximize the employment options for people with significant disabilities" who have no other employment options.

Had SourceAmerica followed its B-1 procedures that compel maximizing employment opportunities for the severely disabled, NTI would have been selected. However, because SourceAmerica has once again disregard its B-1 procedures in violation of the Commission's policies, NTI is now asking the Commission to step in and effectuate the AbilityOne mission. NTI's complaint about the SourceAmerica selection is not a minor or academic matter. Real people with real, severe disabilities and no other employment prospects will be personally and significantly injured if this opportunity is taken away from them through a wrongful selection of Peckham Industries, Inc. ("Peckham").

<u>The Initial Solicitation</u>

This matter has been before the Commission previously. In April of 2013, SourceAmerica issued a sources sought notice ("SSN") for USDA Helpdesk Opportunity 21573. Both NTI and Peckham submitted proposals in response to the SSN. At the conclusion of the competition, SourceAmerica selected Peckham for the award recommendation.

Ms. Ballard & Ms. Zeich.     April 4, 2014 | Page 3

After exhausting its appeal rights within SourceAmerica, NTI appealed SourceAmerica's award recommendation decision to the Commission on October 25, 2013. As requested by the Commission, NTI submitted its written appeal on November 6, 2013. On December 20, 2013, the Commission sustained NTI's appeal, holding, in relevant part, that SourceAmerica "failed to follow its established policies and procedures by evaluating NTI on criteria that was not included in the Source Selection Notice #2000, dated April 29, 2013. Consequently, the SourceAmerica USDA IT Desk Support project selection decision is being returned to them for appropriate action."

The Revised Solicitation

On remand, SourceAmerica issued a revised SSN on January 3, 2014, for the USDA Helpdesk opportunity, requiring responses by January 17, 2014. (The revised SSN was number 2333.) For the revised SSN, the technical requirements and the statements of work prepared by the USDA were unchanged.

In relevant part, SourceAmerica advised prospective CRPs bidding on the USDA Helpdesk opportunity that it would apply the following selection criteria to its evaluation:

> 1.     A CRP must have met the 75% Agency ratio (based upon the last 404) or have a written plan with the Commission or the NISH Regulatory Department demonstrating a concrete phase-in strategy to reach proper agency ratio status within a period acceptable to the US AbilityOne Commission. For CRPs that do not currently have any AbilityOne Projects, they must be affiliates in good standing, and able to meet all Program requirements. (Minimum Criteria)

> 2     A CRP will be compliant with the requirements set forth in NISH's policy/procedures for Reporting of AbilityOne Sales and Payment of NISH AbilityOne Funding Fee. Any CRP that believes it has been incorrectly identified as ineligible based upon financial or reporting issues to be considered for project opportunities has 10 business days upon receipt of notification from Accounting in which to provide NISH with detailed documentation to support its compliance. All requests for review and reconsideration shall be submitted to NISH's Chief Financial Officer at the NISH National Office, Vienna, VA. (Minimum Criteria)

> 3     CRPs that have a valid cure-notice applicable to any of their AbilityOne projects, or are currently in Step #2, #3, or #4 of the 4-Step Process due to performance/quality issues, will not be eligible for any new opportunities. If a CRP's AbilityOne Contract

Ms. Ballard & Ms. Zeich.     April 4, 2014 | Page 4

has been removed, it will not be eligible for new opportunities until one year has elapsed and the CRP can demonstrate renewed capacity. (Minimum Criteria)

4     A CRP must be current in its annual registration with NISH. All affiliated CRPs must annually register their organization between October 1 and December 31 of each year. Failure to register during the enrollment period will cause the CRP to become ineligible for project distributions for the balance of the NISH fiscal year. Registration can only be re-established with NISH during the October-December enrollment period. (Minimum Criteria)

5     Additional Minimum Eligibility - Projects with an annual value in excess of $1M will trigger a financial stability and sustainability assessment of the potential CRP selectee(s), to include any commercial and/or CRP subcontractors. (Minimum Criteria)

6     Capability- The ability to produce, perform, or deploy a given product or service at a measurable, repeatable, and sustainable rate. (Additional Criteria)

7     Capacity- The ability to meet customer expectations, grow in existing markets, and develop new lines of business. (Additional Criteria)

8     Quality- Proven existing systems to ensure successful contract performance. (Additional Criteria)

9     Geography- A CRP that is located in the general geographic area in which services are provided to people with significant disabilities, noted in corporate literature as a "place of doing business". (Additional Criteria)

10     Past Performance- Indications of a CRP's ability to perform the contract successfully based upon current or prior relevant experience. (Additional Criteria)

11     Expanding AbilityOne® capability / capacity - CRPs who meet all other criteria listed herein may be given preference if assignment of this opportunity will broaden the CRP base within the AbilityOne® Program. (Additional Criteria)

12     Other- Additional factors taken into consideration for this specific opportunity. (Additional Criteria)

NTI's Proposal

NTI submitted a timely proposal on January 17, 2014.  To ensure continuity of services, NTI proposed subcontracting certain technical functions to IBM, the incumbent on the current USDA call center contract.  Given the overall AbilityOne mission to "maximize employment of the target population" and the specific requirements of the SSN, NTI proposed to provide a solution calling for home-based representatives that would provide employment opportunities nationwide for severely disabled persons who could not otherwise work outside of their homes.

In addition, to ensure that NTI was both providing the highest-quality services to the USDA while maximizing employment opportunities for truly severely-disabled individuals, NTI pointed out that:

- 100% of NTI's proposed workforce has been independently verified by either the SSA or their state VR agency.  NTI's proposed workforce all require home-based work.  Because all the proposed individuals have been independently-verified with severe disabilities, NTI is able to provide a factual basis for the required determination that NTI is a qualified Community Rehabilitation Program ("CRP") and serving the severely disabled population consistent with the AbilityOne program's mission.

- 100% of the individuals with disabilities needed to staff the USDA contract have already been screened and given preliminary training by NTI.  Due to the tremendous demand for home-based jobs, at any given time NTI has between 500-1,500 individuals with independently-verifiable severe disabilities waiting for placement as virtual customer service/help desk agents.  Accordingly, NTI demonstrated that it can meet any increased demands of the USDA-customer with an already-recruited population, while ensuring compliance with the AbilityOne mission and requirements.

- NTI is also able to offer the fastest possible speed of ramp up.  In addition to the pre-screening discussed above, NTI noted in its proposal that the incumbent on the contract, IBM, had offered to immediately authorize NTI to perform as its subcontractor during the anticipated transition period.  Under NTI's proposal, on the first day that the USDA work officially transitions to the AbilityOne program, 80% of the existing direct labor tech support agents will already be people with severe disabilities.  The remaining 20% who staff the "911 Help Desk" will be phased out over a 12-18 month period as agents with disabilities gain the experience needed to perform this very demanding work.

Ms. Ballard & Ms. Zeich.        April 4, 2014 | Page 6

### SourceAmerica's Evaluation of Revised Proposals

After the Commission upheld NTI's appeal and remanded the matter back to SourceAmerica, as part of the review of revised proposals, SourceAmerica replaced the entire review panel to make the new award recommendation decision. Notably, the acting executive director who was appointed to lead the new source selection recommendation review had never been responsible for making any award decisions previously. Four business days after revised proposals were submitted, on January 23, 2014, SourceAmerica issued its a new award recommendation decision, once again deciding to recommend Peckham for award of the USDA call center opportunity.

On January 29, 2014, SourceAmerica provided NTI with a limited debriefing, during which the SourceAmerica personnel responded to limited questions.[1]   As an initial matter, SourceAmerica confirmed that NTI was found to be technically acceptable and satisfied the minimum requirements to successfully perform the contract. NTI was informed that the USDA reviewed initial proposals and found both NTI and Peckham to be technically acceptable. During the January 29 debriefing for the revised SSN, SourceAmerica indicated that the USDA did not review the revised proposals.

With regards to the evaluation criteria employed in the review of proposals, SourceAmerica informed NTI that it applied the twelve factors listed in the SSN. Under factor number 12 ("Additional factors taken into consideration") SourceAmerica explained it reviewed numerous other factors to include, the hiring and staffing plan, wounded veteran and/or military hiring. In addition, SourceAmerica informed NTI that it also considered other factors such as subcontracting in relation to direct labor hours as assigned covered in the "additional information" section of the SSN. Thus, it is not clear exactly how many factors were actually evaluated.

Notably, when asked specifically about whether SourceAmerica had evaluated the ability to maximize employment opportunities for the target population, SourceAmerica confirmed that no such analysis was conducted. Rather, SourceAmerica confirmed that it considered only the factors listed in the SSN and weighed those factors equally.

---

[1] By mutual consent, both parties recorded the debriefing.

Ms. Ballard & Ms. Zeich.      April 4, 2014  |  Page 7

NTI's Appeals to SourceAmerica

NTI appealed SourceAmerica's recommendation decision first through SourceAmerica's appeal procedures. (A copy of NTI's appeal is attached as Exhibit 1.) SourceAmerica's B-1 document provides that when an appeal is received that "[SourceAmerica's] VP, RO will provide the CRP with a well-reasoned written final decision, including factual areas of agreement and disagreement and explaining [SourceAmerica's] position within ten (10) business days." On February 26, 2014, SourceAmerica's Vice president for Regional Operations issued a cursory denial of NTI's initial appeal. (A copy is attached as Exhibit 2.) Notwithstanding SourceAmerica's obligation to provide "a well-reasoned written final decision," the analysis and discussion of the VP RO's reasoning in its entirety stated: "I have reviewed all necessary and pertinent documentation in the process of responding to your appeal. I have concluded that SourceAmerica followed the B-1 guidelines and agree with the evaluation team's project recommendation." (Ex.2 at 2.)

NTI submitted a second-level appeal to the SourceAmerica Chief Operating Officer on March 4, 2014. (A copy of NTI's second-level appeal is attached as Exhibit 3.) SourceAmerica denied NTI's second-level appeal by letter dated March 19, 2014. (A copy is attached as Exhibit 4.) Here again, SourceAmerica's appeal decision does not cite any facts or other documented support for SourceAmerica's decision recommendation. Instead, SourceAmerica again offered nothing more than unsupported conclusory opinions. *See id.* at 2 "In my review of the selection process I believe that all five of these principals [sic] were properly considered in the process."

**GROUNDS FOR APPEAL**

SourceAmerica's award recommendation decision cannot be relied upon by the Commission. As discussed below, the procedures followed by SourceAmerica in making the CRP selection recommendation decision for USDA Opportunity 2333 were flawed. Accordingly, SourceAmerica's resulting award recommendation is insufficient to establish the necessary rational basis to support an award decision by the Commission. SourceAmerica concedes as much in the Chief Operation Officer's appeal decision:

> You [NTI] make the following statement:
>
> "This is simply insufficient to establish that SourceAmerica's decision was rationally based and followed its stated B-1 requirements. It is well settled that award decisions of government contracts must be sufficiently documented in order to ensure meaningful review, and here, SourceAmerica has fallen short."
>
> Our requirement is to follow the stated B1 requirements for the distribution of a contract opportunity. That process may or may not result in "*award decisions of government contracts*" as some

> future date by the federal government agency which in this case
> would be the USDA.

(Ex. 4 at 2.)

The Commission's regulations and policies (Policy 51.301) provide, in relevant part, that in order to withstand scrutiny, SourceAmerica needs to demonstrate that in making its decision to place this award with Peckham that it has:

- followed its established policies and procedures;
- properly documented its decision; and
- selected a CRP that met the minimum requirements.

As noted above, on December 20, 2013, the Commission remanded SourceAmerica's award decision. SourceAmerica has not remedied the previously-identified problems and here again, SourceAmerica has failed to produce an award decision recommendation that the Commission can rely upon because SourceAmerica has fallen short of each of these three requirements.

1.      SourceAmerica Failed to Follow its Established Policies and Procedures

In May, 2012, the Commission issued Policy 51.301 guidance establishing a minimum set of broad principles all CNAs are required to follow when distributing projects among nonprofits agencies ("NPAs"). Based on the Commission's statutory mandate and the governing regulations, the irreducible minimum CNAs must follow in the selection of an NPA is as follows:

> CNAs shall develop processes for project assignment and order
> allocation that result in fair, equitable, and transparent distribution
> of opportunities among NPAs, taking into account the unique
> mission and objectives of the AbilityOne Program.

Commission Policy 51.301 § 6(a).

Here, first, SourceAmerica did not take into account the unique mission and objectives of the AbilityOne program by failing to evaluate which CRP would maximize employment options for individuals who are actually severely disabled. Second, SourceAmerica did not employ a transparent distribution process, but instead utilized unstated evaluation criteria to make the same award recommendation decision it made prior to remand. Finally, SourceAmerica made no effort to ensure that awards are distributed in a fair and equitable manner and instead simply recommended award to the same firm to which it has awarded more work than any other CRP.

Ms. Ballard & Ms. Zeich.      April 4, 2014 | Page 9

> a. SourceAmerica Did Not Evaluate Which CRP Would Maximize
> Employment Options for Severely Disabled Persons

As required under the Commission's policies, SourceAmerica has developed processes for project assignment and order allocation codified in its B-1 document. As stated in SourceAmerica's B-1 document, the overall purpose in assigning contracts to CRPs is "to maximize the employment options for people with significant disabilities." (B.1 Section 1.0). Further, the "Distribution Principles" articulated in SourceAmerica's B-1 provides, in relevant part, that "Distribution of project development opportunities among qualified CRPs and the successful project development implementation will follow these overriding principles." (B.1 Section 4.0 (emphasis added).) The award decision for USDA Opportunity 2333 did not adhere to this established policy and procedure.

SourceAmerica confirmed during the debriefing that NTI and Peckham were both determined to be technically acceptable by SourceAmerica to perform the work for the USDA help desk operations.[2]  The proper implementation of the above-quoted B-1 policies and procedures, is that once the determination is made that more than one CRP is qualified to perform a contract, the decision is to be made on the basis of which CRP will maximize the employment options for the target population. As noted above, the guidance provided by SourceAmerica senior executives concerning the proper interpretation of the B-1 policies and procedures is that maximizing employment options for the target population is the sole discriminator between technically qualified CRPs. This straightforward approach clearly implements the AbilityOne program's mission as reflected in SourceAmerica's stated policies and procedures.

For the USDA Opportunity 2333, SourceAmerica failed to follow these stated polices. In the four business days SourceAmerica spent getting a new evaluation team up to speed on the procurement and evaluating the three proposals that it received in response to the revised SSN, and purportedly documenting its decision, SourceAmerica never evaluated which CRP would maximize employment options for people with significant disabilities. In response to the direct question concerning whether it had conducted such an evaluation, the acting executive director indicated that SourceAmerica only considered the evaluation factors related to performance stated above, and that those factors were weighted equally.

---

[2] SourceAmerica also indicated that it received a third proposal from an unidentified offeror. No information was provided concerning this third offeror.

Ms. Ballard & Ms. Zeich.      April 4, 2014 | Page 10

Maximizing employment options for the population was not a priority for SourceAmerica or even meaningfully considered. Instead, SourceAmerica based it award recommendation on its view of which offeor was likely to provide better helpdesk services, without ever considering which offeror would maximize employment options for truly severely disabled individuals. While NTI disputes SourceAmerica's technical evaluation, as detailed below, an evaluation based solely on technical factors does nothing to advance the AbilityOne mission. While SourceAmerica's B-1 document provides a list of other factors that it may consider, these discretionary factors cannot be used to displace the required fulfillment of the B-1 overriding principle to maximize employment options for the target population. SourceAmerica deemed both Peckham and NTI technically acceptable; however, it failed to consider that NTI's telework solution provides employment options nationwide for those individuals whose disabilities are too severe to work at any location other than their homes.

NTI was clearly prejudiced by SourceAmerica's deviation from its stated B-1 policies and procedures. As noted above, NTI developed a solution that satisfied all the USDA's technical requirements and more importantly, would provide employment opportunities to individuals not employable on other AbilityOne projects, and therefore, greatly expanded the employment options beyond what other CRPs could provide.

The prejudice of SourceAmerica's selection decision to the competing CRPs is minor relative to the prejudice to people with truly severe disabilities seeking employment through the AbilityOne program. In the past 10 years, home-bound individuals in need of telework jobs have not had a single new virtual call center opportunity for which they could apply. Given the USDA's rare opportunity for a telework solution, the selection of a CRP that will not expand employment options does nothing to further the AbilityOne program's mission.

Because SourceAmerica failed to follow its own B-1 guidelines to maximize the employment options for people with significant disabilities, the award recommendation cannot be relied upon to support an award decision by the Commission.

   b.  SourceAmerica Failed to Follow Its Stated Evaluation Criteria in the SSN

While the de-briefing that SourceAmerica provided to NTI was not a required debriefing called for under FAR 15.506, and therefore limited in scope, it was sufficient to confirm that SourceAmerica failed to follow the evaluation criteria established for this SSN. During the debriefing, SourceAmerica identified four areas where NTI could improve, where the inference is that it was an area where NTI was downgraded. Notably, in two of the four areas identified, it is clear that SourceAmerica did not follow the solicitation in evaluating NTI.

First, with regards to past performance, SourceAmerica downgraded NTI because NTI had not provided performance metrics from its customers. However, in the past performance questionnaire provided for this SSN, SourceAmerica did not request information. Had

Ms. Ballard & Ms. Zeich.      April 4, 2014  |  Page 11

SourceAmerica informed offerors that it intended to evaluate performance metrics, SourceAmerica could have provided that information. Additionally, SourceAmerica downgraded NTI for not providing sufficient details concerning its proposed approach to serve as a subcontractor to IBM—*i.e.*, the current incumbent—prior to transitioning the contract operations to NTI so that NTI's staff would be fully trained and functioning on day one and ensure a seamless transition for the USDA. This was a unique value-added solution, and beyond the evaluation criteria set forth for this SSN. While SourceAmerica had no obligation to give NTI "extra credit" for this additional feature, it was improper to downgrade NTI for not providing sufficient details about a factor that was not called out in the SSN. Accordingly, here again, SourceAmerica did not follow the evaluation criteria set forth in the SSN

It bears mention that NTI has not seen the entire evaluation record and it is more than likely that SourceAmerica has deviated from the selection criteria in other places as well. Further, as noted above, given the vagueness of the "additional factors taken into consideration" factor, it still remains unclear exactly what factors SourceAmerica evaluated in its four-day review. It is black-letter law that for an award decision to be rational, offerros must be evaluated consistently with the terms of the operative solicitation. Accordingly, even assuming that SourceAmerica has complied with its B-1 document—which it has not—SourceAmerica's failure to evaluate CRPs consistently with the SSN provides yet another reason why the award recommendation cannot be relied upon to make an award decision.

SourceAmerica's deviations from the evaluation criteria were prejudicial to NTI, and more importantly cannot establish the requisite rational basis necessary to support an award decision.

c.   SourceAmerica has Failed to Distribute Opportunities on an Equitable Basis

Under the Commission's implementing regulations (41 C.F.R. Part 51-3) impose certain requirements in all Central Nonprofit Agencies. Specifically, 41 C.F.R. § 51.3-2(g) requires all CNAs such as SourceAmerica to "Maintain the necessary records and data on its nonprofit agencies to enable it to allocate orders equitably." Further, 41 C.F.R. § 51-3.4 provides in relevant part: "When the Committee has approved two or more nonprofit agencies to furnish a specific commodity or service, the central nonprofit agency shall distribute orders among those nonprofit agencies in a fair and equitable manner."[3] The requirement for fair and equitable

--------------------------------

[3] Curiously, Section 2.0 of SourceAmerica's B-1 document on references subsections (a) and (b), of 41 C.F.R. § 51-3.2, notwithstanding the fact that there are numerous other requirements set forth in 41 C.F.R. Part 51-3.

distribution of opportunities is likewise incorporated into the Commission's 51.301 Policy document. *See* Commission Policy 51.301 § 6(a).

SourceAmerica has taken no steps, or undertaken any analysis as part of this process, to ensure that AbilityOne contracts are allocated fairly and equitably. In 2012, Peckham performed more AbilityOne work than any other CRP in the program. NTI estimates that Peckham received 20 times more work than NTI over the past few years. Here, SourceAmerica elected to award to Peckham even though SourceAmerica in the past has awarded more work to Peckham than it was able to perform. This undisputed fact was documented in a report by *The Oregonian,* which reported that Peckham was caught subcontracting out AbilityOne work meant for disabled individuals to a commercial contractor.

Failure by CNAs, such as SourceAmerica, to ensure equitable distribution has lead the Government Accountability Office in May 2013 to conclude, in part, that "some affiliates have questioned the overall integrity of the CNA's assignment processes" because "they feel the system is biased in that assignment decisions tend to favor larger affiliates, affiliates that are or were on one of the CNA's boards of directors, or are a member of a particular affiliate sub-group."[4] It is this lack and transparency and integrity that the prompted the Commission to issue Policy 51.301.

Now, it is time for the Commission to enforce its policies. In SourceAmerica's haste to re-award this opportunity to Peckham, SourceAmerica gave no consideration to its legal obligation to equitably distribute awards among qualified CRPs. Accordingly, because SourceAmerica has failed to comply with its legal obligations, its award recommendation does not provide a rational basis upon which an award decision can be based.

2.      SourceAmerica Has Not Made Award to a CRP that Meets the Minimum Requirements

Among other things, under the applicable regulations implementing the AbilityOne program, CNAs such as SourceAmerica are required to "Monitor and assist its nonprofit agencies to meet the statutory and regulatory requirements to fully participate in the program. Conduct assistance visits with its nonprofits as necessary and provide the Committee with the results and recommendations of such visits." 41 C.F.R. §51-3.2(j).

---

[4] Government Accountability Office, *Employing People with Blindness or Severe Disabilities, Enhanced Oversight of the AbilityOne Program Needed,* GAO-13-457 (May 2013) at 22-23.

Ms. Ballard & Ms. Zeich.      April 4, 2014 | Page 13

Despite having the affirmative duty to monitor nonprofit agencies' compliance with statutory and regulatory requirements, SourceAmerica has completely abdicated this responsibility and instead simply accepted Peckham's naked representation that it will in fact employ severely disabled persons on the USDA helpdesk contract. Notwithstanding Peckham's past issues regarding improper subcontracting, SourceAmerica has simply accepted Peckham's self-certification without taking any steps to verify the veracity of such a representation. Indeed, in denying NTI's appeal below, the Vice President for Regional Operations only notes that CRPs are required under the terms of the Solicitation to comply with the AbilityOne program rules, but does not identify any steps SourceAmerica has taken to evaluate, or will take to ensure compliance, such as independently verifying the status of employees by either the SSA or their state VR agency. (Ex. 2 at 2.)

Ultimately, a federal government contract is going to be awarded at the end of the process here. And, any award decisions must be supported by sufficient facts to ensure that awards are only made to responsible parties who will comply with the AbilityOne program's applicable statutory and regulatory requirements. As noted above, SourceAmerica disavows any obligation to supply the requisite factual basis by claiming "Our requirement is to follow the stated B1 requirements for the distribution of a contract opportunity. That process may or may not result in *"award decisions of government contracts"* as some future date by the federal government agency which in this case would be the USDA." (Ex. 4 at 2.)

Regardless of whether SourceAmerica's head-in-the-sand approach of accepting certifications technically satisfies the letter of the B1 requirements, it is clear that its willful ignorance of relevant facts does not even come close to establishing a rational basis that could support an award decision of a federal government contract. Accordingly, whoever is ultimately deciding to award the contract cannot rely upon SourceAmerica's recommendation.

3.     SourceAmerica Has Not Properly Documented its Decision

Because the award of a federal government contract is required to be supported by a rational basis, it is well settled that award decisions of government contracts must be sufficiently documented in order to ensure meaningful review. Certainly, an award decision cannot survive even the mildest scrutiny if it is based on an irrational recommendation from a CNA. Accordingly, the Commission included the requirement in its policy document requiring CNAs to document their award recommendation decisions, and will sustain appeals where a CNA fails to do so. (Commission Policy 51.301.)

In denying this appeal below, SourceAmerica's Vice President for Regional Operations did not put forth, or even cite to any contemporaneous documentation supporting SourceAmerica's decision. Instead, the Vice President only offered his conclusory impressions that he had reviewed some documentation and "agrees with the evaluation team's project recommendation decision." This is simply insufficient to establish that SourceAmerica's

Ms. Ballard & Ms. Zeich.      April 4, 2014  |  Page 14

recommendation decision was rationally based and followed its stated B-1 requirements. Similarly, SourceAmerica's second-level appeal decision does not identify a single contemporaneous document articulating SourceAmerica's findings that could rationally support the choices made.

Regardless of whether SourceAmerica satisfied its obligations under its B-1 document, as noted earlier, the Chief Operating Officer in denying NTI's second-level appeal asserted SourceAmerica's obligation to document facts under its B1 requirements is far less stringent than the requirements applicable to awarding federal government contracts. Indeed, four days is simply not enough time to evaluate three proposals from scratch, meaningfully consider the respective strengths and weakness offered by each proposal, adequately document all of the evaluators' findings, and make a reasoned decision. Accordingly, here again, SourceAmerica has failed to produce an award recommendation that can be relied upon to make an award decision. Accordingly, SourceAmerica has fallen short of its obligations under Commission Policy 51.301 requiring that the Commission sustain this appeal.

## CONCLUSION

For the foregoing reasons, the Commission should sustain this appeal. As noted in NTI's letter dated February 4, 2014, SourceAmerica has now failed twice to produce an award recommendation that is sufficient to be relied upon to support the award of the USDA Helpdesk contract. It is not in the interests of the AbilityOne Program to delay this process any further. Accordingly, NTI again respectfully requests that the Commission exercise its authority to direct assignment of work based on its review of the proposals.

NTI stand ready to meet with the Commission at its earliest opportunity to present the issues set forth in this appeal letter.

Respectfully,

Ronald K. Henry
Attorneys for NTI

# EXHIBIT 1

**From:** MJ Willard
**Sent:** Thursday, February 06, 2014 9:25 AM
**To:** Williams, Martin/National (mwilliams@sourceamerica.org); Alan Hubbard
**Cc:** dafields@sourceamerica.org
**Subject:** USDA Help Desk Opportunity 21573 - Appeal from NTI


Dear Mr. Martin:

Once again there have been major problems with the B-1 Distribution procedure implemented by SourceAmerica personnel with respect to USDA Help Desk Opportunity 21573. On December 20, 2013, Ms. Ballard determined that SourceAmerica failed to follow its established policies and procedures in awarding the contract to Peckham. She returned this matter to SourceAmerica for corrective action. Unfortunately, there are additional problems with the follow up effort.   Another six months pursuing administrative remedies at the SourceAmerica level will not serve the interests of the federal customer (USDA), nor will it help the severely disabled individuals the AbilityOne program was established to employ. I have asked Ms Ballard as Executive Director of the AbilityOne Commission to select, on an exception basis, the CRP for the USDA Help Desk Opportunity.

In the event that she declines to do so, please accept this email as our first level appeal to SourceAmerica.


This Help Desk contract has turned into a struggle waged by those who feel the mission of AbilityOne is being marginalized, and those who appear to be satisfied with that state of affairs. The program's mission to employ people with severe disabilities is so loosely observed that no one can tell with any certainty just who is being hired on these contracts.
Let me briefly relate some relevant context. The most dramatic illustration of how far the program has gone astray was the 2005 scandal at NECD, SourceAmerica's largest contractor. After a whistle-blowing employee tipped the FBI to widespread fraud at the El Paso Texas non-profit, compliance officers from SourceAmerica and the Commission visited the contractor. They reported that only 7.8% of the 4,000 AbilityOne program employees were actually people with severe disabilities. Yet only three months earlier, compliance officials had visited NECD and approved its claim that 78% of its employees had disabilities so severe that they could not be competitively employed.

How could anyone confuse a workforce of ~4,000 mostly non-English-speaking immigrants with few visible signs of disability, with a workforce consisting of 78% people with severe disabilities? The reality was that nobody did. It is an open secret that many contractors hire people with mild physical and psychological conditions, particularly large non-profits with the pressure of staffing major requirements. Otherwise, as one SourceAmerica manager explained to me many years ago, "The CRPs couldn't perform on their contracts." There were rumblings for years that NECD was pushing even that mild disability standard. But Defense Department customers were satisfied with the garments produced by the 4,000 sewers, a portion of contract

revenue was flowing to SourceAmerica, and NECD employed at least *some* people with severe disabilities. Who inside the program would jeopardize this set-up by pointing out that the emperor had no clothes?

Investigative journalists delight in uncovering hypocrisy. Three writers from the *Oregonian* became finalists for a Pulitzer Prize after writing a series of articles about their visits to SourceAmerica contractors across the country. They reported that the contractors operated under an "honor system." As long as a doctor's note was in an employee's file, the contractor need only make a judgment call that the person was so severely disabled that they were not competitively employable. In some cases NECD didn't even bother with the doctors' notes. They listed the disabling condition as "Doesn't speak English." With such a compliance system, SourceAmerica contractors could comfortably perform on increasingly large and lucrative contracts that had been removed from the competitive market.

The *Oregonian* revelations sparked outrage. Leaders from the disability community with first-hand knowledge of how desperately people with severe disabilities needed these jobs were dismayed. Hearings were conducted. Senators Enzi, Harkins and Kennedy, among others, vowed reform. For a variety of reasons their efforts failed. In time the fuss died down and nothing of significance changed.

In 2010, Becky Ogle, former Executive Director of the President's Task Force on People with Disabilities traveled with Andrew Houghton, Chairman of the AbilityOne Commission, to the worksite of Peckham, in Lansing, Michigan. Peckham had replaced NECD as SourceAmerica's largest contractor. It had also been cited in the *Oregonian* articles as illegally subcontracting work meant for disabled employees. There was wonder about how Peckham could possibly find so many people with severe disabilities to work their thousands of AbilityOne jobs. During their visit Ms. Ogle and Mr. Houghton observed hundreds of non-English speaking workers with few visible signs of disability sitting at sewing machines churning out garments for the defense department. The similarities to the NECD workforce were striking. The two observers reported that despite a sprinkling of people who were visibly disabled, they considered it very unlikely that 75% of Peckham's workforce could possibly consist of people with severe disabilities. But nothing was done. Unlike NECD, Peckham's employees had doctors' notes in their files. The honor system had a fig leaf.

It is against this backdrop that we at National Telecommuting Institute (NTI) read the Sources Sought Notice for USDA Opportunity 21573. This contract would involve the hiring of hundreds of technical support agents with severe disabilities. Most critically, it would permit them to work from home. This is the field in which NTI specializes. For the past 18 years we have worked with people whose physical disabilities are so severe that they require home-based employment. Almost all of NTI's placements are into virtual Help Desk or call center jobs. USDA Opportunity 21573 interested us greatly.
Among those with severe mobility impairments, there is enormous pent-up demand for teleworking jobs. NTI is deluged with applications from across the country. We limit our attention to the 8,000 applicants every year whose disabilities are independently verified by government agencies. Of those, 88% receive Social Security disability benefits, while the rest have verification of severe disability from their state VR agency. While non-competitively

employable by virtue of requiring home-based positions, they have a great deal to offer an employer who will allow telework.

With a track record of managing an award-winning AbilityOne virtual call center for the IRS, and NTI's success in signing the incumbent on the USDA contract, IBM, as our subcontractor, NTI thought surely the SourceAmerica decision makers would be pleased with the opportunity to provide jobs for an underserved population genuinely consistent with their mission. As Dave Dubinsky, Director of the West Coast Region explained to me, under the B-1 process, he first determines which CRPs the federal customer finds acceptable. From among those, he chooses the one most likely to maximize the employment of the target population. If the decision maker followed the B-1 selection guidelines, how could NTI lose?

Mr. Joe Diaz, the East Coast Regional Director who made the initial USDA selection decision, did not apply the mission's priorities. He informed us that NTI and Peckham were both acceptable to the USDA. He even commended NTI for having 1,230 applicants for tech support jobs already screened and awaiting placement at the time of our proposal submission—and then he awarded the contract to Peckham. In the debriefing he explained he viewed Peckham's technical team as preferable to NTI's subcontract arrangement with IBM. As he pointed out, "IBM could go away". "

As you know, NTI appealed the decision. It took six months of denials from SourceAmerica before we could present our case to the Commission. We felt considerable relief when Ms. Ballard ruled NTI's appeal supported and threw the decision out. It was the first time in 25 years that an Executive Director of the Commission had ever overturned a SourceAmerica selection. That says a lot. But with a budget less than 10% of SourceAmerica's Ms. Ballard turned the responsibility for a re-compete back to SourceAmerica.

How SourceAmerica chose to conduct that re-compete is revealing. Your leadership selected Ryan Blackman, a Business Development Specialist, to make the decision. Mr. Blackham had never made a selection decision before. Ever. He was assisted by two newly hired SourceAmerica employees. Not one of the three seems to have ever set up or managed a call center or a Help Desk. The USDA—the customer—was never given copies of the new proposals. Nor were they consulted about the weighting of the evaluation criteria. Mr. Blackman reported in a recorded debriefing that he took the evaluation criteria listed in the source selection notice and gave each equal weight. He further explained that NTI and Peckham had both been found acceptable by him. Unlike the B-1 process followed by Dave Dubinsky with his 30 years experience, Mr. Blackman made no attempt to assess which CRP would maximize the jobs for people with severe disabilities. In fact he was adamant that the equally weighted factors of capability, capacity, quality, geography, staffing plan, past performance, broadening the CRP base and subcontracting were the sole criteria for his decision.

Failure to take the next step by evaluating which CRP will maximize jobs for the target population is inconsistent with the AbilityOne mission and the laws and regulations underlying that fundamental mission. SourceAmerica's B-1 Project Distribution procedures Doc.# USOP2-002, which implements the Commission's Policy 51.201, states that CRP selections should be consistent with "....our role as defined by regulation, to maximize the employment

*options for people with significant disabilities... "*   This is, after all,  the reason AbilityOne exists.  But this mission has become so marginalized within SourceAmerica's culture, that some staff don't even recognize that this dispositive factor is missing from their selection deliberations.

The ability of a CRP to maximize employment opportunities may become much more salient in the near future.  Commission staff have recently decided to work with the Social Security Administration and GAO to explore matching the Social Security numbers of workers on AbilityOne contracts with those also receiving Social Security disability benefits.  Sixty-two percent of the targeted AbilityOne population—those with severe disabilities—receives SSA disability benefits.  So the extent to which this group shows up among AbilityOne contracted workers is a good indicator of which CRPs are furthering AbilityOne's mission.  For example, several years ago I asked Mitch Tomlinson, CEO of Peckham,  what percent of his workforce consisted of people who had been on disability benefits.  He told me it was "probably less than 10%." That is what would be expected from a CRP which recruits thousands of employees from very limited geographic areas.  In contract, because NTI uses a virtual model and nationwide recruiting we are able to hire 88% of our workforce from among those receiving disability benefits.  We are able to take the jobs to those in the target population, no matter where they live.

My hope is that Ms. Balland will decide to save time and all of our efforts by making this award decision herself.  If she elects to have SourceAmerica handle it, please consider this our first level appeal as well as an explanation of why we do not intend to drop this matter.

Sincerely,

MJ


**M.J. Willard, Ed.D**
Executive Director
NTI, Inc.
103 E. Blithedale Ave  Suite 9
Mill Valley, CA  94941
Phone: (415) 389-1703  | fax: (415) 389-1685
www.NTIcentral.org

Equal Employment Opportunity Employer M/F/V/D

# EXHIBIT 2

# SourceAmerica■

February 26, 2014

Dr. Mary Jean Willard
Executive Director
National Telecommuting Institute, Inc.
69 Canal Street
Boston, MA 02114

Dear Ms. Willard:

On February 13, 2014, SourceAmerica confirmed receipt of National Telecommuting Institute, Inc.'s (NTI) appeal of SourceAmerica's project recommendation decision on January 23, 2014 for the IT Service Desk Support, US Department of Agriculture.  I conducted a thorough review of the methodology SourceAmerica followed to make a recommendation to the U.S. AbilityOne Commission in order to address the pertinent themes in the appeal letter. My review included the relevant regulatory references, the AbilityOne Program Bulletin No. B-1 Project Development Distribution and Transparency Procedure (B-1), any documentation submitted by the responding agencies and documentation generated by the SourceAmerica evaluation team.

As the appeal letter clarifies, this was a recompete of the above referenced requirement due to a request by E. Ballard, the Executive Director of the U.S. AbilityOne Commission.  The NTI appeal letter included an analysis of the SourceAmerica evaluation team. SourceAmerica stands behind Mr. Blackman, Acting Executive Director, a seasoned member of the SourceAmerica Leadership Team. The appeal contains a statement about the evaluation team which is false. The evaluation team of Posting 2333 collectively has 30 years of experience in support and management of contact centers. This team provided a recommendation identifying an agency willing and able to maximize employment of people with significant disabilities.

SourceAmerica established the AbilityOne Program Bulletin No. B-1 Project Development Distribution and Transparency Procedure to detail the procedure it will use to fulfill its responsibilities as a Central Nonprofit Agency as stated in Title 41: Public Contracts and Property Management, § 51-3.2.

As directed by E. Ballard, the Executive Director of the U.S. AbilityOne Commission, SourceAmerica reposted the IT Service Desk Support, US Department of Agriculture requirement for NPA Recommendation. Posting # 2333 included:

National Office  |  8401 Old Courthouse Road, Vienna, VA 22182  |  Phone: 571-226-4660

An AbilityOne★ authorized enterprise

- Criteria for Selection which detailed program requirements to meet the Suitability Criteria of the AbilityOne Program;
- The Response Requirements which identified all areas in which responding agencies must document their capability, capacity and other qualifications to demonstrate their ability to effectively perform the services as detailed in the statements of work, and fulfill all requirements of the AbilityOne Program.
    - The Response Requirements included a requirement for the responding agencies to detail their "hiring and staffing plan to identify, recruit and hire people with disabilities to support this project and its specific location(s) as well as to provide specific details regarding expertise and/or past success in employing war-wounded veterans and/or military dependents."; and,
- The Additional Information section which required each responding agency to submit attachments providing the details of their capabilities, past performance and other related details.

As detailed in the posting, the agency selected to be recommended for this opportunity will be subject to all rules, regulations, and requirements of the AbilityOne Program as specified in 41 CFR Chapter 51, FAR 8.7, and all applicable rules, regulations, policies, and memorandums of the US AbilityOne Commission. The responses and documentation provided in response to these requirements were reviewed by the evaluation team. NTI's claim statement that SourceAmerica has failed to evaluate which agency will maximize jobs for people with significant disabilities is not accurate.

I have reviewed all necessary and pertinent documentation in the process of responding to your appeal. I have concluded that SourceAmerica followed the B-1 guidelines and agree with the evaluation team's project recommendation decision.

SourceAmerica's B-1 Process has a second level appeal. National Telecommuting Institute, Inc. has the right to appeal this decision to SourceAmerica's Chief Operating Officer, Dennis Fields, within five business days. The Chief Operating Officer (COO) may reconsider a CRP's B-1 appeal only if there is new pertinent information that was not available at the time the Vice President, Regional Operations issued the initial decision. A request for reconsideration must include the specific facts believed by the CRP to justify the decision to be modified or reversed. In reconsidering the Vice President, Regional Operations decision, the COO will balance the harm to the CRP requesting reconsideration against the harm to the CRP which was given the project development opportunity.

The second level appeal can be forwarded electronically to dafields@sourceamerica.org or mailed to the address at the bottom of the first page of this letter. Within the SourceAmerica appeal process, the Chief Operating Officer's decision is final.

Sincerely,

Martin Williams
Vice President, Regional Operations

# EXHIBIT 3



# NTI

*Leaders in Placing Americans with Disabilities in Jobs*

Dear Mr. Fields,

National Telecommuting Institute, Inc. (NTI) hereby appeals the SourceAmerica decision issued by Mr. Martin Williams, Vice President, Regional Operations, dated February 26, 2014, denying NTI's appeal of the SourceAmerica decision to again award Posting 2333 IT Service Desk Support, US Department of Agriculture (USDA) to Peckham, Inc. (Peckham).  As discussed below,  the procedures followed by SourceAmerica  in making the Community Rehabilitation Program(CRP) selection decision for USDA Opportunity 2333  were inconsistent with the Javits-Wagner-O'Day Act, 41 U.S.C. §§ 8501-8506 (JWOD), the AbilityOne Commission's (the Commission) implementing regulations 41 C.F.R. Part 51-1 and policies, and with SourceAmerica's own B-1 Project Development Distribution and Transparency Procedure, Doc. No. USOP2-0002.

The Commission's regulations and policies (Policy 51.301) provide, in relevant part, that in order to withstand scrutiny, SourceAmerica needs to demonstrate that in making its decision to place this award with Peckham that it has:

- followed its established policies and procedures;

- properly documented its decision; and

- selected a CRP that met the minimum requirements.

Here again, SourceAmerica has fallen short of each of these three requirements.  For the reasons set forth below, SourceAmerica's decision cannot stand and must be overturned.

## SourceAmerica Failed to Follow its Established Policies and Procedures

As required under the Commission's policies, SourceAmerica has developed processes for project assignment and order allocation codified in its B-1 document.  As stated in SourceAmerica's B-1 document, the overall purpose in assigning contracts to CRPs is "to maximize the employment options for people with significant disabilities."  (B.1 Section 1.0).  Further, the SourceAmerica B-1 document provides, in relevant part, that "Distribution of project development opportunities among qualified CRPs and the successful project development implementation *will* follow these overriding principles." (B.1 Section 4.0.)  The award decision for USDA Opportunity 2333 did not adhere to this established policy and procedure.

In our June 2013 experience in pursuit of the USDA Help Desk work, NTI and Peckham were both judged as qualified to perform the work by the USDA and by SourceAmerica. In this second go-round, NTI and Peckham were again both judged qualified.

The proper implementation of the above-quoted B-1 policies and procedures, according to Dave Dubinsky, a Regional Director at SourceAmerica with 30 years experience with

1



# NTI

*Leaders in Placing Americans with Disabilities in Jobs*

the program, is that once the determination is made that more than one CRP is qualified for a contract, the decision is to be made on the basis of which CRP will maximize the employment of the target population. The B-1 document's overall purpose, after all, is the reason the program was created. This straightforward approach clearly implements SourceAmerica's stated policies and procedures.

For the USDA Opportunity 2333, SourceAmerica failed to follow these stated polices. As noted above, the SourceAmerica B-1 document provides that SourceAmerica "will follow these overriding principles" and therefore, SourceAmerica did not have discretion to deviate from these requirements. Yet it did. In its proposal for USDA Opportunity 2333, NTI was at pains to make clear that NTI could fill 100% of the direct labor jobs with applicants from the target population and fill 80% of those jobs <u>prior</u> to the contract even going AbilityOne.

NTI pointed out that:

- 100% of the individuals with disabilities needed to staff the USDA contract have already been screened and given preliminary training by NTI.  Due to the tremendous demand for home-based jobs, at any given time NTI has between 500-1,500 individuals waiting for placement as virtual customer service/help desk agents.

- 100% of NTI's proposed workforce has been independently verified by either the SSA or their state VR agency. They all require home-based work. There is no need to rely on squishy self- certifications by the hiring CRP.  These are unquestionably individuals with severe disabilities seeking help from the AbilityOne program.

- NTI can offer the fastest possible speed of ramp up.  The incumbent on the contract, IBM, has offered to immediately authorize NTI to perform as their subcontractor in the event that NTI is chosen as prime in this opportunity.  On the first day that the USDA work officially transitions to the AbilityOne program, 80% of the existing direct labor tech support agents <u>will already</u> be people with severe disabilities.  The remaining 20% who staff the "911 Help Desk" will be phased out over a 12-18  month period as agents with disabilities gain the experience needed to perform this work.


NTI's telework solution provides employment options nationwide for those individuals whose disabilities are too severe to work at any location other than their homes.  It's hard to imagine how any CRP could propose to maximize employment options of the target population to a greater extent.  Maximizing options for the population was not a priority for SourceAmerica however.  In a recorded de-briefing session SourceAmerica explained that it gave equal weight to eight factors, only one of which had a direct



# NTI

*Leaders in Placing Americans with Disabilities in Jobs*

bearing on a CRPs ability to maximize hiring of the target population.  SourceAmerica's B-1 document provides a list of other factors that it may consider, however, these discretionary factors cannot be used to displace the required fulfillment of the B-1 overriding principle to maximize employment options for the target population. SourceAmerica deemed both Peckham and NTI qualified, and then it missed the forest for the trees.  In doing so it also failed to follow SourceAmerica's own B-1 guidelines.

## *SourceAmerica Has Not Made Award to a CRP that Meets the Minimum Requirements*

In a choice between two qualified CRPs, there is a second factor described in the Commission's regulations that also is absent from SourceAmerica's deliberations. A Central Nonprofit Agency is required to distribute projects in a "fair and equitable" manner.    In 2012 Peckham Vocational Industries performed more AbilityOne work than any other CRP in the program.  They had 18 times more work than NTI. SourceAmerica has been very good to Peckham, so good that at times they've awarded them more work than Peckham was able to perform.  The Oregonian reported that Peckham was caught subcontracting out AbilityOne work meant for disabled individuals to a commercial contractor.  As noted above, notwithstanding these past problems, SourceAmerica has simply accepted Peckham's self-certifications that they are employing the target population.  And in denying NTI's appeal below, the Vice President for Regional Operations only notes that CRPs are required under the terms of the Solicitation to comply with the AbilityOne program rules, but does not identify any steps SourceAmerica has taken to evaluate or ensure compliance, such as independently verifying the status of employees by either the SSA or their state VR agency.

Both NTI and Peckham are qualified to perform the USDA work, Peckham performed 18 times the AbilityOne work that NTI performed in 2012, and yet SourceAmerica proposes to award to Peckham yet another AbilityOne contract?

Fairness to the CRPs vying for this contract is of minor concern relative to the fairness shown to the people with disabilities seeking work.   It has been 10 years since individuals with disabilities have had a chance to apply for new AbilityOne call center work that allows telework. NTI receives ~8,000 applications per year from people whose only hope of employment is that they find a home-based job.  During the past decade that SourceAmerica has rained AbilityOne jobs on the population of Lansing Michigan, eminently qualified; highly motivated people with severe disabilities across the country in need of home-based work have had nothing.   Concentrating jobs with one employer in a few locations does not maximize employment options for people with significant disabilities.

The May 2013 GAO report states "..... some affiliates have questioned the overall integrity of the CNA's  assignment processes.....they feel the system is biased in that assignment decisions tend to favor larger affiliates, affiliates that are or were on one of the CNA's boards of directors, or are a member of a particular affiliate sub-group."

3



# NTI

*Leaders in Placing Americans with Disabilities in Jobs*

NTI own experience with how work is allocated by SourceAmerica has also been disturbing. We've had three experiences with SourceAmerica that left us taken aback at how matters were handled. The most recent, and the experience most similar to the current one, is a 2010 competition NTI entered into along with six other CRPs to fill approximately 200 technical support jobs for DLA. Because only NTI and Peckham had any significant experience in call center work, and because NTI could offer over 1,000 technical support applicants from across the county already pre-screened and waiting for such work, NTI expected to be among those chosen to present to the federal customer. We were dismayed to learn that Peckham was the only organization of the seven allowed to present to the customer.

## SourceAmerica Has Not Properly Documented its Decision

Another necessary prerequisite that SourceAmerica must establish to have its decision upheld is that its decision must be properly documented. (Commission Policy 51.301.) SourceAmerica has not fulfilled this requirement here.

In denying this appeal below, SourceAmerica's Vice President for Regional Operations did not put forth, or even cite any contemporaneous documentation supporting SourceAmerica's decision. Instead, the Vice President only offered his conclusory impressions that he had reviewed some documentation he merely "agrees with the evaluation team's project recommendation decision."

This is simply insufficient to establish that SourceAmerica's decision was rationally based and followed its stated B-1 requirements. It is well settled that award decisions of government contracts must be sufficiently documented in order to ensure meaningful review, and here, SourceAmerica has fallen short. Accordingly, for this reason as well, SourceAmerica's decision cannot withstand scrutiny and must be overturned.

If the AbilityOne Program really awards work based on which CRPs can maximize the jobs options for the target population and makes choices designed to produce a fair and equitable distribution of projects, then the allegations by mid and small sized CRPs that SourceAmerica favors the large non-profits in making selection decisions, the allocation experiences experienced by NTI in which maximizing employment for the target population seem to have been given little or no weight, and the persistent attempts by SourceAmerica to award yet another contract to Peckham don't make any sense. They make perfect sense if the unspoken practice of decision makers is to funnel work to large contractors whose CEOs are friends, colleagues and sometimes superiors who serve on SourceAmerica's Board and as Subcommittee Members, and who have a track record of delivering the goods along with a steady stream of commissions.

There is abundant research documenting the tendency over time of non-profits to evolve in ways that increasingly benefit an inner circle at the expense of the mission. With hundreds of millions of dollars in contracts to dispense, and incestuous



*Leaders in Placing Americans with Disabilities in Jobs*

relationships with some of their largest recipients, making the mission the most important priority is a challenging task.

One of the most powerful steps you can take as COO to counteract these corrosive influences is to send a  clear message about the values of SourceAmerica's leadership. If maximizing the employment of the target population is critical, and the fair and equitable distribution of projects really does matter, then we respectfully ask you to say so with your decision on this appeal.


Sincerely,

*MJ Willard*


**M.J. Willard, Ed.D**

Executive Director

NTI, Inc.

103 E. Blithedale Ave  Suite 9

Mill Valley, CA  94941

Phone: (415) 389-1703  | fax: (415) 389-1685

www.NTIcentral.org

---

Equal Employment Opportunity Employer M/F/V/D

# EXHIBIT 4

**SourceAmerica.**■

March 19, 2014

M.J. Willard
Executive Director
NTI, Inc.
103 E. Blithedale Ave. Suite 9
Mill Valley, CA 94941
Re: Second Level Appeal of the USDA IT Service Desk Support Opportunity

Dear Ms. Willard,

I have reviewed your appeal, dated March 4, 2014, concerning the SourceAmerica decision on the USDA Opportunity. In that appeal you state that the decision must be overturned based upon on three allegations:

1. SourceAmerica failed to follow its established policies and procedures
2. SourceAmerica has not made award to a CRP that meets the minimum requirements
3. SourceAmerica has not properly documented its decision

Concerning the first issue:

*SourceAmerica failed to follow its established policies and procedures*

You assert that:

*"Further, the SourceAmerica B-1 document provides, in relevant part, that "Distribution of project development opportunities among qualified CRPs and the successful project development implementation will follow these overriding principles."  (B.1 Section 4.0.)*

That is a correct statement but you go on to focus on only one of the principals. All of the five principals are listed below.

4.0  Distribution Principles:

Distribution of project development opportunities among qualified CRPs and the successful project development implementation will follow these overriding principles consistent with NISH's mission statement and corporate values:

- Creating and maintaining jobs

- Federal customer requirements

- CRP project success, successful contract performance, and  value

National Office  |  8401 Old Courthouse Road, Vienna, VA 22182  |  Phone: 571-226-4660

- Sound business decisions by NISH carried out in a professional manner

- Transparency in the notification, distribution, and appeal process for project development opportunities among qualified CRPs

In my review of the selection process I believe that all five of these principals were properly considered in the process.

Concerning the second issue:

*SourceAmerica Has Not Made Award to a CRP that Meets the Minimum Requirements*

Here you reference the following:

*"In a choice between two qualified CRPs, there is a second factor described in the Commission's regulations that also is absent from SourceAmerica's deliberations.  A Central Nonprofit Agency is required to distribute projects in a "fair and equitable" manner"*

We believe that Program Bulletin No. B1 does address the AbilityOne Commission's requirements for the distribution of projects. Furthermore in my review of the selection process I find that the selected CRP does meet the minimum requirements for the project opportunity.

The final issue you raise is that:

*SourceAmerica Has Not Properly Documented its Decision*

You make the following statement:

*"This is simply insufficient to establish that SourceAmerica's decision was rationally based and followed its stated B-1 requirements.  It is well settled that award decisions of government contracts must be sufficiently documented in order to ensure meaningful review, and here, SourceAmerica has fallen short"*

Our requirement is to follow the stated B1 requirements for the distribution of a contract opportunity. That process may or may not result in *"award decisions of government contracts"* at some future date by the federal government agency which in this case would be the USDA.

Here again I find in my review that the B1 requirements were satisfied for this selection process.

In summary I find no reason to overturn the selection that SourceAmerica has made for this project.

Sincerely,

Dennis A. Fields

SourceAmerica

C.O.O.

2