

Ronald K. Henry
+1 202 682 3590 office
ronald.henry@kayescholer.com

The McPherson Building
901 Fifteenth Street, NW
Washington, DC 20005-2327
+1 202 682 3500 main
+1 202 682 3580 fax

July 21, 2014

**VIA E-MAIL: CMTEFedReg@AbilityOne.gov**

AbilityOne Commission
1401 South Clark Street
Suite 10800
Arlington VA 22202-4149

<u>Attn</u>: Barry S. Lineback

Re:   **Comments to Commission Notice Posted at 79 Fed. Reg. 35320 (June 20, 2014)**

Ladies and Gentlemen:

      Our firm is submitting comments on behalf of our client, National Telecommuting Institute, Inc. ("NTI"), to the Commission's notice of intent to add the USDA IT Service Desk Support Service contract to be performed by Peckham Vocational Industries, Inc. ("Peckham") to the Procurement List. (79 Fed. Reg. 35320 (June 20, 2014).)

      NTI is a non-profit organization that operates as a Community Rehabilitation Program ("CRP") under the AbilityOne Program by providing at-home-based employment opportunities for the most-severely disabled individuals who are unable to work outside of their homes. NTI submitted a proposal to perform the USDA Help Desk opportunity (Opportunity No. 2333). The Commission's Central Non-Profit Agency ("CNA"), SourceAmerica, recommended award to Peckham.[1]

--------------------------------------------------

[1] SourceAmerica had initially selected Peckham under the initial SSN. The Commission, however, found that evaluation defective and remanded the action back to

                         (continued...)

NTI attempted to persuade the Commission staff of the error of the SourceAmerica recommendation (*see* Attachment 1 (April 4, 2014), Attachment 2 (May 4, 2014) and Attachment 3 (May 29, 2014)) but the staff applied the wrong standard. This is not a case where the Commission has set aside a class of procurements and SourceAmerica is engaged in allocating those procurements among eligible CRPs. Instead, this is a new Procurement List proposal and it is the Commission, not SourceAmerica, that is responsible for selection of the CRP. As NTI explained in its May 4 filing:

> Before turning to the specific objections of NTI against the recommendation by SourceAmerica, it is critical to understand the posture of this matter. The Commission is not sitting in the position of an appeals court to address whether SourceAmerica committed an abuse of discretion in rendering a decision that is subject to review under the Administrative Procedures Act or other form of judicial review. Instead, the Commission itself is making the original decision here. *See, e.g.*, Commission Policy 51.301, Section 5(a)(i).

SourceAmerica has simply made a recommendation, not an award decision. That recommendation is mere input to your responsibility to make the decision in accordance with the requirements of the Javits Wagner O-Day Act and implementing regulations. The SourceAmerica recommendation is not entitled to any deference. You are not hunting for "error" in a decision by SourceAmerica, you are making the original award decision yourselves with SourceAmerica's recommendation serving as input just as you have input from your own staff. The procedures under Commission Policy 51.301, Section 6(d)(ii) help you understand the deficiencies in the SourceAmerica recommendation but this is not a matter that has been committed to SourceAmerica for decision. SourceAmerica here made only a recommendation, not an assignment or allocation award. (Attachment 2 at 1.)

Despite this unambiguous reality, the Commission staff erroneously did apply a standard of deference to SourceAmerica as if it was conducting an Administrative Procedures Act review of a matter committed to SourceAmerica's discretion by concluding, *inter alia*:

> SourceAmerica's decision is sufficiently documented in accordance with the B-1 appeal process and Commission Policy

---

SourceAmerica on December 20, 2013.  SSN No. 2333 was the re-competition conducted by SourceAmerica on remand from the Commission.

> 51.301. NTI's appeal on the basis of SourceAmerica's failure to
> properly document its decision was not substantiated and is denied.
> ... Accordingly, I have no basis to overturn the SourceAmerica
> decision on the non-profit agency they will recommend to the
> Commission...

(Attachment 3 at 10.)

This is wrong. Your staff has an obligation to make an independent evaluation of the available CRPs and an obligation to provide information to you to allow you to make a rational decision that will withstand judicial review. Your staff is not permitted to be a mere passive conduit for the "decision" of SourceAmerica. Your staff has the obligation to provide current information to you to allow you to make a selection that comports with your statutory duty.

The SourceAmerica "decision" is not only entitled to no deference, it is facially absurd. The SourceAmerica "decision" is based on data so old that it does not even consider the critical fact that NTI is the current incumbent on the USDA requirement. Under subcontract to IBM, NTI is and has been providing the USDA Help Desk Services yet this centrally important fact is utterly absent from anything we have seen from SourceAmerica.

You cannot make a decision to award this requirement to Peckham because you do not have an appropriate foundation of facts upon which to base a rational decision. Your staff cannot punt the source selection decision to SourceAmerica. They must do their jobs. SourceAmerica cannot render a "decision" that fails to consider the most salient facts.

You have the statutory obligation to implement the purposes of the Javits Wagner O-Day Act and implementing regulations. You have the responsibility to decide on the basis of all relevant facts which CRP will best fulfill the mandates of the Act. Most importantly, you have the responsibility to maximize employment opportunities for the severely disabled. Stunningly, however, the SourceAmerica "decision" you're your staff in punting to SourceAmerica) made absolutely no effort to determine which CRP would maximize employment opportunities for the severely disabled. This, too, is wrong.

We believe that the information available to you can justify an award to NTI since it is already the incumbent and is entirely utilizing severely disabled workers. You absolutely do not have information that would justify an award to Peckham. The only lawful choices are an award to NTI or a remand with instructions to your staff to more fully develop the record.

## 1.    The SourceAmerica "Decision" Does Not Evaluate which CRP Will Maximize Employment Opportunities for the Severely Disabled

In the attachments, NTI explained to the staff that SourceAmerica disregarded its own Project Development Distribution and Transparency Procedure (the "B-1" document), which

articulates as its primary purpose "to maximize the employment options for people with significant disabilities." Here, there is no dispute that SourceAmerica made no attempt to evaluate which CRP would maximize employment options for people with significant disabilities. Nonetheless, your staff chooses to defer to SourceAmerica because the Source Sought Notice did not expressly identify the ability to maximize employment options for significantly disabled persons as one of SourceAmerica's planned evaluation factors. *See* Decision at 4 ("it was not an evaluation criterion and it was not published as an evaluation criterion in SSN 2333.").

While NTI disagrees the staff's conclusion that SourceAmerica may properly disregard the requirements of its own B-1 document based on its own whim to use other evaluation criteria, the Commission, as a matter of policy, should not approve additions to the Procurement List that do not maximize employment opportunities for the severely disabled. Completely disregarding the AbilityOne Program's mission and statutory purpose in awarding opportunities undermines the integrity of the Program and if the Commission goes on-record in supporting such decisions, it threatens the ongoing viability of this important Program.

While NTI believes that the record clearly establishes that NTI's tele-commuting solution would provide employment options that no other CRP can match—and provide employment to the most vulnerable individuals that the Program is intended to help—at the very least, NTI respectfully requests that the Commission not add the USDA IT Desk Service Support Service opportunity to the Procurement List until a proper evaluation is completed of which CRP will maximize employment opportunities for the Program's target population.

2. **SourceAmerica's "Decision" Does Not Establish a Legally Sufficient Basis for Awarding a Federal Government Contract to Peckham**

Also undisputed is the fact that the SourceAmerica recommendation does not establish a rational basis that can support an award decision of a federal government contract. As noted, the data relied upon by SourceAmerica omitted the fact that NTI is the incumbent and is utilizing severely disabled persons right now; persons who will be thrown out of their jobs if the work is moved to Peckham, which lacks both experience and licensing to support multi-state tele-commuting workforces. Moreover, SourceAmerica conducted the entire evaluation of multiple proposals submitted in response to the SSN and made an award recommendation in only four business days, obviously doing no more than rubber stamping its previously announced decision to utilize Peckham. *See* history of this matter in Attachment 1.

When the sufficiency of SourceAmerica's review was presented to your staff by NTI, the staff likewise avoided a decision on the actual facts and legal issues. *See* Decision at 10 n.5 noting that the Executive Director was only making "a required preliminary decision as there is no proposed PL package presently pending before the Commission members." Again the staff

punted, this time with the excuse that it was too early to evaluate which CRP would best fulfill the mandates of the statute.

Now, however, there is a PL Package presently pending before the Commission members, and the Commission members do not have the luxury of sticking their heads in the sand. Both SourceAmerica and your staff have given you a paper trail that unambiguously confirms that the award recommendation is not legally sufficient to support an award to Peckham.

### 3.    The Decision is Based on Stale Information

NTI proposed to use the current incumbent, IBM, as a technical subcontractor on the USDA help desk opportunity. As part of NTI's approach, IBM agreed to hire NTI's severely disabled individuals on the current contract as a subcontractor to IBM until the work transitioned to the AbilityOne contractor. NTI has had and continues to have eleven severely disabled individuals working on the current project who were otherwise unemployable. More are in the pipeline as IBM turns over more work to NTI. It would be stunning for this Commission to displace these deserving workers on the basis of a "decision" by SourceAmerica that did not even consider which CRP would maximize the use of severely disabled individuals..

NTI appreciates the opportunity to present its views to the Commission. While NTI continues to evaluate its legal remedies, we remain hopeful that the Commission will place the mission of the Program first and will exercise common sense to do what is in the best interest of the Program at this critical time.

Respectfully,

Ronald K. Henry
*Attorneys for NTI*

# Attachment 1



Ronald K. Henry
+1 202 682 3590 office
ronald.henry@kayescholer.com

The McPherson Building
901 Fifteenth Street, NW
Washington, DC 20005-2327
+1 202 682 3500 main
+1 202 682 3580 fax

April 4, 2014

Ms Tina Ballard
  Executive Director
Ms. Kimberly M. Zeich
  Deputy Executive Director
U.S. AbilityOne Commission
1401 South Clark Street
Suite 10800
Arlington, VA  22202

Re:   **NTI Protest of USDA Helpdesk Opportunity 2333**

Dear Ms. Ballard and Ms. Zeich:

We represent National Telecommuting Institute, Inc. ("NTI").  NTI is hereby appealing the award recommendation by SourceAmerica to the U.S. AbilityOne Commission (the "Commission") regarding U.S. Department of Agriculture's ("USDA") Helpdesk Opportunity 2333.  Under section 6(d) of the Commission's Policy 51.301, the Commission will consider appeals regarding a Central Nonprofit Agency's ("CNA") award decision if the decision violates any of the enumerated three criteria.  As set forth below, because NTI's appeal of SourceAmerica's decision meets all three criteria, the Commission should grant NTI's appeal.

NTI respectfully requests a hearing before the Commission to present its appeal as soon as practicable.

**BACKGROUND**

The AbilityOne program's statutorily-mandated purpose is to maximize employment options for people with significant disabilities.  As it should be, the overall importance of the program's fundamental purpose is stressed as the overriding purpose in SourceAmerica's Distribution and Transparency Procedure.  (SourceAmerica's Project Development Distribution and Transparency Procedure (Doc. No. USOP2-0002)( the "B-1" document)).  SourceAmerica's B-1 procedures were clarified in a fall 2013 conversation with Jean Robinson, Chief Counsel for

Ms. Ballard & Ms. Zeich.      April 4, 2014  |  Page 2

SourceAmerica who explained that the purpose of a selection recommendation decision was to select the Community Rehabilitation Program ("CRP") that could maximize the jobs for the target population.   Likewise, David Dubinsky, Director of the SourceAmerica West Coast Region, explained that if more than one CRP is found to be technically acceptable, then under SourceAmerica's B-1 procedures, maximizing employment of the target population becomes the sole basis upon which a selection decision should be made.

While many CRPs struggle to find truly disabled persons to staff their available AbilityOne positions, NTI has the opposite problem.   NTI is a leader in operating virtual call centers that provide telework employment opportunities for disabled individuals not able to work outside of their homes. Along the disability spectrum, NTI serves those at the outer-end who are truly severely disabled and cannot work at a central AbilityOne location, and are not competitively employable. On average, clients NTI has placed into telework positions have not worked in 47 months.  Because the demand for telework positions for severely disabled persons far exceeds the availability, NTI, on average, has between 500 - 1,500 individuals awaiting placement. These are people who want to work, but the AbilityOne program has not been able to serve.

The USDA Helpdesk Opportunity presents a rare opportunity for the AbilityOne program to now expand its reach by offering employment opportunities to individuals whose disabilities are so severe that they are prevented from being employed on other AbilityOne projects. Based on the AbilityOne program's mission as implemented in SourceAmerica's B-1 document, NTI took pains to make clear the manner in which it differed from other CRPs.  NTI's telework solution could uniquely further the purpose of the AbilityOne program by serving a population not served by other CRPs and thus, truly "maximize the employment options for people with significant disabilities" who have no other employment options.

Had SourceAmerica followed its B-1 procedures that compel maximizing employment opportunities for the severely disabled, NTI would have been selected.   However, because SourceAmerica has once again disregard its B-1 procedures in violation of the Commission's policies, NTI is now asking the Commission to step in and effectuate the AbilityOne mission. NTI's complaint about the SourceAmerica selection is not a minor or academic matter. Real people with real, severe disabilities and no other employment prospects will be personally and significantly injured if this opportunity is taken away from them through a wrongful selection of Peckham Industries, Inc. ("Peckham").

The Initial Solicitation

This matter has been before the Commission previously.    In April of 2013, SourceAmerica issued a sources sought notice ("SSN") for USDA Helpdesk Opportunity 21573. Both NTI and Peckham submitted proposals in response to the SSN. At the conclusion of the competition, SourceAmerica selected Peckham for the award recommendation.

Ms. Ballard & Ms. Zeich.        April 4, 2014  |  Page 3

After exhausting its appeal rights within SourceAmerica, NTI appealed SourceAmerica's award recommendation decision to the Commission on October 25, 2013. As requested by the Commission, NTI submitted its written appeal on November 6, 2013. On December 20, 2013, the Commission sustained NTI's appeal, holding, in relevant part, that SourceAmerica "failed to follow its established policies and procedures by evaluating NTI on criteria that was not included in the Source Selection Notice #2000, dated April 29, 2013. Consequently, the SourceAmerica USDA IT Desk Support project selection decision is being returned to them for appropriate action."

The Revised Solicitation

On remand, SourceAmerica issued a revised SSN on January 3, 2014, for the USDA Helpdesk opportunity, requiring responses by January 17, 2014. (The revised SSN was number 2333.) For the revised SSN, the technical requirements and the statements of work prepared by the USDA were unchanged.

In relevant part, SourceAmerica advised prospective CRPs bidding on the USDA Helpdesk opportunity that it would apply the following selection criteria to its evaluation:

> 1.     A CRP must have met the 75% Agency ratio (based upon the last 404) or have a written plan with the Commission or the NISH Regulatory Department demonstrating a concrete phase-in strategy to reach proper agency ratio status within a period acceptable to the US AbilityOne Commission. For CRPs that do not currently have any AbilityOne Projects, they must be affiliates in good standing, and able to meet all Program requirements. (Minimum Criteria)
>
> 2     A CRP will be compliant with the requirements set forth in NISH's policy/procedures for Reporting of AbilityOne Sales and Payment of NISH AbilityOne Funding Fee. Any CRP that believes it has been incorrectly identified as ineligible based upon financial or reporting issues to be considered for project opportunities has 10 business days upon receipt of notification from Accounting in which to provide NISH with detailed documentation to support its compliance. All requests for review and reconsideration shall be submitted to NISH's Chief Financial Officer at the NISH National Office, Vienna, VA. (Minimum Criteria)
>
> 3     CRPs that have a valid cure-notice applicable to any of their AbilityOne projects, or are currently in Step #2, #3, or #4 of the 4-Step Process due to performance/quality issues, will not be eligible for any new opportunities. If a CRP's AbilityOne Contract

Ms. Ballard & Ms. Zeich.      April 4, 2014 | Page 4

has been removed, it will not be eligible for new opportunities until one year has elapsed and the CRP can demonstrate renewed capacity. (Minimum Criteria)

4        A CRP must be current in its annual registration with NISH. All affiliated CRPs must annually register their organization between October 1 and December 31 of each year. Failure to register during the enrollment period will cause the CRP to become ineligible for project distributions for the balance of the NISH fiscal year. Registration can only be re-established with NISH during the October-December enrollment period. (Minimum Criteria)

5        Additional Minimum Eligibility - Projects with an annual value in excess of $1M will trigger a financial stability and sustainability assessment of the potential CRP selectee(s), to include any commercial and/or CRP subcontractors. (Minimum Criteria)

6        Capability- The ability to produce, perform, or deploy a given product or service at a measurable, repeatable, and sustainable rate. (Additional Criteria)

7        Capacity- The ability to meet customer expectations, grow in existing markets, and develop new lines of business. (Additional Criteria)

8        Quality- Proven existing systems to ensure successful contract performance. (Additional Criteria)

9        Geography- A CRP that is located in the general geographic area in which services are provided to people with significant disabilities, noted in corporate literature as a "place of doing business". (Additional Criteria)

10       Past Performance- Indications of a CRP's ability to perform the contract successfully based upon current or prior relevant experience. (Additional Criteria)

11       Expanding AbilityOne® capability / capacity - CRPs who meet all other criteria listed herein may be given preference if assignment of this opportunity will broaden the CRP base within the AbilityOne® Program. (Additional Criteria)

12       Other- Additional factors taken into consideration for this specific opportunity. (Additional Criteria)

Ms. Ballard & Ms. Zeich.      April 4, 2014  |  Page 5

NTI's Proposal

  NTI submitted a timely proposal on January 17, 2014. To ensure continuity of services, NTI proposed subcontracting certain technical functions to IBM, the incumbent on the current USDA call center contract. Given the overall AbilityOne mission to "maximize employment of the target population" and the specific requirements of the SSN, NTI proposed to provide a solution calling for home-based representatives that would provide employment opportunities nationwide for severely disabled persons who could not otherwise work outside of their homes.

  In addition, to ensure that NTI was both providing the highest-quality services to the USDA while maximizing employment opportunities for truly severely-disabled individuals, NTI pointed out that:

- 100% of NTI's proposed workforce has been independently verified by either the SSA or their state VR agency. NTI's proposed workforce all require home-based work. Because all the proposed individuals have been independently-verified with severe disabilities, NTI is able to provide a factual basis for the required determination that NTI is a qualified Community Rehabilitation Program ("CRP") and serving the severely disabled population consistent with the AbilityOne program's mission.

- 100% of the individuals with disabilities needed to staff the USDA contract have already been screened and given preliminary training by NTI. Due to the tremendous demand for home-based jobs, at any given time NTI has between 500-1,500 individuals with independently-verifiable severe disabilities waiting for placement as virtual customer service/help desk agents. Accordingly, NTI demonstrated that it can meet any increased demands of the USDA-customer with an already-recruited population, while ensuring compliance with the AbilityOne mission and requirements.

- NTI is also able to offer the fastest possible speed of ramp up. In addition to the pre-screening discussed above, NTI noted in its proposal that the incumbent on the contract, IBM, had offered to immediately authorize NTI to perform as its subcontractor during the anticipated transition period. Under NTI's proposal, on the first day that the USDA work officially transitions to the AbilityOne program, 80% of the existing direct labor tech support agents will already be people with severe disabilities. The remaining 20% who staff the "911 Help Desk" will be phased out over a 12-18 month period as agents with disabilities gain the experience needed to perform this very demanding work.

Ms. Ballard & Ms. Zeich.     April 4, 2014 | Page 6

### SourceAmerica's Evaluation of Revised Proposals

After the Commission upheld NTI's appeal and remanded the matter back to SourceAmerica, as part of the review of revised proposals, SourceAmerica replaced the entire review panel to make the new award recommendation decision. Notably, the acting executive director who was appointed to lead the new source selection recommendation review had never been responsible for making any award decisions previously. Four business days after revised proposals were submitted, on January 23, 2014, SourceAmerica issued its a new award recommendation decision, once again deciding to recommend Peckham for award of the USDA call center opportunity.

On January 29, 2014, SourceAmerica provided NTI with a limited debriefing, during which the SourceAmerica personnel responded to limited questions.[1]  As an initial matter, SourceAmerica confirmed that NTI was found to be technically acceptable and satisfied the minimum requirements to successfully perform the contract.  NTI was informed that the USDA reviewed initial proposals and found both NTI and Peckham to be technically acceptable. During the January 29 debriefing for the revised SSN, SourceAmerica indicated that the USDA did not review the revised proposals.

With regards to the evaluation criteria employed in the review of proposals, SourceAmerica informed NTI that it applied the twelve factors listed in the SSN. Under factor number 12 ("Additional factors taken into consideration") SourceAmerica explained it reviewed numerous other factors to include, the hiring and staffing plan, wounded veteran and/or military hiring. In addition, SourceAmerica informed NTI that it also considered other factors such as subcontracting in relation to direct labor hours as assigned covered in the "additional information" section of the SSN. Thus, it is not clear exactly how many factors were actually evaluated.

Notably, when asked specifically about whether SourceAmerica had evaluated the ability to maximize employment opportunities for the target population, SourceAmerica confirmed that no such analysis was conducted. Rather, SourceAmerica confirmed that it considered only the factors listed in the SSN and weighed those factors equally.

---

[1] By mutual consent, both parties recorded the debriefing.

Ms. Ballard & Ms. Zeich.      April 4, 2014  |  Page 7

NTI's Appeals to SourceAmerica

NTI appealed SourceAmerica's recommendation decision first through SourceAmerica's appeal procedures. (A copy of NTI's appeal is attached as Exhibit 1.)  SourceAmerica's B-1 document provides that when an appeal is received that "[SourceAmerica's] VP, RO will provide the CRP with a well-reasoned written final decision, including factual areas of agreement and disagreement and explaining [SourceAmerica's] position within ten (10) business days."  On February 26, 2014, SourceAmerica's Vice president for Regional Operations issued a cursory denial of NTI's initial appeal.   (A copy is attached as Exhibit 2.)   Notwithstanding SourceAmerica's obligation to provide "a well-reasoned written final decision," the analysis and discussion of the VP RO's reasoning in its entirety stated:  "I have reviewed all necessary and pertinent documentation in the process of responding to your appeal.  I have concluded that SourceAmerica followed the B-1 guidelines and agree with the evaluation team's project recommendation." (Ex.2 at 2.)

NTI submitted a second-level appeal to the SourceAmerica Chief Operating Officer on March 4, 2014. (A copy of NTI's second-level appeal is attached as Exhibit 3.)  SourceAmerica denied NTI's second-level appeal by letter dated March 19, 2014. (A copy is attached as Exhibit 4.)  Here again, SourceAmerica's appeal decision does not cite any facts or other documented support for SourceAmerica's decision recommendation.  Instead, SourceAmerica again offered nothing more than unsupported conclusory opinions. *See id.* at 2 "In my review of the selection process I believe that all five of these principals [sic] were properly considered in the process."

**GROUNDS FOR APPEAL**

SourceAmerica's award recommendation decision cannot be relied upon by the Commission.  As discussed below, the procedures followed by SourceAmerica in making the CRP selection recommendation decision for USDA Opportunity 2333 were flawed. Accordingly, SourceAmerica's resulting award recommendation is insufficient to establish the necessary rational basis to support an award decision by the Commission.   SourceAmerica concedes as much in the Chief Operation Officer's appeal decision:

> You [NTI] make the following statement:
>
> "This is simply insufficient to establish that SourceAmerica's decision was rationally based and followed its stated B-1 requirements.  It is well settled that award decisions of government contracts must be sufficiently documented in order to ensure meaningful review, and here, SourceAmerica has fallen short."
>
> Our requirement is to follow the stated B1 requirements for the distribution of a contract opportunity.  That process may or may not result in "*award decisions of government contracts*" as some

> future date by the federal government agency which in this case
> would be the USDA.

(Ex. 4 at 2.)

The Commission's regulations and policies (Policy 51.301) provide, in relevant part, that in order to withstand scrutiny, SourceAmerica needs to demonstrate that in making its decision to place this award with Peckham that it has:

- followed its established policies and procedures;
- properly documented its decision; and
- selected a CRP that met the minimum requirements.

As noted above, on December 20, 2013, the Commission remanded SourceAmerica's award decision. SourceAmerica has not remedied the previously-identified problems and here again, SourceAmerica has failed to produce an award decision recommendation that the Commission can rely upon because SourceAmerica has fallen short of each of these three requirements.

1.   <u>SourceAmerica Failed to Follow its Established Policies and Procedures</u>

In May, 2012, the Commission issued Policy 51.301 guidance establishing a minimum set of broad principles all CNAs are required to follow when distributing projects among nonprofits agencies ("NPAs"). Based on the Commission's statutory mandate and the governing regulations, the irreducible minimum CNAs must follow in the selection of an NPA is as follows:

> CNAs shall develop processes for project assignment and order
> allocation that result in fair, equitable, and transparent distribution
> of opportunities among NPAs, taking into account the unique
> mission and objectives of the AbilityOne Program.

Commission Policy 51.301 § 6(a).

Here, first, SourceAmerica did not take into account the unique mission and objectives of the AbilityOne program by failing to evaluate which CRP would maximize employment options for individuals who are actually severely disabled. Second, SourceAmerica did not employ a transparent distribution process, but instead utilized unstated evaluation criteria to make the same award recommendation decision it made prior to remand. Finally, SourceAmerica made no effort to ensure that awards are distributed in a fair and equitable manner and instead simply recommended award to the same firm to which it has awarded more work than any other CRP.

Ms. Ballard & Ms. Zeich.     April 4, 2014  |  Page 9

a. SourceAmerica Did Not Evaluate Which CRP Would Maximize
Employment Options for Severely Disabled Persons

As required under the Commission's policies, SourceAmerica has developed processes for project assignment and order allocation codified in its B-1 document. As stated in SourceAmerica's B-1 document, the overall purpose in assigning contracts to CRPs is "to maximize the employment options for people with significant disabilities." (B.1 Section 1.0). Further, the "Distribution Principles" articulated in SourceAmerica's B-1 provides, in relevant part, that "Distribution of project development opportunities among qualified CRPs and the successful project development implementation will follow these overriding principles." (B.1 Section 4.0 (emphasis added).) The award decision for USDA Opportunity 2333 did not adhere to this established policy and procedure.

SourceAmerica confirmed during the debriefing that NTI and Peckham were both determined to be technically acceptable by SourceAmerica to perform the work for the USDA help desk operations.[2] The proper implementation of the above-quoted B-1 policies and procedures, is that once the determination is made that more than one CRP is qualified to perform a contract, the decision is to be made on the basis of which CRP will maximize the employment options for the target population. As noted above, the guidance provided by SourceAmerica senior executives concerning the proper interpretation of the B-1 policies and procedures is that maximizing employment options for the target population is the sole discriminator between technically qualified CRPs. This straightforward approach clearly implements the AbilityOne program's mission as reflected in SourceAmerica's stated policies and procedures.

For the USDA Opportunity 2333, SourceAmerica failed to follow these stated polices. In the four business days SourceAmerica spent getting a new evaluation team up to speed on the procurement and evaluating the three proposals that it received in response to the revised SSN, and purportedly documenting its decision, SourceAmerica never evaluated which CRP would maximize employment options for people with significant disabilities. In response to the direct question concerning whether it had conducted such an evaluation, the acting executive director indicated that SourceAmerica only considered the evaluation factors related to performance stated above, and that those factors were weighted equally.

---

[2] SourceAmerica also indicated that it received a third proposal from an unidentified offeror. No information was provided concerning this third offeror.

Maximizing employment options for the population was not a priority for SourceAmerica or even meaningfully considered. Instead, SourceAmerica based it award recommendation on its view of which offeor was likely to provide better helpdesk services, without ever considering which offeror would maximize employment options for truly severely disabled individuals. While NTI disputes SourceAmerica's technical evaluation, as detailed below, an evaluation based solely on technical factors does nothing to advance the AbilityOne mission. While SourceAmerica's B-1 document provides a list of other factors that it may consider, these discretionary factors cannot be used to displace the required fulfillment of the B-1 overriding principle to maximize employment options for the target population. SourceAmerica deemed both Peckham and NTI technically acceptable; however, it failed to consider that NTI's telework solution provides employment options nationwide for those individuals whose disabilities are too severe to work at any location other than their homes.

NTI was clearly prejudiced by SourceAmerica's deviation from its stated B-1 policies and procedures. As noted above, NTI developed a solution that satisfied all the USDA's technical requirements and more importantly, would provide employment opportunities to individuals not employable on other AbilityOne projects, and therefore, greatly expanded the employment options beyond what other CRPs could provide.

The prejudice of SourceAmerica's selection decision to the competing CRPs is minor relative to the prejudice to people with truly severe disabilities seeking employment through the AbilityOne program. In the past 10 years, home-bound individuals in need of telework jobs have not had a single new virtual call center opportunity for which they could apply. Given the USDA's rare opportunity for a telework solution, the selection of a CRP that will not expand employment options does nothing to further the AbilityOne program's mission.

Because SourceAmerica failed to follow its own B-1 guidelines to maximize the employment options for people with significant disabilities, the award recommendation cannot be relied upon to support an award decision by the Commission.

b.  SourceAmerica Failed to Follow Its Stated Evaluation Criteria in the SSN

While the de-briefing that SourceAmerica provided to NTI was not a required debriefing called for under FAR 15.506, and therefore limited in scope, it was sufficient to confirm that SourceAmerica failed to follow the evaluation criteria established for this SSN. During the debriefing, SourceAmerica identified four areas where NTI could improve, where the inference is that it was an area where NTI was downgraded. Notably, in two of the four areas identified, it is clear that SourceAmerica did not follow the solicitation in evaluating NTI.

First, with regards to past performance, SourceAmerica downgraded NTI because NTI had not provided performance metrics from its customers. However, in the past performance questionnaire provided for this SSN, SourceAmerica did not request information. Had

Ms. Ballard & Ms. Zeich.      April 4, 2014  |  Page 11

SourceAmerica informed offerors that it intended to evaluate performance metrics, SourceAmerica could have provided that information.    Additionally, SourceAmerica downgraded NTI for not providing sufficient details concerning its proposed approach to serve as a subcontractor to IBM—*i.e.*, the current incumbent—prior to transitioning the contract operations to NTI so that NTI's staff would be fully trained and functioning on day one and ensure a seamless transition for the USDA. This was a unique value-added solution, and beyond the evaluation criteria set forth for this SSN. While SourceAmerica had no obligation to give NTI "extra credit" for this additional feature, it was improper to downgrade NTI for not providing sufficient details about a factor that was not called out in the SSN. Accordingly, here again, SourceAmerica did not follow the evaluation criteria set forth in the SSN

It bears mention that NTI has not seen the entire evaluation record and it is more than likely that SourceAmerica has deviated from the selection criteria in other places as well. Further, as noted above, given the vagueness of the "additional factors taken into consideration" factor, it still remains unclear exactly what factors SourceAmerica evaluated in its four-day review. It is black-letter law that for an award decision to be rational, offerros must be evaluated consistently with the terms of the operative solicitation.  Accordingly, even assuming that SourceAmerica has complied with its B-1 document—which it has not—SourceAmerica's failure to evaluate CRPs consistently with the SSN provides yet another reason why the award recommendation cannot be relied upon to make an award decision.

SourceAmerica's deviations from the evaluation criteria were prejudicial to NTI, and more importantly cannot establish the requisite rational basis necessary to support an award decision.

c.  <u>SourceAmerica has Failed to Distribute Opportunities on an Equitable Basis</u>

Under the Commission's implementing regulations (41 C.F.R. Part 51-3) impose certain requirements in all Central Nonprofit Agencies.  Specifically, 41 C.F.R. § 51.3-2(g) requires all CNAs such as SourceAmerica to "Maintain the necessary records and data on its nonprofit agencies to enable it to allocate orders equitably."  Further, 41 C.F.R. § 51-3.4 provides in relevant part: "When the Committee has approved two or more nonprofit agencies to furnish a specific commodity or service, the central nonprofit agency shall distribute orders among those nonprofit agencies in a fair and equitable manner."[3]   The requirement for fair and equitable

---

[3] Curiously, Section 2.0 of SourceAmerica's B-1 document on references subsections (a) and (b), of 41 C.F.R. § 51-3.2, notwithstanding the fact that there are numerous other requirements set forth in 41 C.F.R. Part 51-3.

Ms. Ballard & Ms. Zeich.     April 4, 2014  |  Page 12

distribution of opportunities is likewise incorporated into the Commission's 51.301 Policy document. *See* Commission Policy 51.301 § 6(a).

SourceAmerica has taken no steps, or undertaken any analysis as part of this process, to ensure that AbilityOne contracts are allocated fairly and equitably. In 2012, Peckham performed more AbilityOne work than any other CRP in the program.  NTI estimates that Peckham received 20 times more work than NTI over the past few years.  Here, SourceAmerica elected to award to Peckham even though SourceAmerica in the past has awarded more work to Peckham than it was able to perform.  This undisputed fact was documented in a report by *The Oregonian*, which reported that Peckham was caught subcontracting out AbilityOne work meant for disabled individuals to a commercial contractor.

Failure by CNAs, such as SourceAmerica, to ensure equitable distribution has lead the Government Accountability Office in May 2013 to conclude, in part, that "some affiliates have questioned the overall integrity of the CNA's assignment processes" because "they feel the system is biased in that assignment decisions tend to favor larger affiliates, affiliates that are or were on one of the CNA's boards of directors, or are a member of a particular affiliate sub-group."[4]  It is this lack and transparency and integrity that the prompted the Commission to issue Policy 51.301.

Now, it is time for the Commission to enforce its policies.  In SourceAmerica's haste to re-award this opportunity to Peckham, SourceAmerica gave no consideration to its legal obligation to equitably distribute awards among qualified CRPs.    Accordingly, because SourceAmerica has failed to comply with its legal obligations, its award recommendation does not provide a rational basis upon which an award decision can be based.

2.    <u>SourceAmerica Has Not Made Award to a CRP that Meets the Minimum Requirements</u>

Among other things, under the applicable regulations implementing the AbilityOne program, CNAs such as SourceAmerica are required to "Monitor and assist its nonprofit agencies to meet the statutory and regulatory requirements to fully participate in the program. Conduct assistance visits with its nonprofits as necessary and provide the Committee with the results and recommendations of such visits." 41 C.F.R. §51-3.2(j).

---

[4] Government Accountability Office, *Employing People with Blindness or Severe Disabilities, Enhanced Oversight of the AbilityOne Program Needed,* GAO-13-457 (May 2013) at 22-23.

Despite having the affirmative duty to monitor nonprofit agencies' compliance with statutory and regulatory requirements, SourceAmerica has completely abdicated this responsibility and instead simply accepted Peckham's naked representation that it will in fact employ severely disabled persons on the USDA helpdesk contract. Notwithstanding Peckham's past issues regarding improper subcontracting, SourceAmerica has simply accepted Peckham's self-certification without taking any steps to verify the veracity of such a representation. Indeed, in denying NTI's appeal below, the Vice President for Regional Operations only notes that CRPs are required under the terms of the Solicitation to comply with the AbilityOne program rules, but does not identify any steps SourceAmerica has taken to evaluate, or will take to ensure compliance, such as independently verifying the status of employees by either the SSA or their state VR agency. (Ex. 2 at 2.)

Ultimately, a federal government contract is going to be awarded at the end of the process here. And, any award decisions must be supported by sufficient facts to ensure that awards are only made to responsible parties who will comply with the AbilityOne program's applicable statutory and regulatory requirements. As noted above, SourceAmerica disavows any obligation to supply the requisite factual basis by claiming "Our requirement is to follow the stated B1 requirements for the distribution of a contract opportunity. That process may or may not result in *"award decisions of government contracts"* as some future date by the federal government agency which in this case would be the USDA." (Ex. 4 at 2.)

Regardless of whether SourceAmerica's head-in-the-sand approach of accepting certifications technically satisfies the letter of the B1 requirements, it is clear that its willful ignorance of relevant facts does not even come close to establishing a rational basis that could support an award decision of a federal government contract. Accordingly, whoever is ultimately deciding to award the contract cannot rely upon SourceAmerica's recommendation.

3.      SourceAmerica Has Not Properly Documented its Decision

Because the award of a federal government contract is required to be supported by a rational basis, it is well settled that award decisions of government contracts must be sufficiently documented in order to ensure meaningful review. Certainly, an award decision cannot survive even the mildest scrutiny if it is based on an irrational recommendation from a CNA. Accordingly, the Commission included the requirement in its policy document requiring CNAs to document their award recommendation decisions, and will sustain appeals where a CNA fails to do so. (Commission Policy 51.301.)

In denying this appeal below, SourceAmerica's Vice President for Regional Operations did not put forth, or even cite to any contemporaneous documentation supporting SourceAmerica's decision. Instead, the Vice President only offered his conclusory impressions that he had reviewed some documentation and "agrees with the evaluation team's project recommendation decision." This is simply insufficient to establish that SourceAmerica's

Ms. Ballard & Ms. Zeich.    April 4, 2014 | Page 14

recommendation decision was rationally based and followed its stated B-1 requirements. Similarly, SourceAmerica's second-level appeal decision does not identify a single contemporaneous document articulating SourceAmerica's findings that could rationally support the choices made.

Regardless of whether SourceAmerica satisfied its obligations under its B-1 document, as noted earlier, the Chief Operating Officer in denying NTI's second-level appeal asserted SourceAmerica's obligation to document facts under its B1 requirements is far less stringent than the requirements applicable to awarding federal government contracts. Indeed, four days is simply not enough time to evaluate three proposals from scratch, meaningfully consider the respective strengths and weakness offered by each proposal, adequately document all of the evaluators' findings, and make a reasoned decision. Accordingly, here again, SourceAmerica has failed to produce an award recommendation that can be relied upon to make an award decision. Accordingly, SourceAmerica has fallen short of its obligations under Commission Policy 51.301 requiring that the Commission sustain this appeal.

## CONCLUSION

For the foregoing reasons, the Commission should sustain this appeal. As noted in NTI's letter dated February 4, 2014, SourceAmerica has now failed twice to produce an award recommendation that is sufficient to be relied upon to support the award of the USDA Helpdesk contract. It is not in the interests of the AbilityOne Program to delay this process any further. Accordingly, NTI again respectfully requests that the Commission exercise its authority to direct assignment of work based on its review of the proposals.

NTI stand ready to meet with the Commission at its earliest opportunity to present the issues set forth in this appeal letter.

Respectfully,

Ronald K. Henry
Attorneys for NTI

# EXHIBIT 1

**From:** MJ Willard
**Sent:** Thursday, February 06, 2014 9:25 AM
**To:** Williams, Martin/National (mwilliams@sourceamerica.org); Alan Hubbard
**Cc:** dafields@sourceamerica.org
**Subject:** USDA Help Desk Opportunity 21573 - Appeal from NTI

Dear Mr. Martin:

Once again there have been major problems with the B-1 Distribution procedure implemented by SourceAmerica personnel with respect to USDA Help Desk Opportunity 21573. On December 20, 2013, Ms. Ballard determined that SourceAmerica failed to follow its established policies and procedures in awarding the contract to Peckham. She returned this matter to SourceAmerica for corrective action. Unfortunately, there are additional problems with the follow up effort. Another six months pursuing administrative remedies at the SourceAmerica level will not serve the interests of the federal customer (USDA), nor will it help the severely disabled individuals the AbilityOne program was established to employ. I have asked Ms Ballard as Executive Director of the AbilityOne Commission to select, on an exception basis, the CRP for the USDA Help Desk Opportunity.

In the event that she declines to do so, please accept this email as our first level appeal to SourceAmerica.

This Help Desk contract has turned into a struggle waged by those who feel the mission of AbilityOne is being marginalized, and those who appear to be satisfied with that state of affairs. The program's mission to employ people with severe disabilities is so loosely observed that no one can tell with any certainty just who is being hired on these contracts.

Let me briefly relate some relevant context. The most dramatic illustration of how far the program has gone astray was the 2005 scandal at NECD, SourceAmerica's largest contractor. After a whistle-blowing employee tipped the FBI to widespread fraud at the El Paso Texas non-profit, compliance officers from SourceAmerica and the Commission visited the contractor. They reported that only 7.8% of the 4,000 AbilityOne program employees were actually people with severe disabilities. Yet only three months earlier, compliance officials had visited NECD and approved its claim that 78% of its employees had disabilities so severe that they could not be competitively employed.

How could anyone confuse a workforce of ~4,000 mostly non-English-speaking immigrants with few visible signs of disability, with a workforce consisting of 78% people with severe disabilities? The reality was that nobody did. It is an open secret that many contractors hire people with mild physical and psychological conditions, particularly large non-profits with the pressure of staffing major requirements. Otherwise, as one SourceAmerica manager explained to me many years ago, "The CRPs couldn't perform on their contracts." There were rumblings for years that NECD was pushing even that mild disability standard. But Defense Department customers were satisfied with the garments produced by the 4,000 sewers, a portion of contract

revenue was flowing to SourceAmerica, and NECD employed at least *some* people with severe disabilities. Who inside the program would jeopardize this set-up by pointing out that the emperor had no clothes?

Investigative journalists delight in uncovering hypocrisy. Three writers from the *Oregonian* became finalists for a Pulitzer Prize after writing a series of articles about their visits to SourceAmerica contractors across the country. They reported that the contractors operated under an "honor system." As long as a doctor's note was in an employee's file, the contractor need only make a judgment call that the person was so severely disabled that they were not competitively employable. In some cases NECD didn't even bother with the doctors' notes. They listed the disabling condition as "Doesn't speak English." With such a compliance system, SourceAmerica contractors could comfortably perform on increasingly large and lucrative contracts that had been removed from the competitive market.

The *Oregonian* revelations sparked outrage. Leaders from the disability community with first-hand knowledge of how desperately people with severe disabilities needed these jobs were dismayed. Hearings were conducted. Senators Enzi, Harkins and Kennedy, among others, vowed reform. For a variety of reasons their efforts failed. In time the fuss died down and nothing of significance changed.

In 2010, Becky Ogle, former Executive Director of the President's Task Force on People with Disabilities traveled with Andrew Houghton, Chairman of the AbilityOne Commission, to the worksite of Peckham, in Lansing, Michigan. Peckham had replaced NECD as SourceAmerica's largest contractor. It had also been cited in the *Oregonian* articles as illegally subcontracting work meant for disabled employees. There was wonder about how Peckham could possibly find so many people with severe disabilities to work their thousands of AbilityOne jobs. During their visit Ms. Ogle and Mr. Houghton observed hundreds of non-English speaking workers with few visible signs of disability sitting at sewing machines churning out garments for the defense department. The similarities to the NECD workforce were striking. The two observers reported that despite a sprinkling of people who were visibly disabled, they considered it very unlikely that 75% of Peckham's workforce could possibly consist of people with severe disabilities. But nothing was done. Unlike NECD, Peckham's employees had doctors' notes in their files. The honor system had a fig leaf.

It is against this backdrop that we at National Telecommuting Institute (NTI) read the Sources Sought Notice for USDA Opportunity 21573. This contract would involve the hiring of hundreds of technical support agents with severe disabilities. Most critically, it would permit them to work from home. This is the field in which NTI specializes. For the past 18 years we have worked with people whose physical disabilities are so severe that they require home-based employment. Almost all of NTI's placements are into virtual Help Desk or call center jobs. USDA Opportunity 21573 interested us greatly.
Among those with severe mobility impairments, there is enormous pent-up demand for teleworking jobs. NTI is deluged with applications from across the country. We limit our attention to the 8,000 applicants every year whose disabilities are independently verified by government agencies. Of those, 88% receive Social Security disability benefits, while the rest have verification of severe disability from their state VR agency. While non-competitively

employable by virtue of requiring home-based positions, they have a great deal to offer an employer who will allow telework.

With a track record of managing an award-winning AbilityOne virtual call center for the IRS, and NTI's success in signing the incumbent on the USDA contract, IBM, as our subcontractor, NTI thought surely the SourceAmerica decision makers would be pleased with the opportunity to provide jobs for an underserved population genuinely consistent with their mission. As Dave Dubinsky, Director of the West Coast Region explained to me, under the B-1 process, he first determines which CRPs the federal customer finds acceptable. From among those, he chooses the one most likely to maximize the employment of the target population. If the decision maker followed the B-1 selection guidelines, how could NTI lose?

Mr. Joe Diaz, the East Coast Regional Director who made the initial USDA selection decision, did not apply the mission's priorities. He informed us that NTI and Peckham were both acceptable to the USDA. He even commended NTI for having 1,230 applicants for tech support jobs already screened and awaiting placement at the time of our proposal submission—and then he awarded the contract to Peckham. In the debriefing he explained he viewed Peckham's technical team as preferable to NTI's subcontract arrangement with IBM. As he pointed out, "IBM could go away". "

As you know, NTI appealed the decision. It took six months of denials from SourceAmerica before we could present our case to the Commission. We felt considerable relief when Ms. Ballard ruled NTI's appeal supported and threw the decision out. It was the first time in 25 years that an Executive Director of the Commission had ever overturned a SourceAmerica selection. That says a lot. But with a budget less than 10% of SourceAmerica's Ms. Ballard turned the responsibility for a re-compete back to SourceAmerica.

How SourceAmerica chose to conduct that re-compete is revealing. Your leadership selected Ryan Blackman, a Business Development Specialist, to make the decision. Mr. Blackham had never made a selection decision before. Ever. He was assisted by two newly hired SourceAmerica employees. Not one of the three seems to have ever set up or managed a call center or a Help Desk. The USDA—the customer—was never given copies of the new proposals. Nor were they consulted about the weighting of the evaluation criteria. Mr. Blackman reported in a recorded debriefing that he took the evaluation criteria listed in the source selection notice and gave each equal weight. He further explained that NTI and Peckham had both been found acceptable by him. Unlike the B-1 process followed by Dave Dubinsky with his 30 years experience, Mr. Blackman made no attempt to assess which CRP would maximize the jobs for people with severe disabilities. In fact he was adamant that the equally weighted factors of capability, capacity, quality, geography, staffing plan, past performance, broadening the CRP base and subcontracting were the sole criteria for his decision.

Failure to take the next step by evaluating which CRP will maximize jobs for the target population is inconsistent with the AbilityOne mission and the laws and regulations underlying that fundamental mission. SourceAmerica's B-1 Project Distribution procedures Doc.# USOP2-002, which implements the Commission's Policy 51.201, states that CRP selections should be consistent with "....*our role as defined by regulation, to maximize the employment*

*options for people with significant disabilities ... "*   This is, after all,  the reason AbilityOne exists.  But this mission has become so marginalized within SourceAmerica's culture, that some staff don't even recognize that this dispositive factor is missing from their selection deliberations.

The ability of a CRP to maximize employment opportunities may become much more salient in the near future.  Commission staff have recently decided to work with the Social Security Administration and GAO to explore matching the Social Security numbers of workers on AbilityOne contracts with those also receiving Social Security disability benefits.  Sixty-two percent of the targeted AbilityOne population—those with severe disabilities—receives SSA disability benefits.  So the extent to which this group shows up among AbilityOne contracted workers is a good indicator of which CRPs are furthering AbilityOne's mission.  For example, several years ago I asked Mitch Tomlinson, CEO of Peckham,  what percent of his workforce consisted of people who had been on disability benefits.  He told me it was "probably less than 10%."  That is what would be expected from a CRP which recruits thousands of employees from very limited geographic areas.  In contract, because NTI uses a virtual model and nationwide recruiting we are able to hire 88% of our workforce from among those receiving disability benefits.  We are able to take the jobs to those in the target population, no matter where they live.

My hope is that Ms. Balland will decide to save time and all of our efforts by making this award decision herself.  If she elects to have SourceAmerica handle it, please consider this our first level appeal as well as an explanation of why we do not intend to drop this matter.

Sincerely,

MJ


**M.J. Willard, Ed.D**
Executive Director
NTI, Inc.
103 E. Blithedale Ave  Suite 9
Mill Valley, CA  94941
Phone: (415) 389-1703  | fax: (415) 389-1685
www.NTIcentral.org

---

Equal Employment Opportunity Employer M/F/V/D

# EXHIBIT 2

# SourceAmerica

February 26, 2014

Dr. Mary Jean Willard
Executive Director
National Telecommuting Institute, Inc.
69 Canal Street
Boston, MA 02114

Dear Ms. Willard:

On February 13, 2014, SourceAmerica confirmed receipt of National Telecommuting Institute, Inc.'s (NTI) appeal of SourceAmerica's project recommendation decision on January 23, 2014 for the IT Service Desk Support, US Department of Agriculture. I conducted a thorough review of the methodology SourceAmerica followed to make a recommendation to the U.S. AbilityOne Commission in order to address the pertinent themes in the appeal letter. My review included the relevant regulatory references, the AbilityOne Program Bulletin No. B-1 Project Development Distribution and Transparency Procedure (B-1), any documentation submitted by the responding agencies and documentation generated by the SourceAmerica evaluation team.

As the appeal letter clarifies, this was a recompete of the above referenced requirement due to a request by E. Ballard, the Executive Director of the U.S. AbilityOne Commission. The NTI appeal letter included an analysis of the SourceAmerica evaluation team. SourceAmerica stands behind Mr. Blackman, Acting Executive Director, a seasoned member of the SourceAmerica Leadership Team. The appeal contains a statement about the evaluation team which is false. The evaluation team of Posting 2333 collectively has 30 years of experience in support and management of contact centers. This team provided a recommendation identifying an agency willing and able to maximize employment of people with significant disabilities.

SourceAmerica established the AbilityOne Program Bulletin No. B-1 Project Development Distribution and Transparency Procedure to detail the procedure it will use to fulfill its responsibilities as a Central Nonprofit Agency as stated in Title 41: Public Contracts and Property Management, § 51-3.2.

As directed by E. Ballard, the Executive Director of the U.S. AbilityOne Commission, SourceAmerica reposted the IT Service Desk Support, US Department of Agriculture requirement for NPA Recommendation. Posting # 2333 included:

- Criteria for Selection which detailed program requirements to meet the Suitability Criteria of the AbilityOne Program;
- The Response Requirements which identified all areas in which responding agencies must document their capability, capacity and other qualifications to demonstrate their ability to effectively perform the services as detailed in the statements of work, and fulfill all requirements of the AbilityOne Program.
  - The Response Requirements included a requirement for the responding agencies to detail their "hiring and staffing plan to identify, recruit and hire people with disabilities to support this project and its specific location(s) as well as to provide specific details regarding expertise and/or past success in employing war-wounded veterans and/or military dependents."; and,
- The Additional Information section which required each responding agency to submit attachments providing the details of their capabilities, past performance and other related details.

As detailed in the posting, the agency selected to be recommended for this opportunity will be subject to all rules, regulations, and requirements of the AbilityOne Program as specified in 41 CFR Chapter 51, FAR 8.7, and all applicable rules, regulations, policies, and memorandums of the US AbilityOne Commission. The responses and documentation provided in response to these requirements were reviewed by the evaluation team. NTI's claim statement that SourceAmerica has failed to evaluate which agency will maximize jobs for people with significant disabilities is not accurate.

I have reviewed all necessary and pertinent documentation in the process of responding to your appeal. I have concluded that SourceAmerica followed the B-1 guidelines and agree with the evaluation team's project recommendation decision.

SourceAmerica's B-1 Process has a second level appeal. National Telecommuting Institute, Inc. has the right to appeal this decision to SourceAmerica's Chief Operating Officer, Dennis Fields, within five business days. The Chief Operating Officer (COO) may reconsider a CRP's B-1 appeal only if there is new pertinent information that was not available at the time the Vice President, Regional Operations issued the initial decision. A request for reconsideration must include the specific facts believed by the CRP to justify the decision to be modified or reversed. In reconsidering the Vice President, Regional Operations decision, the COO will balance the harm to the CRP requesting reconsideration against the harm to the CRP which was given the project development opportunity.

The second level appeal can be forwarded electronically to dafields@sourceamerica.org or mailed to the address at the bottom of the first page of this letter. Within the SourceAmerica appeal process, the Chief Operating Officer's decision is final.

Sincerely,

Martin Williams
Vice President, Regional Operations

3

# EXHIBIT 3



# NTI

*Leaders in Placing Americans with Disabilities in Jobs*

Dear Mr. Fields,

National Telecommuting Institute, Inc. (NTI) hereby appeals the SourceAmerica decision issued by Mr. Martin Williams, Vice President, Regional Operations, dated February 26, 2014, denying NTI's appeal of the SourceAmerica decision to again award Posting 2333 IT Service Desk Support, US Department of Agriculture (USDA) to Peckham, Inc. (Peckham). As discussed below, the procedures followed by SourceAmerica in making the Community Rehabilitation Program(CRP) selection decision for USDA Opportunity 2333 were inconsistent with the Javits-Wagner-O'Day Act, 41 U.S.C. §§ 8501-8506 (JWOD), the AbilityOne Commission's (the Commission) implementing regulations 41 C.F.R. Part 51-1 and policies, and with SourceAmerica's own B-1 Project Development Distribution and Transparency Procedure, Doc. No. USOP2-0002.

The Commission's regulations and policies (Policy 51.301) provide, in relevant part, that in order to withstand scrutiny, SourceAmerica needs to demonstrate that in making its decision to place this award with Peckham that it has:

- followed its established policies and procedures;
- properly documented its decision; and
- selected a CRP that met the minimum requirements.

Here again, SourceAmerica has fallen short of each of these three requirements. For the reasons set forth below, SourceAmerica's decision cannot stand and must be overturned.

## SourceAmerica Failed to Follow its Established Policies and Procedures

As required under the Commission's policies, SourceAmerica has developed processes for project assignment and order allocation codified in its B-1 document. As stated in SourceAmerica's B-1 document, the overall purpose in assigning contracts to CRPs is "to maximize the employment options for people with significant disabilities." (B.1 Section 1.0). Further, the SourceAmerica B-1 document provides, in relevant part, that "Distribution of project development opportunities among qualified CRPs and the successful project development implementation *will* follow these overriding principles." (B.1 Section 4.0.) The award decision for USDA Opportunity 2333 did not adhere to this established policy and procedure.

In our June 2013 experience in pursuit of the USDA Help Desk work, NTI and Peckham were both judged as qualified to perform the work by the USDA and by SourceAmerica. In this second go-round, NTI and Peckham were again both judged qualified.

The proper implementation of the above-quoted B-1 policies and procedures, according to Dave Dubinsky, a Regional Director at SourceAmerica with 30 years experience with

i



# NTI

*Leaders in Placing Americans with Disabilities in Jobs*

the program, is that once the determination is made that more than one CRP is qualified for a contract, the decision is to be made on the basis of which CRP will maximize the employment of the target population. The B-1 document's overall purpose, after all, is the reason the program was created. This straightforward approach clearly implements SourceAmerica's stated policies and procedures.

For the USDA Opportunity 2333, SourceAmerica failed to follow these stated polices. As noted above, the SourceAmerica B-1 document provides that SourceAmerica "will follow these overriding principles" and therefore, SourceAmerica did not have discretion to deviate from these requirements. Yet it did. In its proposal for USDA Opportunity 2333, NTI was at pains to make clear that NTI could fill 100% of the direct labor jobs with applicants from the target population and fill 80% of those jobs prior to the contract even going AbilityOne.

NTI pointed out that:

- 100% of the individuals with disabilities needed to staff the USDA contract have already been screened and given preliminary training by NTI. Due to the tremendous demand for home-based jobs, at any given time NTI has between 500-1,500 individuals waiting for placement as virtual customer service/help desk agents.

- 100% of NTI's proposed workforce has been independently verified by either the SSA or their state VR agency. They all require home-based work. There is no need to rely on squishy self- certifications by the hiring CRP. These are unquestionably individuals with severe disabilities seeking help from the AbilityOne program.

- NTI can offer the fastest possible speed of ramp up. The incumbent on the contract, IBM, has offered to immediately authorize NTI to perform as their subcontractor in the event that NTI is chosen as prime on this opportunity. On the first day that the USDA work officially transitions to the AbilityOne program, 80% of the existing direct labor tech support agents will already be people with severe disabilities. The remaining 20% who staff the "911 Help Desk" will be phased out over a 12-18 month period as agents with disabilities gain the experience needed to perform this work.

NTI's telework solution provides employment options nationwide for those individuals whose disabilities are too severe to work at any location other than their homes. It's hard to imagine how any CRP could propose to maximize employment options of the target population to a greater extent. Maximizing options for the population was not a priority for SourceAmerica however. In a recorded de-briefing session SourceAmerica explained that it gave equal weight to eight factors, only one of which had a direct

2



# NTI

*Leaders in Placing Americans with Disabilities in Jobs*

bearing on a CRPs ability to maximize hiring of the target population. SourceAmerica's B-1 document provides a list of other factors that it _may_ consider, however, these discretionary factors cannot be used to displace the required fulfillment of the B-1 overriding principle to maximize employment options for the target population. SourceAmerica deemed both Peckham and NTI qualified, and then it missed the forest for the trees. In doing so it also failed to follow SourceAmerica's own B-1 guidelines.

### SourceAmerica Has Not Made Award to a CRP that Meets the Minimum Requirements

In a choice between two qualified CRPs, there is a second factor described in the Commission's regulations that also is absent from SourceAmerica's deliberations. A Central Nonprofit Agency is required to distribute projects in a "fair and equitable" manner.    In 2012 Peckham Vocational Industries performed more AbilityOne work than any other CRP in the program. They had 18 times more work than NTI. SourceAmerica has been very good to Peckham, so good that at times they've awarded them more work than Peckham was able to perform. The Oregonian reported that Peckham was caught subcontracting out AbilityOne work meant for disabled individuals to a commercial contractor. As noted above, notwithstanding these past problems, SourceAmerica has simply accepted Peckham's self-certifications that they are employing the target population. And in denying NTI's appeal below, the Vice President for Regional Operations only notes that CRPs are required under the terms of the Solicitation to comply with the AbilityOne program rules, but does not identify any steps SourceAmerica has taken to evaluate or ensure compliance, such as independently verifying the status of employees by either the SSA or their state VR agency.

Both NTI and Peckham are qualified to perform the USDA work, Peckham performed 18 times the AbilityOne work that NTI performed in 2012, and yet SourceAmerica proposes to award to Peckham yet another AbilityOne contract?

Fairness to the CRPs vying for this contract is of minor concern relative to the fairness shown to the people with disabilities seeking work.  It has been 10 years since individuals with disabilities have had a chance to apply for new AbilityOne call center work that allows telework. NTI receives ~8,000 applications per year from people whose only hope of employment is that they find a home-based job. During the past decade that SourceAmerica has rained AbilityOne jobs on the population of Lansing Michigan, eminently qualified; highly motivated people with severe disabilities across the country in need of home-based work have had nothing.   Concentrating jobs with one employer in a few locations does not maximize employment options for people with significant disabilities.

The May 2013 GAO report states "..... some affiliates have questioned the overall integrity of the CNA's  assignment processes.....they feel the system is biased in that assignment decisions tend to favor larger affiliates, affiliates that are or were on one of the CNA's boards of directors, or are a member of a particular affiliate sub-group."

3



# NTI

*Leaders in Placing Americans with Disabilities in Jobs*

NTI own experience with how work is allocated by SourceAmerica has also been disturbing. We've had three experiences with SourceAmerica that left us taken aback at how matters were handled. The most recent, and the experience most similar to the current one, is a 2010 competition NTI entered into along with six other CRPs to fill approximately 200 technical support jobs for DLA. Because only NTI and Peckham had any significant experience in call center work, and because NTI could offer over 1,000 technical support applicants from across the county already pre-screened and waiting for such work, NTI expected to be among those chosen to present to the federal customer. We were dismayed to learn that Peckham was the only organization of the seven allowed to present to the customer.

## SourceAmerica Has Not Properly Documented its Decision

Another necessary prerequisite that SourceAmerica must establish to have its decision upheld is that its decision must be properly documented. (Commission Policy 51.301.) SourceAmerica has not fulfilled this requirement here.

In denying this appeal below, SourceAmerica's Vice President for Regional Operations did not put forth, or even cite any contemporaneous documentation supporting SourceAmerica's decision. Instead, the Vice President only offered his conclusory impressions that he had reviewed some documentation he merely "agrees with the evaluation team's project recommendation decision."

This is simply insufficient to establish that SourceAmerica's decision was rationally based and followed its stated B-1 requirements. It is well settled that award decisions of government contracts must be sufficiently documented in order to ensure meaningful review, and here, SourceAmerica has fallen short. Accordingly, for this reason as well, SourceAmerica's decision cannot withstand scrutiny and must be overturned.

If the AbilityOne Program really awards work based on which CRPs can maximize the jobs options for the target population and makes choices designed to produce a fair and equitable distribution of projects, then the allegations by mid and small sized CRPs that SourceAmerica favors the large non-profits in making selection decisions, the allocation experiences experienced by NTI in which maximizing employment for the target population seem to have been given little or no weight, and the persistent attempts by SourceAmerica to award yet another contract to Peckham don't make any sense. They make perfect sense if the unspoken practice of decision makers is to funnel work to large contractors whose CEOs are friends, colleagues and sometimes superiors who serve on SourceAmerica's Board and as Subcommittee Members, and who have a track record of delivering the goods along with a steady stream of commissions.

There is abundant research documenting the tendency over time of non-profits to evolve in ways that increasingly benefit an inner circle at the expense of the mission. With hundreds of millions of dollars in contracts to dispense, and incestuous

4



*Leaders In Placing Americans with Disabilities in Jobs*

relationships with some of their largest recipients, making the mission the most important priority is a challenging task.

One of the most powerful steps you can take as COO to counteract these corrosive influences is to send a  clear message about the values of SourceAmerica's leadership. If maximizing the employment of the target population is critical, and the fair and equitable distribution of projects really does matter, then we respectfully ask you to say so with your decision on this appeal.


Sincerely,

*MJ Willard*


**M.J. Willard, Ed.D**

Executive Director

NTI, Inc.

103 E. Blithedale Ave  Suite 9

Mill Valley, CA  94941

Phone: (415) 389-1703  | fax: (415) 389-1685

www.NTIcentral.org

_____

Equal Employment Opportunity Employer M/F/V/D

5

# EXHIBIT 4

SourceAmerica.

March 19, 2014

M.J. Willard
Executive Director
NTI, Inc.
103 E. Blithedale Ave. Suite 9
Mill Valley, CA 94941
Re: Second Level Appeal of the USDA IT Service Desk Support Opportunity

Dear Ms. Willard,

I have reviewed your appeal, dated March 4, 2014, concerning the SourceAmerica decision on the USDA Opportunity. In that appeal you state that the decision must be overturned based upon on three allegations:

1. SourceAmerica failed to follow its established policies and procedures
2. SourceAmerica has not made award to a CRP that meets the minimum requirements
3. SourceAmerica has not properly documented its decision

Concerning the first issue:

*SourceAmerica failed to follow its established policies and procedures*

You assert that:

*"Further, the SourceAmerica B-1 document provides, in relevant part, that "Distribution of project development opportunities among qualified CRPs and the successful project development implementation will follow these overriding principles." (B.1 Section 4.0.)*

That is a correct statement but you go on to focus on only one of the principals. All of the five principals are listed below.

4.0  Distribution Principles:

Distribution of project development opportunities among qualified CRPs and the successful project development implementation will follow these overriding principles consistent with NISH's mission statement and corporate values:

- Creating and maintaining jobs

- Federal customer requirements

- CRP project success, successful contract performance, and value

- Sound business decisions by NISH carried out in a professional manner
- Transparency in the notification, distribution, and appeal process for project development opportunities among qualified CRPs

In my review of the selection process I believe that all five of these principals were properly considered in the process.

Concerning the second issue:

*SourceAmerica Has Not Made Award to a CRP that Meets the Minimum Requirements*

Here you reference the following:

*"In a choice between two qualified CRPs, there is a second factor described in the Commission's regulations that also is absent from SourceAmerica's deliberations. A Central Nonprofit Agency is required to distribute projects in a "fair and equitable" manner"*

We believe that Program Bulletin No. B1 does address the AbilityOne Commission's requirements for the distribution of projects. Furthermore In my review of the selection process I find that the selected CRP does meet the minimum requirements for the project opportunity.

The final issue you raise is that:

*SourceAmerica Has Not Properly Documented its Decision*

You make the following statement:

*"This is simply insufficient to establish that SourceAmerica's decision was rationally based and followed its stated B-1 requirements. It is well settled that award decisions of government contracts must be sufficiently documented in order to ensure meaningful review, and here, SourceAmerica has fallen short"*

Our requirement is to follow the stated B1 requirements for the distribution of a contract opportunity. That process may or may not result in *"award decisions of government contracts"* at some future date by the federal government agency which in this case would be the USDA.

Here again I find in my review that the B1 requirements were satisfied for this selection process.

In summary I find no reason to overturn the selection that SourceAmerica has made for this project.

Sincerely,

Dennis A. Fields

SourceAmerica

C.O.O.

# Attachment 2

**From:** Henry, Ronald [mailto:Ronald.Henry@kayescholer.com]
**Sent:** Sunday, May 04, 2014 4:12 PM
**To:** Kimberly Zeich [KZeich@AbilityOne.gov]; MJ Willard; Alan Hubbard; Angela Phifer [APhifer@AbilityOne.gov]; Dennis Lockard [DLockard@AbilityOne.gov]; 'Tina Ballard [TBallard@AbilityOne.gov]'; Wagman, Robert; Hibey, David; 'LBartalot@AbilityOne.gov'; 'blineback@abilityone.gov'
**Cc:** 'LBartalot@AbilityOne.gov'; 'blineback@abilityone.gov'
**Subject:** Supplemental Submission of NTI Regarding USDA Helpdesk Opportunity 2333

## Supplemental Submission of NTI Regarding USDA Helpdesk Opportunity 2333

Dear Ms. Ballard and Ms. Zeich:

The purpose of this letter is to supplement the National Telecommuting Institute, Inc. ("NTI") April 4, 2014, opposition to the recommendation by SourceAmerica regarding the U.S. Department of Agriculture ("USDA") Helpdesk Opportunity 2333, in order to address specific requests of the U.S. AbilityOne Commission (the "Commission") made during the recent hearing held by the Commission to address the NTI objections.

As an initial matter, the Commission requested that the comments by the participants in the recent hearing be provided to you. A summary of those comments are attached hereto.

Before turning to the specific objections of NTI against the recommendation by SourceAmerica, it is critical to understand the posture of this matter. The Commission is not sitting in the position of an appeals court to address whether SourceAmerica committed an abuse of discretion in rendering a decision that is subject to review under the Administrative Procedures Act or other form of judicial review. Instead, the Commission itself is making the original decision here. See, e.g., Commission Policy 51.301, Section 5.(a)i.

SourceAmerica has simply made a recommendation, not an award decision. That recommendation is mere input to your responsibility to make the decision in accordance with the requirements of the Javits Wagner O-Day Act and implementing regulations. The SourceAmerica recommendation is not entitled to any deference. You are not hunting for "error" in a decision by SourceAmerica, you are making the original award decision yourselves with SourceAmerica's recommendation serving as input just as you have input from your own staff. The procedures under Commission Policy 51.301, Section 6(d)ii help you understand the deficiencies in the SourceAmerica recommendation but this is not a matter that has been committed to SourceAmerica for decision. SourceAmerica here made only a recommendation, not an assignment or allocation award.

We believe that we have fully demonstrated why the SourceAmerica recommendation should not be adopted by the Commission. SourceAmerica failed to properly analyze the information available to it and made an erroneous recommendation. Moreover, the passage of time since the SourceAmerica review further demonstrates that the Commission should make the award to NTI. As you heard during our meeting, NTI is now the incumbent subcontractor to IBM on the existing USDA contract. NTI has twelve severely disabled people already at work on this project and more are being added week by week. Peckham cannot do what NTI has

already done. Peckham does not have the capacity to employ severely disabled telecommuting workers in dozens of states as NTI already does. Peckham does not have the capacity to continue the employment of the severely disabled individuals who are already on this job. Award should be made to NTI.

Turning to the specific defects in the SourceAmerica recommendation, our objections previously filed and our comments below utilize the framework under section 6(d) of the Commission's Policy 51.301. This framework demonstrates that the SourceAmerica recommendation should not be adopted by the Commission because SourceAmerica has failed to:

- follow its established policies and procedures;

- properly document its decision; or

- ensure the selected CRP meets the minimum requirements.

SourceAmerica's failed to follow its established policies and procedures in three distinct ways, each requiring the Commission to reject the SourceAmerica recommendation.

*First,* SourceAmerica failed to follow its B-1 policies and procedures by not considering which proposal would maximize employment options for people with significant disabilities. As an initial matter, there is no dispute that SourceAmerica was obligated to follow its B-1 policies and procedures. *See* SourceAmerica Chief Operating Officer second-level appeal decision dated March 19, 2014 ("Our requirement is to follow the stated B1 requirements for the distribution of a contract opportunity."). SourceAmerica's B-1 document informed offerors that the overall purpose in assigning contracts to CRPs is "to maximize the employment options for people with significant disabilities" (B.1 Section 1.0), and that "Distribution of project development opportunities among qualified CRPs and the successful project development implementation will follow these overriding principles." (B.1 Section 4.0.) Here, there is no dispute that it did not give any consideration to maximizing employment options for the target population.

SourceAmerica is required to follow applicable statutory and regulatory requirements governing the AbilityOne program, regardless of whether the SSN expressly acknowledged such an obligation. Just as federal agencies are required to follow applicable federal statutes and regulations, governing federal procurement, such as the Competition in Contracting Act and the Federal Acquisition Regulation, when making award decisions, CNAs do not have discretion to disregard the applicable requirements of the Javits-Wagner-O'Day ("JWOD") Act, and the Commission's regulations and policies. *Linc Gov't. Servs., LLC v. Untied States,* 96 Fed. Cl. 672, 709(2010) ("if a solicitation term is susceptible to two interpretations one of which would render the solicitation unlawful, preference will be given to that interpretation which does not result in violation of law." quoting *Great N. Ry. Co. v. Delmar Co.,* 283 U.S. 686, 691, 51 S.Ct. 579, 75 L.Ed. 1349 (1931). To the extent that SourceAmerica claims it followed the evaluation criteria stated in the SSN—which it has not—that is simply not sufficient because SourceAmerica does not have discretion to disregard applicable laws and policies.

Certainly, the Commission does not have authority to award federal government contracts that do not further the purpose of the AbilityOne program and disregard the Program's underlying statutory and regulatory requirements. Accordingly, any award recommendation submitted by a CNA that failed to comply with the Program's governing legal requirements could not be relied upon by the Commission and therefore, would be of no value.

*Second,* SourceAmerica did not follow applicable regulations and Commission polices by failing to consider whether the recommendation of an award to Peckham Industries, Inc. ("Peckham") resulted in a fair and equitable distribution of opportunities among non-profit agencies. There are two separate requirements to ensure that opportunities are distributed in a fair and equitable manner. The AbilityOne regulations provide in relevant part: "When the Committee has approved two or more nonprofit agencies to furnish a specific commodity or service, the central nonprofit agency shall distribute orders among those nonprofit agencies in a fair and equitable manner." 41 C.F.R. § 51-3.4 In addition, the requirement for fair and equitable distribution of opportunities is provided in the Commission's 51.301 Policy document.

> CNAs shall develop processes for project assignment and order
> allocation that result in fair, equitable, and transparent distribution
> of opportunities among NPAs, taking into account the unique
> mission and objectives of the AbilityOne Program.

Commission Policy 51.301 § 6(a).

41 C.F.R. § 51-3.4 first became effective when the Commission's regulations were promulgated in 1973. *See* 38 Fed. Reg. 16316 (Jun. 15, 1973) This provision remained unchanged when the Commission overhauled its regulations in 1991. *See* 56 Fed. Reg. 48974 (Sep. 26, 1991). There was no discussion concerning this specific provision. However, the preamble to the 1991 version of the regulations notes in relevant part that the regulations "have been revised to state at the very beginning of the regulations that is the policy of the Government to increase employment and training opportunities for persons who are blind or have other severe disabilities through the JWOD program[.]" *Id.*

Consistent with the Commission's regulations, the Commission's 51.301 Policy document was promulgated in May of 2012, in part, to expressly address the concern that opportunities were not being fairly distributed. A 2013 GAO report notes in relevant part that "The Commission's May 2012 policy, according to Commission officials, sought to articulate a minimum set of broad principles that CNA policies and procedures should incorporate—some of which related to the elements of transparency and equity discussed above." Government Accountability Office, *Employing People with Blindness or Severe Disabilities, Enhanced Oversight of the AbilityOne Program Needed,* GAO-13-457 (May 2013) at 23

Based on the foregoing, SourceAmerica has an ongoing obligation, both as a matter of regulation and a matter of Commission policy, to ensure that contracts are distributed in a fair and equitable manner. Here, SourceAmerica admittedly has not even tried to comply with these obligations. The SourceAmerica recommendation should be rejected by the Commission because of its absolute failure to consider fair and equitable distribution. The USDA contract is the first major opportunity for homebound disabled persons in 9 years. This opportunity is specifically the strength of NTI and absolutely outside the competency of Peckham which makes

workers come to its locations to work rather than telecommute from all over the country as NTI is able to do. SourceAmerica has also massively unbalanced the available work in favor of Peckham as noted by GAO and, in this case, SourceAmerica absurdly recommends further unbalancing by taking work from NTI's specialized capacity to employ severely disabled homebound workers in order to give yet more work to Peckham which cannot accommodate homebound workers including the incumbents that NTI has already placed on the USDA contract under the IBM subcontract.

*Third*, SourceAmerica again failed to follow its policies and procedures when it deviated from the stated technical evaluation criteria set out in the SSN. As noted in NTI's initial submission, while it remains unclear exactly what SourceAmerica considered and how it evaluated various factors, it is clear that SourceAmerica did not seek to maximize the employment of severely disabled persons and did not seek to fairly and equitably distribute the work. Instead, SourceAmerica merely furthered its reputation for cronyism as found by GAO. Accordingly, even assuming that SourceAmerica has complied with its B-1 document—which it has not—SourceAmerica's failure to evaluate CRPs by applying the core requirements of the Javits Wagner O'Day Act in its evaluation of the criteria set forth in the SSN provides yet another reason why the award recommendation cannot be relied upon to make an award decision.

For each of the evaluation factors set out in the SSN, SourceAmerica conducted a defective evaluation because its evaluation of that factor failed to consider the primary requirements of the program. This program exists to provide employment to the severely disabled and this contract allows telecommuting yet SourceAmerica conducted a defective evaluation of each individual factor by ignoring what the offerors were supposed to be demonstrating under each factor. In each factor of the SSN evaluation, offerors were supposed to be demonstrating that they could successfully utilize and maximize the employment of severely disabled persons, particularly tele-commuters yet SourceAmerica admits that it ignored the statutory purpose of the whole program in its evaluation of each and every factor set out in the SSN. By analogy, SourceAmerica's recommendation is rather like looking at a commercial company's beautiful technical proposal without asking whether the beautiful technical proposal actually delivered the items the government wanted to procure. In this case, SourceAmerica apparently believes that Peckham delivered a beautiful technical proposal and gave them a high score for that beautiful technical proposal without evaluating whether Peckham would actually deliver telecommuting jobs to severely disabled persons. For each factor in the evaluation, SourceAmerica conducted a defective evaluation that failed to address the core purpose of the evaluation and the Commission must reject the Source America recommendation.

Note further that SourceAmerica has not properly documented its decision and that this constitutes an separate and independent reason for rejecting the SourceAmerica recommendation. NTI has not seen any documentation supporting SourceAmerica's decision to again recommend award to Peckham, and it is doubtful that any such documentation exists. The likelihood of adequate documentation existing is most improbable given the four day turn-around from proposal submission to recommendation in this case. Even for the most experienced procurement professionals, four days is simply not enough time to evaluate three technical proposals from scratch, meaningfully consider the respective strengths and weakness offered by each proposal, adequately document all of the evaluators' findings, and make a reasoned

decision. It is well settled that an inadequately documented decision cannot survive scrutiny. *See* e.g., *Standard Communications, Inc. v. United States,* 101 Fed. Cl. 723 (2011).

Finally, SourceAmerica has recommended award to a CRP with absolutely no consideration as to whether Peckham meets the minimum requirements. This is a program for the severely disabled. The Commission has an independent responsibility to investigate proposed offerors and independently confirm that they meet the requirements of the program. Commission Policy 51.301, Section 5(a)I makes it clear that the Commission has the responsibility to designate whether an NPA is qualified. To date, the record contains no indication that Peckham is qualified. The Commission cannot rely on the recommendation of SourceAmerica because SourceAmerica does not even try to audit Peckham's eligibility and it is, in the end, the responsibility of the Commission to determine eligibility.

As noted in NTI's initial submission, despite SourceAmerica's obligation to monitor its nonprofit agencies to ensure compliance with statutory and regulatory requirements under 41 C.F.R. §51-3.2(j), SourceAmerica has elected to remain willfully ignorant. While SourceAmerica does its best to "nod and wink" at Peckham's self certification, this is hardly sufficient. As noted in Ms. Ogle's comments, Peckham's noncompliance with the Program's requirements are systematic and pervasive. This information is simply too close at hand for the Commission to ignore.

*    *    *    *

We trust that this additional information is responsive to the Commission's request and we stand ready to respond to any additional requests.

Respectfully,

Ronald K. Henry

*Attorneys for NTI*

Ronald Henry
Kaye Scholer LLP
The McPherson Building
901 Fifteenth Street, NW
Washington | District of Columbia 20005
T: +1 202.682.3590 | F: 202-414-0309
Ronald.Henry@kayescholer.com | www.kayescholer.com

This message may contain confidential and/or legally privileged information from the law firm Kaye Scholer LLP. If delivered to anyone other than the intended recipient, please notify the sender immediately by return email or by

# Attachment 3



# U.S. ABILITYONE COMMISSION

## May 29, 2014

PHONE: 703-603-7740
FAX: 703-603-0655

1401 S. Clark Street, Suite 10800
Arlington, Virginia 22202-4149

VIA EMAIL: (mjwillard@nticentral.org.)

M.J. Willard, Ed.D.
Executive Director
National Telecommuting Institute, Inc.
103 E. Blithedale Ave. Suite 9
Mill Valley, CA  94941

Dear Ms. Willard:

I have completed my review and decision regarding your appeal of SourceAmerica's recommendation regarding Source Sought Notice (SSN) #2333, IT Service Desk support,
U.S. Department of Agriculture (USDA).  In doing so, I reviewed and considered:

- The written material submitted by National Telecommuting Institute, Inc. (NTI) in support of your appeal,
- The oral and written information from your presentation of April 23, 2014, (including the Supplemental Information submitted by NTI's counsel on May 4, 2014)
- The debriefing presentation and minutes from SourceAmerica's debrief of NTI,
- SourceAmerica's written record for their decision, including the SSN and submitted proposals, the evaluation team members' independent and group recommendations, and the acting Executive Director, Strategic Business Development's decision justification; and
- The oral and written information from SourceAmerica's presentation of April 23, 2014.

The policy of the U.S. AbilityOne Commission regarding Central Nonprofit Agency (CNA) selection of nonprofit agencies for project assignment is addressed in Policy 51.301, <u>Selection of Nonprofit Agencies For Project Assignment and Order Allocation</u>.  Section 6(d) addresses how the Commission will consider appeals of CNA selection recommendations.  It states:

*(d) Appeals to the Commission will be considered under the following circumstances:*
 *i. General policies and procedures for appeals to the Commission have been followed as detailed in separate Commission policy/procedures.*
 *ii. The Commission will only consider assignment and allocation appeals if one or more of the following apply:*
  *a. A CNA fails to follow their established policies and procedures.*
  *b. A CNA did not properly document its decision.*
  *c. The NPA selected did not meet the minimum criteria.*



COMMITTEE FOR PURCHASE FROM PEOPLE WHO ARE BLIND OR SEVERELY DISABLED
An Independent Federal Agency



Ms. M.J. Willard
May 29, 2014
Page 2

Accordingly, my review and decision is based on the above requirements. NTI contends that SourceAmerica failed to meet each of these requirements.

**1. NTI's appeal states that SourceAmerica failed to follow its established policy and procedures in making the decision.**

(a) NTI asserts that SourceAmerica: Did not evaluate which nonprofit agency would maximize employment opportunities for people with significant disabilities.

Facts: Maximizing employment opportunities was not an evaluation criterion.

The term "maximizing employment opportunities" is in the Commission's strategic plan and other documents as part of the Agency "Vision". Maximizing employment opportunities for the target population is not a specific requirement in the Javits-Wagner-O'Day (JWOD) Act, Code of Federal Regulations or AbilityOne mission statement for each independent source selection recommendation.

The JWOD Act requires that during the fiscal year, nonprofit agencies employ people who are blind or severely disabled for at least 75% of direct labor hours. The 75% requirement is in the SSN 2333 evaluation criteria as a "must have met" minimum criterion. SourceAmerica concluded that both the selected nonprofit agency (NPA) and NTI met this evaluation criterion.

Commission Policy 51.301 6(b)(i) states that CNAs shall assign projects and make allocations to NPAs that can meet the customers' technical and delivery requirements. Meeting technical and delivery requirements at a fair market price are consistent expectations in federal contracts. In paragraph 6(b)(i)(a), the policy states, "NPAs shall leverage efficiencies and best practices in the delivery of products and services to the Government while maximizing labor hours for people who are blind or have other significant disabilities".

Efficiencies and best practices are basic tenants of the ability to deliver on time at a fair price. Paragraph 6(b)(i)(a) articulates the importance of NPAs being efficient and using best practices while being mindful that the AbilityOne mission is to employ people who are blind or significantly disabled. The policy requires that NPAs do the former _while_ maximizing labor hours. Efficiencies, best practices and labor hours contribute to meeting technical and delivery requirements at a fair market price. Nonprofit agencies that employ people who are blind or severely disabled for at least 75% of direct labor hours are meeting the statutory requirement. The achievement of labor hours above 75% during the fiscal year exceeds the statutes requirement and maximizes (making it as large as possible) employment.



**COMMITTEE FOR PURCHASE FROM PEOPLE WHO ARE BLIND OR SEVERELY DISABLED**
**An Independent Federal Agency**



Ms. M.J. Willard
May 29, 2014
Page 3

SourceAmerica's evaluation concluded that NTI and the selected NPA can meet the customers' technical and delivery requirements and thereby meet the policy 6(b)(i). This office verified that NTI and the selected NPA met the 75% requirement that is in statute and an evaluation criterion in the SSN.

SourceAmerica's AbilityOne Program Bulletin B-1, Project Development Distribution and Transparency, Version D. Dated October 1, 2011; begins with paragraph 1.0 "Purpose". While the defined purpose includes adhering to a set of best practices, *"to maximize the employment options for people with severe disabilities"*; the best practices are discussed in the context of being consistent with the SourceAmerica mission, vision, values and goals and their role defined by regulation. The Bulletin goes on to state how SourceAmerica will maximize employment; which is *"by aggressively preserving existing and proactively developing new job opportunities for people with significant disabilities."*

SourceAmerica's project development resulted in SSN 2333. The SSN fulfills the B-1 stated purpose as it is the product of SourceAmerica "proactively developing new job opportunities". It also fulfills SourceAmerica's regulatory role to "(b) Evaluate the qualifications and capabilities of its nonprofit agencies and provide the Committee with pertinent data concerning its nonprofit agencies, their status as qualified nonprofit agencies, their manufacturing or service capabilities, and other information concerning them required by the Committee" and to "(d) Recommend to the Committee, with the supporting information required by Committee procedures, suitable commodities or services for procurement from its nonprofit agencies" in accordance with 41 CFR 51-3.2(b) and (d).

**(b) NTI asserts that SourceAmerica:** Did not take into account the unique mission and objectives of the AbilityOne program by failing to evaluate which NPA would maximize employment options for individuals who are actually severely disabled.

**Facts:** The NTI appeal cites U.S. AbilityOne Commission Policy 51.301 regarding this matter. The full quote in the policy is, *"CNAs shall develop processes for project assignment and order allocation that result in fair, equitable, and transparent distribution of opportunities among NPAs, taking into account the unique mission and objectives of the AbilityOne Program".*

The AbilityOne Bulletin No.B-1 published by SourceAmerica provides the processes they developed for project assignment and order allocation. This publication, combined with the SSN providing the same information to all offerors, the published questions and answers (posted for the information of all offerors), the application of the same evaluation criteria to all offerors, the notification to all as to which offeror was selected, the provision of debriefs upon request, and the process for appeal of the decision, collectively meet the policy requirement to provide fair, equitable and transparent project assignment recommendations to the Commission.



**COMMITTEE FOR PURCHASE FROM PEOPLE WHO ARE BLIND OR SEVERELY DISABLED**
**An Independent Federal Agency**



Ms. M.J. Willard
May 29, 2014
Page 4

The policy requirement for SourceAmerica to take into account the unique mission and objectives of the AbilityOne Program is met through their minimum criteria requirements. The SSN criterion requires offerors to be in accord with the JWOD Act and implementing guidance. Maximizing employment is in the Commission Vision Statement. It is discussed in the context of SourceAmerica's mission, vision, values and goals. However, it was not an evaluation criterion and it was not published as an evaluation criterion in SSN 2333. As a result, "maximizing employment" could not be evaluated.

**Finding:** NTI's assertions in 1(a) & (b) are not supported.

**(c) NTI asserts that SourceAmerica:** Indicated that the USDA did not review the revised proposals, implying that this demonstrates an error in SourceAmerica's process.

**Fact:** SSN: 2333 states, *"The USDA customer may request to review vendor responses – SourceAmerica may share some, or all, of the responses provided to this SSN"*
The SSN did not state that USDA would review responses or that they would provide responses if requested by USDA.

**Finding:** NTI assertion in 1(c) is not supported.

**(d) NTI asserts that SourceAmerica:** Failed to follow its stated evaluation criteria in the SSN.

**Facts:** SSN 2333 posts 10 "Response Questions". Each question is specifically related to a Recommendation Criterion.

Response Question 1 *"(Other) Detail your NPA's hiring and staffing plan to...."* is related to Recommendation Criteria #12, *"Other-Additional factors taken into consideration for this specific opportunity"*. In the Response Questions column titled "Criteria Type", #12 is an *"Additional Criteria"* and a response is required.
Recommendation Criterion #12 also applies to Response Question 2, which required a response that provides *"specific details regarding your expertise and/or past success in employing war wounded veterans and/or military dependents"*.

The table below illustrates how the SSN 2333 response questions were specifically related to a recommendation criterion.





Ms. M.J. Willard
May 29, 2014
Page 5

| Recommendation Number & Criteria | Response Question Numbers below were "Required" |
|---|---|
| #12, *"Other-Additional factors taken into consideration for this specific opportunity"* | #1 "(Other) Detail your NPA's hiring and staffing plan….." |
| #12, *"Other-Additional factors taken into consideration for this specific opportunity"* | #2 "(Other) Provide… regarding your expertise…. In employing war wounded veterans and/or military dependents" |
| #6 Capability | #3 *"(Capability) Describe…technical expertise…"* and #10 *"(Financial Sustainability) It is estimated that……."* |
| #7 Capacity | #4 *"(Capacity) Describe your ….management infrastructure"* and #5 "Provide a list of any contracts….." |
| #8 Quality | #6 *"(Quality) Describe….providing quality oversight…."* |
| Recommendation Number & Criteria | Response Question Numbers below were "Required" |
| #12 *"Other-Additional factors taken into consideration for this specific opportunity"* | #7 and 8  *"(Other Subcontract)"…..when relying on the past performance of a proposed subcontractor…."* and *"Provide an assessment ……direct labor hours that will…."* |
| #9 Geography | #9 *"(Geography) Describe how your business solution….."* |

**Facts**: NTI and the selected NPA answered the required response questions.  In review of the SourceAmerica evaluation materials, no additional #12 "Other" unidentified factors were found. The documentation demonstrates that the only criteria considered were those SourceAmerica posted for response and evaluation.

On a related point, NTI's appeal letter states that during the debriefing SourceAmerica "identified four areas where NTI could improve." NTI infers, therefore, that SourceAmerica downgraded NTI's proposal in these areas. NTI then alleges that in two of the areas SourceAmerica did not follow the SSN evaluation criteria.  In one area, NTI objected to being "downgraded" by SourceAmerica because NTI did not provide performance metrics from its customers, and stated that SourceAmerica's past performance questionnaire did not request this information. We have reviewed the "Past Performance History Information Form" that was attached to SSN 2333.  This questionnaire explicitly requests quality ratings and customer satisfaction ratings.





**COMMITTEE FOR PURCHASE FROM PEOPLE WHO ARE BLIND OR SEVERELY DISABLED**
**An Independent Federal Agency**

Ms. M.J. Willard
May 29, 2014
Page 6

Under Areas of Improvement the SourceAmerica debrief chart states that in regard to past performance and customer requested additional information the: *"Response was high-level for NTI and then specifically spoke to IBM SLA's. Did not speak to NTI's SLA's* [Service Level Agreement] *and did not detail specific NTI customer satisfaction data"*. The SourceAmerica record shows that past performance information was part of the SSN 2333 posting and was thus proper for SourceAmerica to evaluate.

NTI also contends that it was downgraded *"for not providing sufficient details concerning its proposed approach to serve as a subcontractor to IBM ... prior to transitioning the contract...."* The SSN required a thorough response regarding technical capability including hiring, staffing, and subcontracting; therefore, NTI's approach of beginning the contract as a subcontractor was included in the evaluation. The SourceAmerica debrief charts/slides list this as an area for improvement: *"Technical Response could have included more details as to the approach to addressing the customer's requirements as listed in the SOW. Response was high level indicating NTI's role providing WAH [Work at Home] agents and IBM providing technology"*. However, when NTI indicated they were "surprised this was evaluated as a negative", As reflected in the debrief notes, SourceAmerica responded that they were providing "just one example" and it "wasn't found as a negative- recommend [you] provide more detail to strengthen response".

SourceAmerica's B-1 procedures regarding debriefing states that, *"CRPs[1] not selected may request feedback to discuss strengths and weaknesses of its proposal."* Review of the file and debriefing notes establish that SourceAmerica met its obligation to discuss "strengths and weaknesses" in the debriefing.

**Finding:** NTI assertion in 1(d) is not supported.

**(e) NTI asserts that SourceAmerica:** Did not employ a transparent distribution process and made no effort to ensure that awards are distributed in a fair and equitable manner.

**Facts:** The Commission's Policy 51.301 Paragraph 6. (a) states, *"CNAs shall develop processes for project assignment and order allocation that result in fair, equitable and transparent distribution of opportunities among NPAs taking into account the unique mission and objectives of the AbilityOne Program." "CNAs' assignment and allocation processes shall be published and transparent to the AbilityOne associated NPAs"*.

---

[1] Community Rehabilitation Programs (CRPs) are Nonprofit Agencies (NPAs). The terms are interchangeable.





Ms. M.J. Willard
May 29, 2014
Page 7

SourceAmerica developed the B-1 Project Development Distribution and Transparency Procedure. Paragraph 4.0 of the procedure is titled "Distribution Principles". One of the five overriding principles is *"Transparency in the notification, distribution, and appeal process for project development opportunities among qualified CRPs.* It includes customary selection information such as: Responsibility for Execution, CRP Notification of Project Development Opportunities – Sources Sought Notice (SSN), Considerations, Notice of Project Distribution Decision and Appeal Process. This procedure is published and available to all NPAs. All NPAs responding to the SSN have access to the same performance work statement, evaluation criteria and opportunity to respond to the notice. All responders can ask questions, have access to all questions and answers submitted in response to the notice, propose their solutions and be debriefed on their proposal evaluation.

Equitable means that if all things are equal, the project assignments and order allocations will be shared in an equivalent or proportional manner. However, the record does not show that SourceAmerica's evaluation of the posted criteria found all responses from NTI and the selected NPA to be equal in terms of technical capability, financial capacity, or thorough response to all criteria. SourceAmerica documentation shows that SSN 2333 is a single project assignment recommendation to the Commission. Only one contract will be awarded if the Commission approves the Procurement List Addition. As required by Commission Policy, the B-1 Procedure establishes a process for fair, equitable and transparent project assignment and the process was followed.

**Fact:** In its oral presentation to my staff and me, NTI cited the Commission's regulation at 41 CFR 51-3.4 in the context of the CNA recommendation process. However, this regulation pertains to the allocation of orders when there is more than one authorized nonprofit agency providing a product or service on the Procurement List item. It is not applicable to the matter under appeal.

**Finding:** NTI assertion in 1(e) is not supported.

**Conclusion:** NTI's appeal on the basis of SourceAmerica's failure to follow its established policies and procedures is not substantiated and is denied.

### 2. NTI's appeal states that SourceAmerica *did not* select a NPA that met the minimum requirements.

**Facts:** SSN 2333 included five minimum criteria. The documentation submitted by SourceAmerica shows that it considered the minimum criteria for each nonprofit agency that responded to the SSN. The minimum criteria are "go/no-go" criteria that determine whether a technical evaluation will be performed on each offeror. The records show that all of the nonprofit agencies responding to the SSN met the go/no-go criteria as specified in the B-1 procedure and based on the documents and information in SourceAmerica's possession. SourceAmerica documented that the selected NPA met the minimum criteria.

   **COMMITTEE FOR PURCHASE FROM PEOPLE WHO ARE BLIND OR SEVERELY DISABLED**
**An Independent Federal Agency**   

Ms. M.J. Willard
May 29, 2014
Page 8

There is no statutory or regulatory requirement for SourceAmerica to verify that the selected NPA will only employ individuals deemed significantly disabled by the Social Security Administration (SSA) or the State Vocational Rehabilitation (VR) Agency. While such a validation process has been recommended by NTI, the Commission is still in the process of studying such an approach, and has not established "presumptive *ineligibility*" status for individuals who are not in the SSA or VR databases.

**Finding:** My review found that the SourceAmerica evaluation and documentation substantiate that the selected NPA met the five minimum criteria posted in the SSN.

**Conclusion:** NTI's appeal on the basis of SourceAmerica's failure to select a NPA that met the minimum requirements was not substantiated and is denied.

**3. NTI's appeal states that SourceAmerica has not properly documented its decision (including SourceAmerica's decisions on the appeal).**

**Facts:** The central nonprofit agency (CNA) NPA evaluation and recommendation process is not required to follow the same competitive procedures as a Federal Acquisition Regulation (FAR) based selection; however, it is true of both processes that the evaluation team's recommendation and work products are not furnished to the successful or unsuccessful offerors. Consequently, NTI (or the selected NPA) has not received SourceAmerica documentation and basis for concluding who they [SourceAmerica] would recommend to the Commission for performance of the USDA IT Service Desk Support.

However, in our oversight capacity and to review the assertion raised by NTI, my staff and I reviewed the SourceAmerica work products, including but not limited to the evaluation notes of the SourceAmerica team and the rationale for the decision made. The purpose of the review was to determine whether SourceAmerica properly documented their decision.

SourceAmerica's records show that their evaluation team documented each nonprofit agency's response to the posted evaluation criteria, as well as their [evaluation team's] assessment of the responses. The records also document the basis for the evaluation team's recommendation and the conclusion that was reached. The documentation reveals that the evaluation team relied on the evaluation criteria and information as posted in SSN 2333 and the implementing regulations and guidance. Additionally, notwithstanding NTI's assertion that "four days is simply not enough time to evaluate three proposals from scratch", the evaluation team records capably establish that a thorough review and evaluation was conducted. The evaluation team's recommendation is properly documented.

**NTI also asserts that:** SourceAmerica executives responsible for considering NTI's first and second level appeals did not adequately document their decisions.


**COMMITTEE FOR PURCHASE FROM PEOPLE WHO ARE BLIND OR SEVERELY DISABLED**
**An Independent Federal Agency**


Ms. M.J. Willard
May 29, 2014
Page 9

**Facts:** The SourceAmerica B-1 appeal process permits a non-selected NPA to appeal to the
SourceAmerica VP, Regional Operations (VPRO) and, if not satisfied with the decision of the VPRO,
a second-level appeal to the SourceAmerica Chief Operating Officer (COO). NTI exercised its appeal
rights, and the VPRO first level appeal decision response to NTI is dated February 26, 2014. The
COO second level appeal decision response to NTI is dated March 19, 2014. Both decisions denied
NTI's appeal.

From the first level appeal response, the following content is quoted:

*"I conducted a thorough review of the methodology SourceAmerica followed.......in order to
address the pertinent themes in the [NTI] appeal letter. My review included the relevant regulatory
references, the AbilityOne Program Bulletin No.-1 Project Development Distribution and
Transparency Procedure (B-1), any documentation submitted by the responding agencies and
documentation generated by the SourceAmerica evaluation team".*

The first level appeal response also addressed issues raised in NTI's appeal as quoted below:

*"The agency selected to be recommended for this opportunity will be subject to all rules,
regulations and requirements of the AbilityOne Program as specified in 41 CFR Chapter 51, FAR 8.7,
and all applicable rules, regulations, policies and memorandums of the U.S. AbilityOne Commission.
The responses and documentation provided in response to these requirements were reviewed by the
evaluation team".*

*"I have reviewed all necessary and pertinent documentation in the process of responding to
your appeal. I have concluded that SourceAmerica followed the B-1 guidelines and agree with the
evaluation team's project recommendation decision."*

In its second level appeal, NTI specifically alleged that SourceAmerica failed to follow established
policies and procedures, failed to properly document its decision and selected a CRP that failed to
meet minimum criteria. In his response, the COO[2] specifically addressed each of the three allegations
NTI identified. The COO found that the B-1 requirements for the selection process were satisfied and
concluded that there was no reason to overturn the selection.

**Findings:** My review found that SourceAmerica did document its recommendation decision for SSN
2333 and its decisions on appeal.

---

[2] The appeal process indicates that the COO will consider an appeal "only if there is new pertinent information that was
not available at the time the [VPRO] issued the initial decision."



**COMMITTEE FOR PURCHASE FROM PEOPLE WHO ARE BLIND OR SEVERELY DISABLED**
**An Independent Federal Agency**



Ms. M.J. Willard
May 29, 2014
Page 10


**Conclusion:** SourceAmerica's decision is sufficiently documented in accordance with the B-1 appeal process and Commission Policy 51.301. NTI's appeal on the basis of SourceAmerica's failure to properly document its decision was not substantiated and is denied.

**Final Decision[3]:** I found that SourceAmerica did follow their established policies and procedures. They did properly document their decision. The selected NPA did meet the minimum criteria. Accordingly, I have no basis to overturn the SourceAmerica decision on the nonprofit agency they will recommend to the Commission for the IT Service Desk support requirement of the U.S. Department of Agriculture. NTI's appeal is denied.

Sincerely,

E. Ballard
Executive Director and CEO

cc:     Ronald K. Henry, Attorney for NTI
        Robert Chamberlin, SourceAmerica President and CEO
        Dennis Field, SourceAmerica COO
        Martin Williams, SourceAmerica, VP of Regional Operations

---

[3] Mr. Ronald Henry's supplemental submission on behalf of NTI via email on May 4, 2014 stated, "The Commission is not sitting in the position of an appeals court to address whether SourceAmerica committed an abuse of discretion in rendering a decision that is subject to review under the Administrative Procedures Act or other form of judicial review. Instead, the Commission itself is making the original decision here. See, e.g., Commission Policy 51.301, Section 5.(a)1." However, the Executive Director, on behalf of the Commission is, in fact, making an appeal decision in accordance with Commission Policy 51.301 Section 6(d) and based on the criteria therein, which is a required preliminary decision as there is no proposed PL addition package presently pending before the Commission members.


**COMMITTEE FOR PURCHASE FROM PEOPLE WHO ARE BLIND OR SEVERELY DISABLED**
**An Independent Federal Agency**
